UNITED STATES POSTAGE

$ 06.40
02 1M
0004217665    APR 25 2008
MAILED FROM ZIP CODE 95531

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca.  94102-3483

RECEIVED

APR 29 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

e: Shane Davis

NO: P-91770  HOUSING: D-3-116

CAN BAY STATE PRISON
BOX 7500
SCENT CITY, CA 95532



1    COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983

2    Name _DAVIS_          _SHANE_          _C_

3        (Last)                (First)              (Initial)

4    Prisoner Number _P97170_

5    Institutional Address _P.O. BOX 7500  D3/215_

6

7                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA

8    _SHANE DAVIS_
9    (Enter the full name of plaintiff in this action.)    **CV 08    2255**

10                  vs.                        Case No. _____
                                              (To be provided by the Clerk of Court)
11    _M. SAYRE ET. AL.,_
                                              COMPLAINT UNDER THE    **TEH**
12            _DEFENDANTS_                     CIVIL RIGHTS ACT,
                                              Title 42 U.S.C § 1983
13    _____
                                              └ ≀ ≀ ≀ ≀ ≀ ≀ ⌡    **(PR)**
14    _____
     (Enter the full name of the defendant(s) in this action)
15

16    *[All questions on this complaint form must be answered in order for your action to proceed..]*

17    I.    Exhaustion of Administrative Remedies.

18          [**Note:** You must exhaust your administrative remedies before your claim can go

19          forward. The court will dismiss any unexhausted claims.]

20          A.    Place of present confinement _PBSP-SHU_

21          B.    Is there a grievance procedure in this institution?

22                      YES (X)    NO ( )

23          C.    Did you present the facts in your complaint for review through the grievance

24                procedure?

25                      YES (X)    NO ( )

26          D.    If your answer is YES, list the appeal number and the date and result of the

27                appeal at each level of review. If you did not pursue a certain level of appeal,

28                explain why.

     COMPLAINT                          - 1 -

1   1. Informal appeal ___ . _DENIED_ ___

2

3

4   2. First formal level ___ _PARTIALLY GRANTED_

5

6

7   3. Second formal level ___ _PARTIALLY GRANTED_

8

9

10  4. Third formal level ___ _DENIED_

11

12

13  E.   Is the last level to which you appealed the highest level of appeal available to

14       you?

15            YES (X)    NO ( )

16  F.   If you did not present your claim for review through the grievance procedure,

17  explain why. ___ N/A

18

19

20  II.   Parties.

21  A.   Write your name and your present address. Do the same for additional plaintiffs,

22       if any.

23  _SHANE DAVIS, P97170  P.O. BOX 7500 D3/116, CRESCENT CITY, CA._

24  _95532_.

25

26  B.   Write the full name of each defendant, his or her official position, and his or her

27       place of employment.

28  _SEE: COMPLAINT PT. IV. PARTIES  PARA 6-16_

COMPLAINT                          - 2 -

1  PBSP – P.O. BOX 7500 CRESCENT CITY, CA. 95532
2       5905 LAKE EARL DRIVE  [STREET ADDRESS]
3       CRESCENT CITY CA. 95532
4
5  III.    Statement of Claim.
6       State here as briefly as possible the facts of your case. Be sure to describe how each
7  defendant is involved and to include dates, when possible. Do not give any legal arguments or
8  cite any cases or statutes. If you have more than one claim, each claim should be set forth in a
9  separate numbered paragraph.
10      SEE: COMPLAINT PT. II STATEMENT OF FACTS PARAGRAPHS
11  18 – 72; ALSO PARAGRAPH 73 – 81.
12
13
14
15
16
17
18
19
20
21
22
23  IV.    Relief.
24       Your complaint cannot go forward unless you request specific relief. State briefly exactly
25  what you want the court to do for you. Make no legal arguments; cite no cases or statutes.
26      SEE: COMPLAINT – PRAYER FOR RELIEF.
27
28

COMPLAINT                        - 3 -

1

2

3

4

5      I declare under penalty of perjury that the foregoing is true and correct.

6

7      Signed this _20_ day of _APRIL_____, 20 _08_

8

9  _____Shane Dur_____

10                    (Plaintiff's signature)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                    - 4 -

SHANE DAVIS, P 97170
P.O. BOX 7500 A3/116
CRESCENT CITY, CA, 95532
PRO. SE.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHANE DAVIS,          )          CASE NO. _____
        PLAINTIFF     )
                      )          COMPLAINT FOR VIOLATIONS UNDER
VS.                   )          42 U.S.C. §1983 OF THE EIGHTH
                      )          AND FOURTEENTH AMENDMENTS
M. SAYRE ET. AL.,     )          TO THE U.S. CONSTITUTION
        DEFENDANTS    )

I.
PRELIMINARY STATEMENT.

1) THIS COMPLAINT, FILED BY PLAINTIFF SHANE DAVIS, P.97170 WHILE INCAR-
CERATED AT PELICAN BAY STATE PRISON (PBSP), IN CRESCENT CITY CALIFORNIA,
ALLEGES THAT DEFENDANTS HAVE BEEN DELIBERATELY INDIFFERENT TO PLAINTIFFS
SERIOUS MEDICAL NEEDS. PLAINTIFF SUFFERS FROM A MEDICAL CONDITION
KNOWN AS "NEPHROLITHIASIS" (STONE LIKE MASSES THAT FORM IN HIS URINARY
TRACT) AS A RESULT OF A RENAL UROLOGICAL DISORDER WHICH CAUSES LOW LEVELS
OF POTASSIUM, AND DEPOSITS OF CALCIUM IN THE KIDEYS, LEADING TO THE
FORMATION OF "STONES" (RENAL LITHIASIS OR UROLITHIASIS) IN PLAINTIFFS URETER.
PLAINTIFF CONTENDS HE HAS REPEATEDLY COMPLAINED TO PBSP MEDICAL STAFF
ABOUT HIS MEDICAL PROBLEMS, HISTORY OF KIDNEY STONES, AND ABOUT
REPEATEDLY EXPERIENCING EPISODES OF SEVERE, DEBILITATING PAIN
FROM SUCH STONES WHICH IF NOT TREATED WOULD BE INJURIOUS TO HIS
HEALTH AND BODY, AND OF REPEATEDLY BEING LEFT TO SUFFER IN HIS CELL
WITHOUT BEING GIVEN ANY TYPE OF MEDICATION FOR THE PAIN OR ANY
ACTION TAKEN TO REMOVE THE STONES CAUSING PLAINTIFF PAIN AND INJURY. PLAINTIFF

1 OF 36

CONTENDS HE DID NOT RECEIVE ADEQUATE MEDICAL CARE DESPITE BEING SEEN BY MEDICAL STAFF. DEFENDANTS HAVE ORDERED AND OBTAINED URINALYSIS TEST RESULTS WHICH SHOWS "ABNORMAL" TRACES OF: KETONES: BACTERIA, AND CALCIUM OXALATE CRYSTALS INDICATING CLEAR SIGNS OF KIDNEY STONES IN PLAINTIFF'S BODY. YET, DEFENDANTS FAILED TO ACT ON THESE RESULTS AND FAILED TO ATTEND TO PLAINTIFFS SERIOUS MEDICAL NEEDS BY LONG REPEATED DELAYS IN THE FACE OF RECOGNIZED NEED FOR TREATMENT. PLAINTIFF CLAIMS THAT DEFENDANTS' DELIBERATE INDIFFERENCE RESULTED IN ADDITIONAL MEDICAL PROBLEMS AND PERMANENT TISSUE DAMAGE, DISFIGUREMENT, AND ERECTILE DISFUNCTION (E.D.). FURTHER, DEFENDANTS DELIBERATE INDIFERENCE TO HIS MEDICAL NEEDS VIOLATED HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. PLAINTIFF ALSO ALLEGES THE TORTS OF NEGLIGENCE AND MEDICAL MALPRACTICE.

## II.
## JURISDICTION

2) THIS CIVIL ACTION SEEKING DECLARATORY AND INJUNCTIVE RELIEF IS BROUGHT PURSUANT TO 42 U.S.C § 1983, IN THAT PLAINTIFF HAS BEEN AND CONTINUES TO BE DEPRIVED OF HIS RIGHTS WHICH ARE SECURED BY THE UNITED STATES CONSTITUTION UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS.

3) THE JURISDICTION OF THIS COURT IS INVOKED PURSUANT TO 28 U.S.C. SECTION 1331 AND 1343 (4) (3).

## III
## VENUE.

4) VENUE IS PROPER UNDER 28 U.S.C. SECTION 1391 (b) IN THAT ONE OR MORE OF THE DEFENDANTS RESIDE IN THE NORTHERN DISTRICT OF CALIFORNIA AND PLAINTIFFS' CLAIMS FOR RELIEF AROSE IN THIS DISTRICT.

## IV.
## PARTIES.

5) PLAINTIFF SHANE DAVIS, P 97170 IS A PRISONER OF THE STATE OF CALIFORNIA, INCARCERATED AT PELICAN BAY STATE PRISON (PBSP) DURING

2 OF 36

THE EVENTS DESCRIBED IN THIS COMPLAINT.

6) DEFENDANTS ARE OFFICIALS, EMPLOYEES OR AGENTS OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR).

7) DEFENDANT M.C. SAYRE, IS A MEDICAL DOCTOR AND THE CHIEF MEDICAL OFFICER (CMO) AT PBSP-SHU AND AN EMPLOYEE OF CDCR.

8) DEFENDANT MAUREEN MCLEAN IS A CORRECTIONAL HEALTH CARE MANAGER AT PBSP-SHU AND AN EMPLOYEE OF CDCR.

9) DEFENDANT SUE RISENHOOVER IS A FAMILY NURSE PRACTITIONER (FNP) AND THE "PRIMARY CARE PROVIDER" FOR D-FACILITY S.HU INMATES; AND IS AN EMPLOYEE OF CDCR.

10) DEFENDANT J. FLOWERS IS A REGISTERED NURSE (RN) AT PBS P-SHU AND A CDCR EMPLOYEE.

11) DEFENDANT C. GOROSPE IS A "STAFF SERVICES ANALIST" (SSA) AT PBSP-SHU AND AN EMPLOYEE OF CDCR.

12) DEFENDANT JOSEPH KRAVITZ IS A CORRECTIONAL COUNSELOR II (CC II) AT PBSP-SHU AND A CDC EMPLOYEE.

13) DEFENDANT V. O'SHAUGHNESSY IS AN APPEAL EXAMINER AND AN EMPLOYEE OF THE CDCR.

14) DEFENDANT NANCY GRANNIS IS THE CHIEF OF INMATE APPEALS BRANCH IN SACRAMENTO CALIFORNIA; LOCATED AT P.O. BOX 942883, ZIP CODE 94283-0001 AND A CDC EMPLOYEE.

15) DEFENDANT ROBERT HOREL IS THE WARDEN AT PBSP-SHU AND THE LEGAL CUSTODIAN OF PLAINTIFF AND AN EMPLOYEE OF CDCR.

16) DEFENDANT James Tilton IS THE DIRECTOR/SECRETARY OF THE CDCR. ON INFORMATION AND BELIEF, DEFENDANT James Tilton WILL BE LEAVING HIS POSITION IN THE NEAR FUTURE, WHEREUPON PLAINTIFF WILL SEEK TO AMEND THE COMPLAINT TO ADD THE NEW DIRECTOR/SECRETARY AS A DEFENDANT AS NECESSARY. AS THE DIRECTOR/SECRETARY DEFENDANT J. Tilton IS AND HAS BEEN RESPONSIBLE FOR PROMULGATING, SUPERVISING PROMULGATION OF, IMPLEMENTING, MONITORING COMPLIANCE WITH, ENFORCING AND/OR SUPERVISING ENFORCEMENT OF POLICIES AND PROCEDURES AFFECTING THE MEDICAL CARE OF ALL INMATES WITHIN THE CDCR. IN THIS POSITION DEFENDANT J. Tilton IS AND HAS BEEN RESPONSIBLE FOR ASSURING ALL I/M'S RECEIVE PROPER MEDICAL CARE INCLUDING PROPER

3 OF 36

DIAGNOSIS AND TREATMENT.

17) DEFENDANTS ARE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AT ALL RELEVANT TIMES. DEFENDANTS HAVE ACTED UNDER COLOR OF AUTHORITY AND STATE LAW.

## V.
## STATEMENT OF FACTS:

18) ON APPROXIMATELY 10/25/2000 PLAINTIFF WAS SENTENCED TO STATE PRISON FOLLOWING A Plea Deal FOR WHICH HE RECEIVED A 10 YEAR DETERMINATE PRISON TERM.

19) ON APPROXIMATELY 5/17/06 PLAINTIFF WAS TRANSFERRED TO PBSP-SHU FOR AN INDETERMINATE SHU TERM.

20) ON ABOUT 3/5/07 PLAINTIFF WHILE AT PBSP-SHU BEGAN TO EXPERIEN-CE SEVERE ABDOMINAL AND KIDNEY PROBLEMS OF PAIN AND DISCOMFORT; MILD AT FIRST, THEN ACUTE ATTACKS OF PAIN TO THE ABDOMEN, RIGHT KIDNEY SIDE AND HIS BACK. HE SIGNED UP FOR MEDICAL DR'S LINE AND WAS LATER SEEN AN M.T.A. AND SUBSEQUENTLY REFERRED TO A FACILITY NURSE PRACTITIONER WHO IS THE PRIMARY CARE PROVIDER AT D-FACILITY SHU.

21) ON ABOUT MARCH 16, 2007 PLAINTIFF WAS TAKEN TO DR'S LINE FOR A CHECK UP OF HIS ABDOMINAL PAIN. PLAINTIFF WAS SEEN BY DEFENDANT RISENHOOVER TO WHOM HE REPORTED HE WAS HAVING SEVERE PAIN IN HIS KIDNEY'S AND ABDOMINAL AREA. HE ALSO INFORMED DEFENDANT RISEN-HOOVER HE HAD A HISTORY OF KIDNEY STONES AND THAT HIS PRESENT CONDITION SURELY WAS A RECURRENCE OF KIDNEY STONES BECAUSE IT WAS THE SAME KIND OF PAIN, ONLY GREATER THAN BEFORE (SEE: EXHIBIT 1 "PERSONAL NOTES" DATED: 3/16/07). PLAINTIFF REQUESTED A MEDICAL EXAMINATION SO AS TO DETERMINE THE CAUSE OF HIS PROBLEMS AND ALSO ASKED FOR SOME KIND OF PAIN MEDICATION TO RELIEVE HIS ABDOMINAL AND KIDNEY PAIN. HOWEVER DEFENDANT RISENHOOVER DENIED HIS REQUESTS FOR PAIN MEDICATION, AND WAS SIMPLY ORDERED BACK TO HIS CELL WITH INSTRUCTIONS TO JUST DRINK ALOT OF WATER AND TO REPORT ANY FURTHER PAIN OR PROBLEMS" (SEE: EXHIBIT 2 "PHYSICIAN'S ORDERS DATED: 3/16/07; ALSO SEE EXHIBIT 1)

4 OF 36

22) ON ABOUT MARCH 30, 2007 DURING A MEDICAL FOLLOW UP AND PER DEFENDANT RISENHOOVERS INSTRUCTIONS. PLAINTIFF REPORTED HE WAS STILL EXPERIENCING ACUTE KIDNEY AND ABDOMINAL PAIN AND INFORMED DEFENDANT RISENHOOVER THAT THE LEVEL OF PAIN WAS INCREASING EVERY DAY. FURTHER, PLAINTIFF AGAIN ASKED RISENHOOVER TO PLEASE GIVE HIM SOME PAIN MEDICATION AND TO BE TREATED FOR WHAT HE BELIEVED WAS RECURRING KIDNEY STONES. (SEE: EXHIBIT _1_ "PERSONAL NOTES" DATED: 3/30/07) HOWEVER, DEFENDANT RISENHOOVER WAS UNCONCERNED ABOUT PLAINTIFFS PLEA FOR HELP. AND INSTEAD PLAINTIFF WAS TOLD "NOTHING IS WRONG WITH YOU" BY RISENHOOVER AND ORDERED BACK TO HIS CELL WITHOUT ANY PAIN MEDICATION (EXHIBIT _3_ PERSONAL NOTES).

23) SUBSEQUENT TO PLAINTIFFS INITIAL COMPLAINTS, MEDICAL STAFF AT D-FACILITY PBSP-SHU DID VARIOUS EXAMINATIONS OF THE PLAINTIFFS URINE (URINALYSIS) IN AN ATTEMPT TO DISCOVER PLAINTIFFS MEDICAL PROBLEM. ON 3/31/07 THE RESULTS OF THOSE TESTS SHOWED THAT THE FOLLOWING WERE "OUT OF RANGE": URINE COLOR (ORANGE), APPEARANCE (TURBID); AND A PRESENCE OF: KETONES, MUCUS. CALCIUM OXALATE CRYSTALS AND AMORPHOUS URATES WAS DETECTED (SEE: EXHIBIT _3_ URINALYSIS TEST DATED: 3/31/07).

24) ON ABOUT APRIL 23, 2007 PLAINTIFF WAS SEEN AGAIN BY DEFENDANT RISENHOOVER AND HE REPORTED THAT HE CONTINUED TO BE IN SEVERE PAIN ON HIS KIDNEY AND ABDOMEN AREAS AND AGAIN REQUESTED TO BE TREATED AND TO RECIEVE SOME SORT OF PAIN MEDICATION FOR WHAT HE BELIEVED COULD BE KIDNEY STONES DUE TO HIS PAST EXPERIENCES AND HIS PRESENT SYMPTOMS. (EXHIBIT _1_ PERSONAL NOTES PG. 1). PLAINTIFF ALSO ASKED IF HE COULD BE REFERRED TO ANOTHER DOCTOR WHO SPECIALIZED IN RENAL DISORDERS. HOWEVER, DEFENDANT RISENHOOVER ACTED AS IF SHE DID NOT KNOW WHAT PLAINTIFF WAS TALKING ABOUT, SAID "NO IM YOUR DOCTOR." ALSO DEFENDANT RISENHOOVER DENIED PLAINTIFFS REQUEST TO REFER TO HIS MEDICAL FILE AND TO BE INFORMED WHAT HAD BEEN THE RESULTS OF THE URINALYSIS THAT HAD BEEN DONE PREVIOUSLY IN 3/30/07. RISENHOOVER STATED SHE DID NOT HAVE TO REVIEW ANYTHING AND WOULD INSTEAD ORDER A NEW URINALYSIS TEST (SEE EXHIBIT _1_ PERSONAL NOTES PG 1). PLAINTIFF WAS ONCE AGAIN RETURNED TO HIS CELL WITHOUT BEING GIVEN ANY PAIN MEDICATION (EXHIBIT _1_).

_5_ OF 36

25) ON 4/24/07 THE SECOND URINALYSIS TEST REPORT CAME IN, ALSO INDICATING NUMEROUS "ABNORMALITIES" INCLUDING: URINE COLOR (ORANGE), APPEARANCE (CLOUDY): AND TRACES OF: ESTERASE (BLOOD), PROTEIN, KETONES, HEMOGLOBIN (BLOOD), AND MUCUS (SEE: EXHIBIT 4 "URINALYSIS TEST" DATED: 4/24/07).

26) ON APPROXIMATELY MAY 2, 2007 PLAINTIFF WAS AGAIN TAKEN TO D-FACILITY CLINIC TO SEE DEFENDANT RISENHOOVER FOR A FOLLOWUP OF HIS 4/23/07 LAB TEST RESULTS (SEE: EXHIBIT 5 PHYSICIANS ORDERS DATED: 5/2/07). DURING THIS VISIT PLAINTIFF COMPLAINED THAT HIS ABDOMINAL AND KIDNEY PAIN HAD NOT GONE AWAY AND ASKED FOR TREATMENT AND FOR PAIN MEDICATION. FURTHER, PLAINTIFF ADVISED RISENHOOVER THE PAIN AT THIS POINT WAS GREATER AND MORE PERSISTENT TO THE POINT HE COULD NOT SLEEP AT NIGHT (EXHIBIT 1 PERSONAL NOTES PG. 2, PARA. 2). DEFENDANT RISENHOOVER WAS ONCE AGAIN INDIFFERENT TO PLAINTIFFS COMPLAINING AND WAS MAKING FACIAL EXPRESSIONS OF DISTRUST AND SUSPICION (EXHIBIT 1 PG. 2, PARA. 2). PLAINTIFF ATTEMPTED TO EXPLAIN THAT HE HAD EXPERIENCED KIDNEY STONES IN THE PAST AND THAT THE PRESENT SIMPTOMS WERE THE SAME BUT STRONGER. HOWEVER, DEFENDANT RISENHOOVER BECAME ANGERED AND IRRITATED AND TOLD PLAINTIFF "THERES NOTHING WRONG WITH YOU JUST GO DRINK MORE WATER". (EXHIBIT 1 PERSONAL NOTES PG. 2). PLAINTIFF WAS ONCE AGAIN FORCED TO RETURN TO HIS CELL WITHOUT BEING GIVEN ANY PAIN MEDICATION, NO TREATMENT NOR INFORMED OF THE RESULTES OF THE 4/23/07 URINALYSIS TEST RESULTS. (SEE: EXHIBIT 1 PERSONAL NOTES PG. 2 ; ALSO SEE: EXHIBIT 5 PHYSICIANS ORDERS DATED 5/2/07).

27) SUBSEQUENTLY, DEFENDANT RISENHOOVER DID ANOTHER URINALYSIS TEST AS WELL AS A BLOOD PANEL ANALYSIS. THE RESULTS OF THESE TESTS WERE REPORTED ON 5/3/07 IN WHICH THE BLOOD PANEL SHOWED SOME CHEMISTRIES AND ENZYMES "OUT OF RANGE". AND THE URINALYSIS AGAIN REPORTED: URINE COLOR (ORANGE), APPEARANCE (CLOUDY): AND TRACES OF: BLOOD, PROTEIN, KETONES, BACTERIA, CALCIUM OXALATE CRYSTALS AND AMORPHOUS URATES. (SEE: EXHIBIT 6 "URINALYSIS REPORT" DATED: 5/4/07 ; ALSO SEE: EXHIBIT 7 BLOOD PANEL ANALYSIS DATED: 5/4/07).

28) PLAINTIFF WAS INFORMED THAT THE RESULTS OF HIS 5/2/07 BLOOD AND URINE TESTS WERE GOING TO BE REVIEWED WITH HIM AT HIS NEXT SCHEDULED APPOINTMENT (SEE: EXHIBIT **8-A** NOTIFICATION DATED: 5/7/07; AND EXHIBIT **8-B** NOTIFICATION DATED: 5/9/07).

29) ON ABOUT MAY 29, 2007 DURING ANOTHER VISIT TO D-SHU CLINIC PLAINTIFF WAS INFORMED BY DEFENDANT RISENHOOVER THAT SOME "CRYSTALS" AND A VERY HIGH LEVEL OF IRON WERE DETECTED IN HIS LAST URINE AND BLOOD TESTS (EXHIBITS **6**; AND **7**). PLAINTIFF WAS ASKED IF ANYONE IN HIS FAMILY WAS EVER DIAGNOSED WITH "HEMOCHROMATOSIS." PLAINTIFF RESPONDED HE DIDN'T KNOW. AND WAS INSTRUCTED BY RISENHOOVER TO FIND OUT IMMEDIATELY (SEE: EXHIBIT **1** PG. 2. PARA. 3.). PLAINTIFF THEN REPORTED TO RISENHOOVER, AGAIN, HE WAS STILL IN SEVERE PAIN IN HIS RIGHT KIDNEY AND ABDOMEN. FURTHER, PLAINTIFF COMPLAINED ABOUT NOT GETTING ANY PAIN MEDICATION NOR TREATMENT FOR POSSIBLE KIDNEY STONES. DEFENDANT RISENHOOVER AGAIN BECAME AGITATED TOWARDS PLAINTIFF, TOLD HIM NOT TO BE SELF-DIAGNOSING AND THAT THERE WAS NOTHING WRONG WITH HIM, ORDERED PLAINTIFF BACK TO HIS CELL IN EXTREME PAIN AND WITHOUT ANY MEDICATION (SEE: EXHIBIT **1** PERSONAL NOTES" PG. 2.; ALSO SEE: EXHIBIT **9** PHYCISIANS ORDERS" DATED: 5/29/07).

30) ON ABOUT JUNE 13, 2007 AROUND 3:30 A.M. PLAINTIFF WAS AWAKEN BY EXCRUCIATING PAIN IN HIS RIGHT KIDNEY AND ABDOMEN AREA. PLAINTIFF ATTEMPTED TO GET OUT OF BED TO SEEK HELP FROM UNIT STAFF BUT FELL ON THE FLOOR AND COULD NOT MOVE. PLAINTIFF WAS IN SO MUCH PAIN TO THE POINT HE BROKE OUT INTO A SWEAT AND BECAME OVERWHELMED BY NAUSEA WHICH CAUSED HIM TO DRAG HIMSELF AND VOMIT INTO HIS TOILET. (SEE: EXHIBIT **1** PERSONAL NOTES" PG. 3-4). PLAINTIFF WAS NOT ABLE TO CALL OUT FOR HELP FROM STAFF BECAUSE OF THE INTENSITY OF PHYSICAL PAIN AND WAS FORCED TO LAY ON THE FLOOR OF HIS CELL UNTIL A FIRST WATCH GUARD CAME BY CONDUCTING A HEAD-COUNT OF D3 UNIT AROUND 4:00 A.M., WHO FOUND PLAINTIFF IN A FETAL POSITION ON THE FLOOR. THE GUARD (% YOUNG) ASKED PLAINTIFF IF HE WAS OK. AND PLAINTIFF ANSWERED "NO". "I'M IN BAD PAIN IN MY KIDNEYS AND NEED TO SEE

A DOCTOR IMMEDIATELY." GUARD YOUNG LOOKED AT PLAINTIFF AND STATED TO PLAINTIFF THAT HE WAS "VERY PALE AND LOOKED REAL BAD." FURTHER, PLAINTIFF WAS TOLD BY YOUNG HE WOULD CALL THE FACILITY M.T.A. AS SOON AS HE COMPLETED HIS HEAD COUNT IN THE UNIT (SEE EXHIBIT 1 "PERSONAL NOTES" PG. 3-4). AFTER GUARD YOUNG LEFT, PLAINTIFF'S ABDOMINAL AND KIDNEY PAIN WORSENED EVEN MORE AND MADE HIM MOAN AND GROAN IN PAIN SO LOUD THAT ALL INMATES HOUSED IN THE SAME SECTION WITH PLAINTIFF WERE AWAKEN BY PLAINTIFF (SEE EXHIBIT 10-A THRU 10-H AFFIDAVITS OF INMATES: LERMA, CASARES, GONZALEZ, SALVANT, JORDAN, GONZALES, ALVAREZ AND ROMERO).

31) AFTER SOME TIME PASSED AND THE NIGHT SHIFT GUARD NEVER RETURNED, PLAINTIFF'S NEXT-DOOR NEIGHBOR BECAME SO WORRIED FOR PLAINTIFF'S WELFARE, BECAUSE THE AGONY CRIES WERE SO LOUD, THAT HIS NEIGHBOR, INMATE JOSEPH SALVANT, C08365 IN D3/115 STARTED YELLING TO THE TOWER OFFICER: "MAN DOWN! THERE'S A MAN DOWN IN 116 WHO IS SICK AND NEEDS THE M.T.A."! [1] (SEE EXHIBITS 10-A THRU 10-H AFFIDAVITS OF INMATES).

32) SUBSEQUENTLY SOMETIME AFTER 4:00AM OFFICER YOUNG AND ANOTHER GUARD FINALLY RETURNED TO CHECK ON PLAINTIFF, AND FOUND HIM STILL LAYING ON THE FLOOR. PLAINTIFF TOLD THE OFFICERS HE WAS IN GREAT PAIN AND DID NOT THINK HE COULD GET OFF THE FLOOR. S/O YOUNG INSTRUCTED PLAINTIFF TO GET UP AND HANDCUFF IN ORDER TO SEE THE M.T.A. WHO WAS ON THE WAY. PLAINTIFF DID AS INSTRUCTED AND WAS ESCORTED OUT OF HIS SECTION TO THE UNIT VESTIBUL WHERE HE WAS BRIEFLY EXAMINED BY THE M.T.A. TO WHOM PLAINTIFF REPORTED WHAT HAD TAKEN PLACE AND HOW HE FELT IN SEVERE PAIN. PLAINTIFF WAS THEN IMMEDIATELY ESCORTED OUT OF THE BUILDING PUT INTO AN EMERGENCY TRANSPORT VEHICLE AND RUSHED TO THE PRISONS MAIN SPECIALTY CLINIC. (SEE EXHIBIT 1 PLAINTIFF'S PERSONAL NOTES AT PG. 3-4)

---

1. IT SHOULD BE NOTED THAT "MAN DOWN" IS GENERALLY YELLED BY INMATES AND UNDERSTOOD BY STAFF TO MEAN THAT THERE IS A SERIOUS MEDICAL EMERGENCY WHERE AN INMATE NEEDS MEDICAL EMERGENCY CARE IN A LIFE OR DEATH SITUATION.

33) AT THE SPECIALTY CLINIC PLAINTIFF WAS SEEN BY (R.N.) D. THOMAS. PLAINTIFF CONVEYED TO (R.N.) THOMAS ALL THE EVENTS DURING THE NIGHT LEADING TO HIM BEING RUSHED TO THE CLINIC. PLAINTIFF FURTHER REPORTED THAT HE WAS STILL IN SEVERE PAIN AND FELT LIKE VOMITING. ALSO THAT HE HAS BEEN IN PAIN FOR APPROXIMATELY 3-4 MONTHS BUT WAS LEFT WITHOUT ANY KIND OF MEDICATION THE ENTIRE TIME DESPITE COMPLAINING TO DEFENDANT RISEN/HOOVER ABOUT IT ON NUMEROUS OCCASSIONS. (SEE: EXHIBIT 1 "PERSONAL NOTES" PG. 3-4). (ALSO SEE EXHIBIT 11 "EMERGENCY CARE FLOW SHEET" DATED: 6/13/07 AT PG. 2)

34) R.N. THOMAS CONDUCTED AN EXAMINATION OF PLAINTIFF AND HIS MEDICAL FILE AND INFORMED PLAINTIFF HE WAS SUFFERING FROM, AND SHOULD HAVE ALREADY BEEN DIAGNOSED WITH WHATS CALLED A "RENAL UROLOGICAL DISORDER" (EXHIBIT 1 "PERSONAL NOTES" AT PG. 4) R.N. THOMAS FURTHER INFORMED PLAINTIFF THAT ACCORDING TO A 5/2/07 URINALYSIS REPORT AS WELL AS (2) ADDITIONAL ONES DONE ON PLAINTIFFS URINE SHOWS THAT DEFENDANT RISEN/HOOVER HAS BEEN AWARE OF THE EXISTENCE OF THE RENAL UROLOGICAL DISORDER FOR SOME TIME (SEE: EXHIBIT 11 AT PG. 2).

35) THE RENAL UROLOGICAL DISORDER, PLAINTIFF WAS INFORMED BY THOMAS THAT THIS IS CAUSED BY CALCIUM CRYSTALS BUILDING UP IN THE RENAL ARTERIES THAT LEAD TO THE KIDNEYS. THIS CRYSTAL FORMATION (RENAL LITHIASIS) CAUSES A BLOCKAGE TO THE KIDNEYS THAT CAN RESULT IN SEVERE PERMANENT KIDNEY DAMAGE. PLAINTIFF ASKED THOMAS IF HE WAS SURE OF THIS, AT WHICH TIME THOMAS READ THE REPORTS AT LOUD AND SHOWED THEM TO PLAINTIFF WHERE ALOT OF THINGS WERE "OUT OF RANGE" IN THE URINE TESTS (SEE: EXHIBIT 11 PG. 2).

36) R.N. THOMAS ASKED PLAINTIFF IF ANY MEDICINE HAD EVER BEEN PRESCRIBED FOR TREATING THIS. PLAINTIFF ANSWERED "NO". THOMAS SAID HE WAS SURPRISED BECAUSE PLAINTIFF SHOULD HAVE BEEN GIVEN PAIN-MANAGING MEDICATION, X-RAYS TO LOCATE THE STONES AND/OR POSSIBLY TO REMOVE THE STONES BY "BREAKING THEM UP" WITH SOUND WAVES (EXHIBIT 1 "PERSONAL NOTES" AT PG. 4).

37) RN. THOMAS INFORMED PLAINTIFF HE WOULD BE PUT ON THE MORNING SICK CALL LIST TO BE SEEN BY HIS PRIMARY HEALTH CARE PROVIDER (DEFENDANT RISENHOOVER) FOR A DETERMINATION OF ANY MEDICATION PRESCRIPTIONS OR FURTHER TREATMENT. PLAINTIFF WAS THEN LED BACK TO HIS CELL STILL IN EXTREME PAIN TO AWAIT THE MORNING SICK CALL IN D-FACILITY. (SEE: EXHIBIT 11 PG. 2 ; ALSO EXHIBIT 1 PERSONAL NOTES AT PG. 4 ).

38) SUBSEQUENTLY ON THE MORNING OF JUNE 13, 2007 PLAINTIFF WAS TAKEN TO D-FACILITY CLINIC FOR A DOCTOR VISIT REGARDING THE EMER-GENCY CARE FLOW INCIDENT EARLIER IN THE MIDDLE OF THE NIGHT. PLAINTIFF ADVISED DEFENDANT RISENHOOVER, DURING THIS VISIT, HE HAS PREVIOUSLY BEEN COMPLAINING OF ABDOMINAL AND KIDNEY PAIN FOR MONTHS AND HAS NOT BEEN GIVEN ANY MEDICATION FOR THE PAIN OR TREATMENT FOR THE UNDERLYING CAUSE. PLAINTIFF ALSO REPORTED HE WAS STILL IN SEVERE ABDOMINAL AND KIDNEY PAIN AS WELL AS WITH SYMPTOMS OF NAUSEA. PLAINTIFF CONVEYED THAT HIS SYMPTOMS WERE AGAIN GETTING WORSE AND ASKED IF HE COULD BE REFERRED TO SOME ONE ELSE WHO WOULD TAKE HIS COMPLAINTS SERIOUS AND GIVE HIM SOME REAL TREATMENT. TO WHICH DEFENDANT RISENHOOVER STATED "I DONT KNOW WHERE YOU THINK YOU ARE, BUT THIS IS PRISON." PLAINTIFF THEN ASKED TO "JUST PLEASE HELP ME BECAUSE IM REALLY HURTING IN MY STOMACH AND KIDNEY. (EXHIBIT 1 PERSONAL NOTES AT PG. 4-5 ; ALSO SEE: EXHIBIT 12 PG. 1 OF 3 'PHYSICIANS PROGRESS NOTES DATED: 6/13/07).

39) PLAINTIFF FURTHER CONVEYED TO RISENHOOVER THE CIRCUMSTANCES OF HIS ACUTE PAIN ATTACK DURING THE NIGHT WHICH LED TO HIM BEING RUSHED OUT TO THE PRISONS SPECIALTY CLINIC (PARA'S 30-37, SUPRA), AND THAT WHEN AN EXAMINATION OF HIM AND HIS MEDICAL FILE WAS MADE AT THE SPECIALTY CLINIC, PLAINTIFF WAS TOLD BY RN. THOMAS THAT SEVERAL URINA-LYSIS REPORTS DEMONSTRATE PLAINTIFF SUFFERS FROM A SERIOUS RENAL EUROLOGICAL DISORDER, THAT PLAINTIFF SHOULD HAVE BEEN TREATED FOR PAIN AND REMOVAL OF STONES. DEFENDANT RISENHOOVER STATED THAT RN. THOMAS IS NOT A DOCTOR, NOT QUALIFIED TO MAKE ANY MEDICAL FINDINGS OR RECOMMENDATIONS THUS, NOTHING THAT RN. THOMAS SAID TO

10 OF 36

THE PLAINTIFF EARLIER THAT MORNING MATTERED OR HAD ANY RELEVANCE. (SEE EXHIBIT _1_, PERSONAL NOTES" PG. 5")

40) THE PLAINTIFF POINTED OUT TO RISENHOOVER HE WAS STILL IN PAIN AND NOT GETTING ANYTHING FOR IT, ALSO THAT DURING THE EXAMINATION AT THE SPECIALTY CLINIC R.N. THOMAS HAD SHOWED PLAINTIFF'S HIS FILE AND HAD PERSONALLY SEEN THE URINALYSIS REPORTS THAT SHOWED THE RESULTS WERE ABNORMAL OR "OUT OF RANGE." AND AS SUCH REQUESTED TO BE REFERRED TO A UROLOGIST TO WHICH DEFENDANT RISENHOOVER STATED FLATLY "NO." AND SIMPLY INSTRUCTED PLAINTIFF TO GIVE YET ANOTHER URINE TEST/SAMPLE (EXHIBIT _12_ AT PG. 3 OF 3 AND "1 OF 1"). PLAINTIFF WAS TAKEN INTO A HOLDING/WAITING ROOM BY STAFF TO PROVIDE A URINE SAMPLE AND INSTEAD OF TAKING HIM BACK TO FINISH HIS DR'S APPOINTMENT HE WAS FORCED BACK TO HIS CELL WITHOUT KNOWING WHAT IF ANYTHING WOULD BE DONE ABOUT HIS PAIN AND MEDICAL CONDITION. HOWEVER, THAT NIGHT HE DID RECEIVE SOME PILL'S FOR THE PAIN ONLY AFTER HE WAS RUSHED OUT ON EMERGENCY TO THE PRISONS MAIN CLINIC. (EXHIBIT _1_ PERSONAL NOTES' PG. 5". ) BUT HE CONTINUED TO SUFFER FROM ABDOMINAL PAIN AND KIDNEY STONES SYMPTOMS.

41) ON JUNE 17, 2007 PLAINTIFF FILED ACDCR 602 FORM APPEAL. IN HIS APPEAL PLAINTIFF COMPLAINED ABOUT THE 6/13/07 INCIDENT WHICH LED TO HIM HAVING TO BE RUSHED OUT IN THE MIDDLE OF THE NIGHT IN SEVERE PAIN. THE COMPLAINT ALLEGED PLAINTIFF'S COMPLAINTS OF ABDOMINAL AND KIDNEY PAIN COUPLED WITH (3) URINALYSIS REPORTS INDICATING A RENAL UROLOGICAL DISORDER WENT IGNORED BY THE DEFENDANT RISENHOOVER FOR SEVERAL MONTHS, DID NOTHING TO HELP PLAINTIFFS PAIN, AND INSTRUCTED PLAINTIFF TO "JUST DRINK WATER" EVERY TIME HE COMPLAINED. PLAINTIFFS 602 APPEAL REQUESTED: (1) TO BE SCHEDULED TO BE SEEN BY A UROLOGIST; (2) REMOVAL OF POSSIBLE KIDNEY STONES WITH SOUND WAVES TREATMENT; (3) COMPENSATION FOR THE PAIN AND SUFFERING HE HAD ENDURED DUE TO DEFENDANT RISENHOOVERS NEGLIGENCE; AND (4) TO BE TRANSFERRED TO A PRISON WHERE HE COULD RECEIVE PROPER MEDICAL TREATMENT (SEE: EXHIBIT _13_ CDC-602 FORM DATED: 6/17/07).

_11_ OF _36_

42) ON ABOUT JUNE 18, 2007, DEFENDANT FLOWERS DENIED
PLAINTIFFS APPEAL AT INFORMAL LEVEL OF REVIEW STATING PLAINTIFF HAD
BEEN SCHEDULED ALL ALONG FOR X-RAY/U.S. OF HIS KIDNEY WHICH IS
LESS THAN CANDID AS THE SCHEDULE WAS NOT MADE UNTIL 6/13/07
AFTER PLAINTIFF HAD BEEN RUSHED ON EMERGENCY IN THE MIDDLE OF THE
NIGHT. FURTHER, DEFENDANT FLOWERS DENIED PLAINTIFFS REQUEST TO BE
SEEN BY A UROLOGIST., AND STATED DEFENDANT RISENHOOVER WAS NOT
NEGLIGENT BECAUSE SHE "DID WHAT WAS MEDICALLY INDICATED" (SEE:
EXHIBIT _13_ CDC-602 FORM PART _C_ DATED: 6/18/07).

43) ON ABOUT JUNE 19, 2007 PLAINTIFF SUBMITTED HIS 602 APPEAL
FOR FORMAL LEVEL OF REVIEW CLAIMING HE CONTINUED TO HAVE MEDICAL
ISSUES THAT NECESSITATED THE REMOVAL OF KIDNEY STONES AND AN APPOINTMENT
WITH A SPECIALIST UROLOGIST BASED ON THE PREVIOUS URINALYSIS REPORTS
(i.e., ABNORMAL HIGH LEVELS OF CALCIUM OXALATE CRYSTALS, COLOR AND APPEARANCE
ETC.,) IN WHICH THE ACTIONS OR LACK THEREOF BY DEFENDANT RISENHOOVER
DOES NOT ADDRESS NOR ALLEVIATE PLAINTIFFS UNDERLYING CONDITION (SEE:
EXHIBIT _13_ CDC-602 FORM AT PT. _D_ DATED: 6/19/07) ALSO PLAINTIFF COMPLAINED
THAT NO PAIN-RELIEVING MEDICATION HAD BEEN GIVEN HIM AT ALL UNTILL
6/13/07 AND ONLY AFTER HE HAD TO BE RUSHED OUT ON AN EMERGENCY
VISIT TO THE PRISONS MAIN CLINIC (EXHIBIT _13_, 602 PT. _D_).

44) ON ABOUT JUNE 20, 2007 PLAINTIFF WAS TAKEN TO D-FACILITY
CLINIC TO SEE DEFENDANT RISENHOOVER REGARDING HIS APPEAL ISSUES.
DURING THIS VISIT PLAINTIFF AGAIN REPORTED HE WAS STILL HAVING SEVERE PAIN
IN THE KIDNEY, STOMACH AREA AND THE PAIN HAD ALSO NOW EXTENDED TO HIS
URETHRA WHICH WAS BECOMING MORE INTENSE EVERY DAY. FURTHER, THAT HE WAS
HAVING A VERY DIFFICULT AND PAINFUL TIME URINATING AS WELL VERY FREQUENT
URGENCIES TO URINATE (EVERY FIVE MINUTES OR SO). PLAINTIFF EXPRESSED A
SERIOUS CONCERN FOR HIS WELL-BEING AT NOT HAVING BEEN REFERRED TO A
UROLOGIST AND NO TREATMENT FOR HIS CONDITION. (SEE "EXHIBIT _1_ PERSONAL
NOTES" AT PG. 6-7) HOWEVER, DEFENDANT RISENHOOVER WAS UNMOVED
AND SAID SHE DIDN'T CARE ABOUT NEW PAINS. SHE ONLY WANTED TO TALK ABOUT
PLAINTIFFS 602 APPEAL ISSUES. AND ASKED WHAT WAS THE PROBLEM.

_12_ OF _36_

PLAINTIFF AGAIN RELAYED WHAT HAD TAKEN PLACE ON THE NIGHT OF 6/13/07 AND WHAT HE WAS TOLD BY THE PRISONS MAIN CLINIC. R.N. THOMAS REGARDING THE ABNORMALITIES REPORTED IN HIS PREVIOUS URINALYSIS TESTS INDICATING PLAINTIFF SUFFERS FROM A RENAL UROLOGICAL DISORDER. DEFENDANT RISENHOOVER AGAIN STATED R.N. THOMAS WAS NOT A DOCTOR, OBVIOUSLY NOT QUALIFIED TO READ MEDICAL REPORTS AND THEREFORE REFUSED TO EVEN CONSIDER ANYTHING R.N. THOMAS MAY HAVE SEEN OR INSTRUCTED TO THE PLAINTIFF. RISENHOOVER THEN TOLD PLAINTIFF THAT IN FACT, NOTHING WAS SHOWN IN ANY OF THE PREVIOUS URINALYSIS REPORTS WHICH WOULD BE CAUSE FOR R.N. THOMAS TO BE CONCERNED ENOUGH TO MENTION A RENAL UROLOGICAL DISORDER, PAIN MEDICATION OR SOUND WAVE TREATMENT. (SEE EXHIBIT 1 "PERSONAL NOTES" AT PG. 6-7).

45) PLAINTIFF INSISTED THAT IF EVERYTHING WAS NORMAL AS RISENHOOVER CLAIMED THEN HOW COULD SHE EXPLAIN TO HIM THE ON-GOING AND INCREASING ABDOMINAL, KIDNEY AND URETHRA PAIN, ESPECIALLY THE 6/13/07 EPISODE AS WELL AS PRESENTLY. DEFENDANT RISENHOOVER REPLIED THAT THERE WAS NOTHING WRONG WITH HIM AND TO "JUST DRINK MORE WATER". HOWEVER PLAINTIFF ADVISED RISENHOOVER HE HAD ALREADY BEEN DRINKING A LOT OF WATER SINCE BACK IN MARCH 2007 WHEN SHE INITIALLY INSTRUCTED HIM TO DO SO, BUT THAT THE PAIN WAS VERY REAL, NOT GOING AWAY, AND WAS NOW ALSO HAVING PAIN IN HIS URETHRA DURING URINATION. AT WHICH POINT RISENHOOVER BECAME ANGERED WITH PLAINTIFF AND YELLED AT HIM: "I TOLD YOU TO DRINK WATER!" (EXHIBIT 1 PERSONAL NOTES AT PG 6-7). PLAINTIFF WAS THEN ORDERED BACK TO HIS CELL AND TOLD TO REPORT ANY FURTHER PROBLEMS. HE WAS AGAIN DENIED PROPER TREATMENT AND ALL RISENHOOVER DID WAS ORDER ANOTHER URINE TEST. (SEE: EXHIBIT 14 PHYSICIANS ORDERS DATED: 6/20/07).

46) ON ABOUT JULY 1, 2007 PLAINTIFF WAS TAKEN TO THE PRISONS SPECIALTY CLINIC FOR AN ULTRASOUND EXAMINATION WHERE HE COMPLAINED ABOUT HIS SYMPTOMS AND RELAYED HE WAS HAVING PAIN AND DIFFICULTY URINATING. THE ULTRASOUND WAS PERFORMED AND READ BY DOCTOR PHILIP GRIMM, WHO STATED THAT THERE WAS THOUGHT TO BE ATLEAST A SINGLE RENAL CYST INVOLVING BOTH KIDNEYS. AS WELL THAT RENAL CALCULI WERE NOT RECOGNIZED, BUT

13 OF 36

SMALL STONES COULD NOT BE EXCLUDED" (SEE: EXHIBIT 15 NOTIFICATION DATED: 7/9/07: ALSO CF. EXHIBIT 18 FIRST LEVEL REVIEWERS RESPONCE DATED: 7/23/07 ).

47) ON APPROXIMATELY JULY 5, 2007 PLAINTIFF HAD ANOTHER ACUTE PAIN ATTACK IN HIS KIDNEY, ABDOMEN AND GROIN AREA AROUND 7:30 AM. COUPLED WITH A REAL URGENCY TO URINATE HOWEVER WHEN HE ATTEMPTED TO DO SO THERE WAS NO URINE FLOW, FEELING AS IF SOME THING WAS BLOCKING THE URINE AND PLAINTIFF COULD ACTUALLY FEEL AN OBJECT "LODGED" IN HIS URETHRA NEAR THE BASE OF THE PENIS. THAT NIGHT PLAINTIFF SUBMITTED AN EMERGENCY MEDICAL REQUEST FORM BECAUSE HE WAS IN EXCRUCIATING PAIN FROM THE OBJECT THAT WAS LODGED IN THE URETHRA (SEE EXHIBIT 16 CDC/PBSP 7362 FORM DATED: 7/5/07). HIS REQUEST HOWEVER WAS IGNORED AND LATER THAT NIGHT AROUND 11:30 PM PLAINTIFF WAS AGAIN ATTEMPTING TO URINATE AND FELT AS IF SOMETHING WAS "CUTTING" HIM INSIDE THE URETHRA WHICH LED TO ATLEAST (2) TWO SOLID OBJECTS (STONES) COMING OUT WITH SOME URINE AND BLOOD (SEE EXHIBIT 1 "PERSONAL NOTES" PG.9). PLAINTIFF WAS ABLE TO SECURE ONE STONE FOR RECORDS AND TO TURN OVER TO THE DEFENDANTS, 2./ WHICH HE DID DURING A SUBSEQUENT DR. APPOINTMENT.

48) ON APPROXIMATELY JULY 17, 2007 PLAINTIFF WAS TAKEN AGAIN TO D-FACILITY CLINIC FOR ANOTHER REVIEW OF HIS APPEAL ISSUES WITH DEFENDANT RISENHOOVER. AT THE INTERVIEW, PLAINTIFF REPORTED THE PAIN ATTACK AND HOW TWO SOLID STONES WERE LODGED IN HIS URETHRA AND LATER PUSHED OUT ON 7/5/07 WHICH CAUSED HIM GREAT PAIN AND HAD SINCE BEEN VERY SOAR IN HIS TESTICLES AND BASE OF THE PENIS. PLAINTIFF FURTHER INFORMED RISENHOOVER HE HAD SECURED ONE OF THE STONES AND HAD IT IN HIS CELL WHICH HE KEPT FOR PROPER RECORDS AND TO PROVIDE IT TO MEDICAL STAFF IF SO REQUIRED (EXHIBIT 1 PERSONAL NOTES PG.11). PLAINTIFF REQUESTED THAT HE BE TREATED AND EXAMINED FURTHER BECAUSE EVER SINCE PASSING THE STONES. ALTHOUGH HE COULD URINATE NORMALLY, HE HAD BEEN EXPERIENCING SERIOUS SOARNESS IN THE TESTICLES AND PENIS. DEFENDANT RISENHOOVER THEN ACTED REAL NERVOUS AND TOLD PLAINTIFF

2. IT SHOULD BE NOTED, THE STONE WAS LATER RECEIVED BY DEFENDANTS AND TESTED FOR CONTENTS IN A PATHOLOGY REPORT DATED: 8/5/07 (SEE EXHIBIT 20).

14 OF 36

THAT FROM NOW ON SHE HAD TO FIRST GET APPROVAL FROM THE CHIEF MEDICAL OFFICER (C.M.O.) M. SAYRE, BEFORE SHE WOULD DO ANYTHING ELSE IN PLAINTIFFS CASE ON ANY OF HIS MEDICAL ISSUES (SEE EXHIBIT _1_, PERSONAL NOTES' AT PG.11 > PLAINTIFF WAS AGAIN DENIED ANY PAIN MEDICATION, NOR TREATMENT AND WAS ORDERED BACK TO HIS CELL TO "GO AND DRINK MORE WATER" (SEE: EXHIBIT _17_ PHYSICIANS ORDERS" DATED: 7/17/07 ).

49> ON APPROXIMATELY JULY 23, 2007 DEFENDANT SAYRE PARTIALLY GRANTED PLAINTIFFS' 602 APPEAL ONLY IN SO FAR AS PLAINTIFF WOULD BE SCHEDULED FOR X-RAYS' AND ULTRASOUND. HOWEVER THERE WAS AN INFERENCE THAT SINCE PLAINTIFF HAD ALREADY PASSED THE STONES HE NO LONGER NEEDED SOUND WAVES TREATMENT. AND NOTED THAT PLAINTIFFS REQUEST TO BE CONPENSATED FOR PAIN AND SUFFERING WAS BEYOND THE SCOPE OF THE (ADMINISTRATIVE) APPEALS PROCESS. AS FOR HIS REQUEST FOR A PRISON TRANSFER IT WAS A CUSTODY ISSUE (SEE: EXHIBIT _18_ FIRST LEVEL RESPONCE" DATED: 7/23/07 ).

50> ON APPROXIMATELY JULY 29, 2007 PLAINTIFF WAS DISSATISFIED WITH THE LOWER LEVEL DECISION AND RESUBMITTED HIS MEDICAL 602 TO THE SECOND LEVEL FOR REVIEW DESPITE THE 602 BEING PARTIALLY GRANTED, CLAIMING HIS ISSUES WERE STILL NOT FULLY ADDRESSED AND ADDING THAT HE NOW SUFFERED FROM ADDITIONAL CO-EXISTING PROBLEMS AS A RESULT OF BEING LEFT WITHOUT TREATMENT FOR (62> DAYS WHERE RISENHOOVER WAS AWARE OF PLAINTIFFS SERIOUS MEDICAL NEEDS VIA (INTER ALIA> VARIOUS "ABNORMAL" URINALYSIS TESTS RESULTS BUT DID NOTHING TO TREAT HIM OR TO PREVENT THE INJURIES WHICH PLAINTIFF NOW HAD SUSTAINED (SEE: EXHIBIT _13_ CDC-602 FORM AT PT. _E_ DATED: 7/29/07 ).

51> ON ABOUT JULY 31, 2007 PLAINTIFF WAS TAKEN TO D-FAC. CLINIC FOR ANOTHER FOLLOWUP WITH DEFENDANT RISENHOOVER BECAUSE HE CONTINUED TO REPORT SEVERE PAIN IN HIS KIDNEYS, TESTICLES AND AT THE BASE OF THE PENIS. HE PLEADED WITH RISENHOOVER FOR HELP AND REPORTED THAT SINCE THE DAY WHEN THE STONES GOT LODGED IN HIS URETHRA AND THEN PUSHED OUT, HE WAS NOW HAVING CONSTANT AND INCREASING PAIN IN HIS GROIN AREA. PLAINTIFF ALSO STATED WITH PAIN IN HIS TESTICLES AND PENIS HE WAS AGAIN

HAVING TROUBLE URINATING. HOWEVER, PLAINTIFF'S REQUESTS FOR PAIN MEDICATION AND TREATMENT WAS AGAIN IGNORED AND DENIED. RATHER, DEFENDANT RISENHOOVER DECIDED TO EXAMINE PLAINTIFF'S PROSTATE WHICH RESULTED IN RISENHOOVER FINDING AND INFORMING DEFENDANT THAT SHE FOUND HIS PROSTATE EXTREMELY INFLAMED POSSIBLY CAUSED FROM THE PREVIOUS BLOCKAGE OF HIS URETHRA BY THE KIDNEY STONES. LEADING TO A PERCEIVED URINARY TRACT INFECTION (U.T.I.). DURING THIS VISIT, PLAINTIFF WAS DIAGNOSED WITH "PROSTITIS" AND "EPIDIDYMITIS" (SEE: EXHIBIT 19 "PHYSICIANS ORDERS" DATED 7/31/07) DURING THIS VISIT PLAINTIFF ALSO GAVE DEFENDANT THE KIDNEY STONE WHICH HE HAD PASSED, FOR SENDING TO PATHOLOGY FOR EXAMINATION (EXHIBIT 19). PLAINTIFF AGAIN REQUESTED TO BE REFERRED TO A UROLOGIST FOR HIS RENAL UROLOGICAL DISORDER AND WAS AGAIN REFUSED AND SENT TO HIS CELL IN PAIN WITH NO FURTHER TREATMENT (SEE: EXHIBIT 1 PERSONAL NOTES AT PG. 12-13).

52) ON APPROXIMATELY AUGUST 8, 2007 THE PATHOLOGY EXAMINATION REPORT OF THE "STONE" WAS ISSUED NOTING A COMPOSITION OF: CALCIUM OXALATE MONOHYDRATE 80% AND CALCIUM OXALATE DIHYDRATE 20%. (SEE: EXHIBIT 20 "STONE ANALYSIS" DATED: 8/8/07).

53) PER DEFENDANT RISENHOOVER'S INSTRUCTIONS, PLAINTIFF SUBMITTED A NEW 7362 MEDICAL REQUEST FORM TO COMPLAIN ABOUT THE PAIN HE WAS HAVING IN HIS TESTICLES AND GROIN AREA. PLAINTIFF REPORTED BOTH TO DEFENDANT FLOWERS ON 8/2/07 AND DEFENDANT RISENHOOVER ON 8/14/07 THAT HE WAS VERY CONCERNED BECAUSE OF THE PAIN IN HIS TESTICLES AND GROIN AREA WAS GETTING WORSE AND CAUSING HIM PROBLEMS TO URINATE AND PLAINTIFF WAS UNABLE TO HAVE AN ERECTION PLUS FELT PAIN AND NUMBNESS IN THE AREA BETWEEN THE SCROTUM AND ANUS. PLAINTIFF EXPLAINED THESE SYMPTOMS STARTED AFTER A KIDNEY STONE WAS LODGED FOR HOURS IN HIS URETHRA AND EXPRESSED CONCERN THIS MIGHT BE THE CAUSE OF HIS ON-GOING MEDICAL PROBLEMS (SEE EXHIBIT 21 PBSP-7362 FORM DATED: 8/1/07).

54) ON APPROXIMATELY AUGUST 3, 2007 HEALTH CARE MANAGER MAUREEN MCLEAN WAS ASSIGNED TO INVESTIGATE PLAINTIFF'S 602 ALLEGATIONS; AND JOSEPH

KRAVITZ (CCII) REVIEWED PLAINTIFFS APPEAL ON 8/2/07. BOTH OF THESE DEFENDANTS PARTIALLY GRANTED THE 602 APPEAL. NO INTERVIEW WAS EVER CONDUCTED WITH PLAINTIFF RE. HIS SECOND LEVEL APPEAL.

55) AT SECOND LEVEL, DEFENDANTS NOTE IN THEIR "FINDINGS" THAT PLAINTIFFS URINE WAS TESTED IN THE CLINIC AND WAS REPORTED WITHIN NORMAL LIMITS BUT DID NOT INDICATE WHAT DATE THE URINALYSIS TESTED NORMAL.[3] ALSO, THAT A REVIEW OF PLAINTIFFS MEDICAL FILE SHOWED HE HAD BEEN RECEIVING APPROPRIATE CARE FOR HIS "UROLOGICAL DISORDER.[4] THE DEFENDANTS MCLEAN AND KRAVITZ DECIDED TO PARTIALLY GRANT THE APPEAL ONLY IN THAT PLAINTIFF WAS GIVEN AN ULTRASOUND EXAM, BUT MAINTAINED THAT PLAINTIFFS REQUESTS FOR COMPENSATION FOR PAIN AND SUFFERING WAS BEYOND THE SCOPE OF THE CDCR APPEALS PROCESS AND THAT A TRANSFER WAS DENIED AS HIS MEDICAL NEEDS WERE BEING MET AT PBSP (SEE: EXHIBIT [22], "SECOND LEVEL APPEAL RESPONSE" DATED: 8/3/07).

56) ON ABOUT AUGUST 8, 2007 PLAINTIFF SUBMITTED HIS 602 APPEAL FOR THIRD LEVEL OF REVIEW REITERATING HIS CLAIMS AND ADDING THAT RISENHOOVERS ACTS OR [LACK THEREOF] UNDER THE SUPERVISION AND RESPONSIBILITY OF DEFENDANT SAYRE M.D., HAD CAUSED HIM ADDITIONAL MEDICAL PROBLEMS AND IRREPARABLE INJURY (SEE EXHIBIT [13] 602 APP. AT PT. [H]).

57) ON APPROXIMATELY AUGUST 14, 2007 PLAINTIFF WAS CALLED BACK TO THE D-FAI CITY CLINIC TO SEE DEFENDANT RISENHOOVER IN REGARDS TO THE "PROSTITIS" DIAGNOSIS THAT HAD RESULTED FROM PLAINTIFFS KIDNEY STONE GETTING LODGED IN HIS URETHRA BACK IN JULY. (SEE: EXHIBIT [23] "PHYSICIANS ORDERS" DATED: 8/14/07). DURING THIS VISIT PLAINTIFF ONCE AGAIN REPORTED TO RISENHOOVER HIS ABDOMINAL, KIDNEY AND GROIN PAIN CONTINUED TO BOTHER HIM SEVERELY AND WAS STILL GETTING WORSE CAUSING HIM TROUBLE URINATING, COULD NOT MAINTAIN AN ERECTION AND KEPT HIM UP AT NIGHT. PLAINTIFF AGAIN REQUESTED TO BE GIVEN MEDICATION AND TO BE SEEN BY A UROLOGIST WHO COULD TREAT HIM FOR HIS SERIOUS MEDICAL

---

3. IT SHOULD BE NOTED, EVERY URINALYSIS REPORT BEFORE PLAINTIFFS URETHRA BEING BLOCKED WITH STONES AND THEN PUSHED OUT, CAME BACK "ABNORMAL." IT WAS ONLY AFTER THE STONES WERE PUSHED OUT (CAUSING PERMANENT INJURY IN THE PROCESS) THAT PLAINTIFFS URINE TESTS BEGAN TO COME BACK NORMAL AGAIN. BUT THE DAMAGE TO PLAINTIFFS URETHRA AND PROSTATE WAS ALREADY DONE (EXHIBITS [3], [4] AND [6]).

4. PLEASE NOTE THE IMPORTANCE OF DEFENDANTS MCLEAN AND KRAVITZ REFER TO PLAINTIFFS CONDITION AS A "UROLOGICAL DISORDER" WHEREAS UPTO THIS POINT DEFENDANT RISENHOOVER HAD DENIED THE COMPLAINTS INSISTING THERE WAS NOTHING WRONG AND DENYING PLAINTIFFS REQUESTS FOR TREATMENT AND TO BE REFERRED TO A UROLOGIST ON THE BASIS THERES NOTHING WRONG WITH HIM AND THE URONALYSIS REPORT DID NOT INDICATE A UROLOGICAL DISORDER. THUS, NO NEED FOR A UROLOGIST.

PROBLEMS. FURTHER, PLAINTIFF POINTED OUT THAT PURSUANT TO SECOND LEVEL INSTRUCTIONS OF HIS APPEAL HE WAS TOLD TO REPORT FURTHER PROBLEMS/SYMPTOMS WHICH HE WAS NOW DOING SO AS TO GET PROPER TREATMENT FOR HIS CONDITION (SEE EXHIBIT 1 PERSONAL NOTES PG 14). HOWEVER, DEFENDANT RISENHOOVER ONCE AGAIN TOLD PLAINTIFF "THERES NOTHING WRONG WITH YOU A LITTLE WATER WONT CURE." ALSO, RISENHOOVER INFORMED PLAINTIFF THAT HER BOSS (C.M.O.) SAYRE HAD ADVISED HER NOTHING HAS CHANGED WITH REGARDS TO PLAINTIFFS CASE AND NOTHING WAS TO BE DONE FOR HIM WITHOUT FURTHER (C.M.O.) SAYRE'S APPROVAL. AS SUCH, PLAINTIFF WAS AGAIN NOT GIVEN ANYTHING TO TREAT HIM AT THIS TIME AND WAS SIMPLY ORDERED BACK TO HIS CELL AFTER GIVING YET ANOTHER URINE SAMPLE FOR TESTING (EXHIBIT 1 "PERSONAL NOTES" PG 14). (ALSO, EXHIBIT 23 "PHYSICIANS ORDERS").

58) ON ABOUT AUGUST 16/2007 THE RESULTS OF THE BLOOD AND URINE TESTS OF 8/15 CAME IN WHICH SHOWED THE URINE TEST WAS NORMAL BUT THE BLOOD TEST REPORTED VARIOUS THINGS OUT OF RANGE INCLUDING: PHOSPORUS SERUM (LOW), AST/SGOT (HIGH), BILIRUGIN (HIGH), CHOLESTEROL (LOW), AND IRON (HIGH) (SEE: EXHIBIT 24 TESTS DATED: 8/16/07).

59) ON ABOUT AUGUST 23, 2007 FURTHER TESTS ON PLAINTIFFE'S HEPATITIC PANEL ALSO CAME BACK SHOWING HIGH LEVELS OF: AST/SGOT, AND BILIRUGIN, (SEE: EXHIBIT 25 TEST DATED: 8/23/07).

60) ON APPROXIMATELY SEPTEMBER 9, 2007 PLAINTIFF SUBMITTED A NEW MEDICAL REQUEST FORM (PBSP-7362) TO REPORT COMPLICATIONS WITH HIS URINARY TRACT INFECTION (U.T.I) INCLUDING TERRIBLE PAIN IN HIS ABDOMEN, AND GROIN AREA, DIFFICULTY URINATING WITH URGES TO URINATE BUT NO PRESSURE, DRIBBLING AND BURNING SENSATION. PLAINTIFF ADVISED THAT THESE SYMPTOMS WERE PREVENTING HIM FROM FUNCTIONING DAILY ACTIVITIES AND NOT LETTING HIM SLEEP AT NIGHT (SEE: EXHIBIT 26 "PBSP-7362 FORM" DATED: 9/9/07).

61) ON ABOUT SEPTEMBER 14, 2007 PLAINTIFF WAS SEEN BY DEFENDANT RISENHOOVER REGARDING HIS PBSP-7362 FORM WITH COMPLAINTS OF (U.T.I) PROBLEMS. DURING THE VISIT PLAINTIFF REPORTED FURTHER PAIN IN HIS GROIN AND ABDOMEN, TROUBLE WITH AND BURNING WHEN TRYING TO URINATE

18 OF 36

WHICH WAS CAUSING HIM PROBLEMS AND COULD NOT SLEEP AT NIGHT. DEFENDANT RISENHOOVER INFORMED HIM THAT THE (U.T.I.) WAS LIKELY THE RESULT OF THE DAMAGE TO HIS URETHRA FROM THE KIDNEY STONES GETTING LODGED IN THERE. AND PLAINTIFF ASKED TO BE GIVEN SOME TYPE OF ANTI'BIOTICS FOR THE INFECTION BUT RISENHOOVER REFUSED SAYING HER BOSS (C.M.O.) SAYRE HAD ALREADY GIVEN ORDERS NOTHING HAD CHANGED AND NOTHING DONE FOR PLAINTIFF WITHOUT HIS APPROVAL AND THIS OUT OF HER (RISENHOOVER) HANDS. (SEE EXHIBIT <u>1</u> PERSONAL NOTES PG.16). WHEN PLAINTIFF COMPLAINED THAT HE WAS BEING DENIED PROPER CARE FOR HIS PROBLEMS DEFENDANT RISENHOOVER PUT ALL THE BLAME ON HER SUPERVISOR (C.M.O.) SAYRE AND SAID TO "TAKE IT UP WITH HIM." PLAINTIFF WAS THEN ORDERED BACK TO HIS CELL AGAIN WITHOUT ANY MEDICAL TREATMENT ONLY MORE URINE TESTS [5] AND TO DRINK MORE WATER (SEE EXHIBIT <u>1</u> PERSONAL NOTES PG.16) (ALSO, EXHIBIT <u>27</u> PHYSICIANS ORDERS DATED: 9/14/07) AND (EXHIBIT <u>28</u> URINALYSIS TEST DATED: 9/15/07)

62) ON ABOUT OCTOBER 25, 2007 PLAINTIFF WAS TAKEN TO D-FACILITY CLINIC FOR A FOLLOW UP VISIT WITH DEFENDANT RISENHOOVER REGARDING THE URINALY-SIS FROM 9/14/07. AT THE FOLLOW UP PLAINTIFF EXPRESSED SERIOUS CONCERN ABOUT HIS CONDITION BECAUSE NOW ON TOP OF HAVING SEVERE PAIN IN THE ABDOMEN AND GROIN AREA HE HAD DISCOVERED A "LUMP" DEVELOPING AT THE BASE OF THE PENIS CAUSING HIM MUCH PAIN AND DISCOMFORT TO THE POINT HE WAS NO LONGER ABLE TO "FUNCTION NORMALLY" NOR TO CARRY OUT DAILY ACTIVITIES SUCH AS PHYSICAL EXERCISE. AND COULD NOT EVEN SIT FOR OVER (20) MINUTES AT A TIME WITHOUT FEELING GREAT PAIN (SEE EXHIBIT <u>29</u> "PHYSICIANS PROGRESS NOTES" DATED: 10/25/07) PLAINTIFF ALSO REPORTED HE STILL HAD PAIN IN THE TESTICLES AND CONSTANT URINATION, LACK OF STREAM BURNING, ETC. (EXHIBIT <u>29</u> PHY.'S PROG. NOTES) DEFENDANT RISENHOOVER'S REPLY WAS TO ALL THIS THAT "DRINKING WATER WAS THE BEST THING TO DO", HOWEVER WHEN PLAINTIFF INSISTED ON ASKING FOR TREATMENT AND WANTING TO KNOW WHAT WOULD BE DONE ABOUT THE LUMP ON THE PENIS AND PAIN OF THE TESTICLES, RISENHOOVER STATED "I'M DONE DEALING WITH THIS AND ITS OUT OF MY HANDS." TELLING PLAINTIFF HE HAD BEEN FINALLY REFERRED TO A UROLOGIST (EXHIBIT <u>1</u> PG.16-17; ALSO EXHIBIT <u>29</u> PG. 3 OF 3).

---

5. ON INFORMATION AND BELIEF, DEFENDANT RISENHOOVER FINALLY AGREED WITH PLAINTIFF AND DIAGNOSED HIM WITH A "UROLOGICAL DISORDER" ON HIS FOLLOW UP VISIT OF 9/14/07 (CF EXHIBIT <u>28</u> PG 2 OF 3).

63) ON APPROXIMATELY NOVEMBER 19, 2007 PLAINTIFF WAS TRANSPORTED TO A MEDICAL FACILITY, LOCATED IN EUREKA CALIFORNIA WHERE HE WAS SEEN BY A SPECIALIST UROLOGIST DR. JOHN ALBERTINI. PLAINTIFF REPORTED TO DR. ALBERTINI OF EXPERIENCING SEVERE PAIN IN HIS KIDNEY, ABDOMEN AND GROIN AREAS AS WELL AS OTHER RELATED MEDICAL PROBLEMS FOR ABOUT SIX TO SEVEN MONTHS AND HAD NOT RECEIVED TREATMENT OR MEDICATION TO ALLEVIATE HIS SYMPTOMS DESPITE COMPLAINING AND REPORTING TO DEFENDANTS ON NUMEROUS OCCASIONS. ALSO, PLAINTIFF REPORTED HIS HISTORY WITH KIDNEY STONES, AND THAT ON JULY 5, TWO STONES HAD LODGED IN HIS URETHRA AND LATER PUSHED OUT. FURTHER, THAT EVER SINCE, ADDITIONAL PROBLEMS HAD BECOME WORSE INCLUDING A URINARY TRACK INFECTION, PROSTATIS, PAIN IN THE TESTICLES, LOSS OF LIBIDO, FREQUENT URINATION, PAIN AND A "LUMP" ON THE LEFT BASE OF THE PENIS AND ALSO THAT HE STARTED NOTICING AN ABNORMAL CURVATURE OF THE PENIS WHEN THERE WAS AN ERECTION (SEE: EXHIBIT __30__ "CON-SULTATION REPORT BY DR. ALBERTINI DATED: 11/19/07). DR. ALBERTINI ADVISED PLAINTIFF THIS VISIT WOULD CONSIST OF AN INITIAL AND PARTIAL EXAMINATION DUE TO THE FACT DEFENDANTS HAD FAILED TO SEND HIM PLAINTIFFS MEDICAL FILE FULLY. HOWEVER, DR. ALBERTINI WAS ABLE TO DIAGNOSE PLAINTIFF WITH "PEYRONIES DISEASE" AND EXPLAINED THAT THIS IS CAUSED BY AN INJURY AND BAD SCARRING TO THE PENIS. FURTHER, THAT SUCH A DISEASE IS SERIOUS AND MUST BE TREATED SO AS TO PREVENT MORE PERMANENT PENILE DAMAGE AND DISFIGUREMENT (SEE EXHIBIT __30__ Id; ALSO SEE: APPENDIX # __1__ "HANDOUT ON P.D."). DR. ALBERTINI ALSO EXPLAINED TO PLAINTIFF SUCH AN INJURY COULD HAVE BEEN SUSTAINED BY WAY OF HIS RECENT KIDNEY STONES BEING LODGED IN HIS URETHRA AND PUSHED OUT. PLAINTIFF WAS THEN PRESCRIBED FOUR MEDICATIONS TO INITIATE TREATMENT FOR PLAINTIFFS CONDITION (SEE: EXHIBIT __30__ "CONSULTATION" AT PG. 3). PLAINTIFF WAS TOLD HE WOULD HAVE A FOLLOW UP WITH DR. ALBERTINI 3-4 MONTHS AND WAS THEN TRANSPORTED BACK TO THE PRISON. PLAINTIFF WAS ALSO TOLD BY PBSP MEDICAL STAFF, UPON HIS RETURN TO THE PRISON, THAT HE WOULD HAVE A FOLLOW-UP VISIT WITH DEFENDANT RISENHOOVER TO DISCUSS THE CONSULTATION WITH DR. ALBERTINI AND ANY ORDERS OR RECOMMENDATIONS MADE BY THAT DOCTOR (EXHIBIT __1__ PERSONAL NOTES PG. 17-18).

64) MEANWHILE, ON APPROXIMATELY NOVEMBER 27, PLAINTIFFS 602 APPEAL WAS DENIED BY DEFENDANTS V. O'SHAUGHNESSY AND NANCY GRANNIS AT THE

20 OF 36

DIRECTORS LEVEL OF ADMINISTRATIVE APPEAL. THESE DEFENDANTS UPHELD THE PRISONS ACTIONS AND NOTED THAT PLAINTIFF HAD SEEN A SPECIALIST, HAD AN ULTRASOUND, URINE SAMPLES WERE DONE, AND THAT HE HAD RECEIVED MEDICATION (SEE: EXHIBIT <u>31</u> "DIRECTORS LEVEL APPEAL DECISION" DATED: 11/27/07) ALTHOUGH THIS FAILED TO NOTE THESE ACTIONS WERE TAKEN ONLY AFTER PLAINTIFF WAS LEFT FOR MONTHS WITHOUT SUCH AND LEFT TO PASS THE LODGED STONES ON HIS OWN CAUSING HIM SEVERE DAMAGE AND PERMANENT DISFIGUREMENT (EXHIBIT <u>31</u>). THESE DEFENDANTS ALSO FOUND THAT PLAINTIFFS REQUESTS FOR MONETARY COMPENSATION AND A PRISON TRANSFER HAD BEEN ADDRESSED BY THE PRISON. AND THUS DENIED THE APPEAL IN ITS ENTIRETY.

65) AS IT IS, PLAINTIFF WAS NEVER TAKEN FOR A FOLLOW-UP WITH DEFENDANT RISENHOOVER (WITHIN THE 14 DAYS HE WAS TOLD) SO, ON ABOUT NOVEMBER 29, 2007 HE SUBMITTED ANOTHER INMATE 602 APPEAL ASKING TO BE GIVEN THE MEDICATION THAT HAD BEEN RECOMMENDED FOR HIM BY DR. ALBERTINI (THE UROLOGIST) (SEE: EXHIBIT <u>32</u> CDC-602-FORM DATED: 11/29/07). THE APPEAL WAS WRONGLY DENIED BY DEFENDANT FLOWERS BECAUSE HE SAID PLAINTIFF WAS "SCHEDULED FOR A FOLLOW UP FOR THIS..." (SEE: EXHIBIT <u>32</u> 602 AT PT C)

66) ON ABOUT JANUARY 7, 2008 PLAINTIFF WAS FINALLY TAKEN TO D-FAC. CLINIC FOR A FOLLOW UP WITH DEFENDANT RISENHOOVER FOR A DISCUSSION OF PLAINTIFFS' CONSULTATION WITH DR. ALBERTINI BACK IN 11/19/07 WHERE HE COMPLAINED TO DEFENDANT ABOUT BEING LEFT (42) DAYS WITHOUT THE MEDICATION INDICATED BY THE UROLOGIST AND WITHOUT THE SCHEDULED FOLLOW UP VISIT TO DISCUSS THESE ISSUES ABOUT HIS DIAGNOSED PEYRONIES DISEASE. HOWEVER, DEFENDANT RISENHOOVER PASSED THE BUCK STATING IT WAS DR. ALBERTINI'S RESPONSIBILITY, NOT HERS. AND ADDED TO PLAINTIFF THAT: "IF YOU WERE ON THE STREETS AND NOT A CRIMINAL, YOU WOULD BE ABLE TO GET YOUR OWN MEDICATION" (SEE: EXHIBIT <u>1</u> PERSONAL NOTES AT PG.19) NEVERTHELESS, DEFENDANT DID FINALLY GIVE PLAINTIFF THE MEDICINE RECOMMENDED BY THE UROLOGIST AND ALSO DID X-RAYS TO CHECK FOR ANY ADDITIONAL/REMAINING KIDNEY STONES.

67) FINALLY, ON ABOUT MARCH 28, 2008, PLAINTIFF WAS AGAIN TRANSPORTED TO THE CLINIC IN THE CITY OF EUREKA FOR HIS FOLLOW-UP APPOINTMENT WITH UROLOGIST DR. ALBERTINI WHERE PLAINTIFF REPORTED THAT THE MEDICATION

HE WAS GIVEN WAS NOT WORKING AND THAT HE WAS NOW LEFT WITH PERMANENT
PAIN IN HIS GROIN WHENEVER HE URINATES, DURING AN EXERCISE ROUTINE, WHEN
IN A SITTING POSITION FOR OVER (30) MINUTES, AND ALSO WITH ERECTILE
DISFUNCTION (E.D.) DISORDER AND PENILE DISFIGUREMENT (SEE: EXHIBIT
1 PERSONAL NOTES' AT PG. 19. >.

### FACTS PERTAINING TO DEFENDANTS' NONFEASANCE.

68) DEFENDANTS KNEW OR REASONABLY SHOULD HAVE KNOWN OF THEIR DUTY
AND RESPONSIBILITY TO COMPLY, BUT DID NOT COMPLY, WITH THE RELEVANT POLICIES
AND LAWS, INCLUDING BUT NOT LIMITED TO LAWS WHICH:

A) PROVIDE PLAINTIFF WITH THE RIGHT TO ADEQUATE MEDICAL CARE
UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES' CONSTITUTION.

B) PROVIDE PLAINTIFF WITH ADEQUATE MEDICAL SERVICES COMMENSURATE
WITH HIS SERIOUS MEDICAL NEEDS FOR HIS UROLOGICAL DISORDER
UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION.

C) PROHIBITS DEFENDANTS FROM SUBJECTING PLAINTIFF TO UNNECESSARY
AND WANTON INFLICTION OF PAIN ... "AS DESCRIBED BY THE
EIGHTH AMENDMENT TO THE U.S. CONSTITUTION.

D) MANDATES THAT DEFENDANTS: "... PROVIDE MEDICAL SERVICES
FOR INMATES WHICH ARE BASED ON MEDICAL NECESSITY AND SUPPORTED
BY OUTCOME DATA AS EFFECTIVE MEDICAL CARE" UNDER CAL.
CODE OF REGULATIONS TITLE 15, SECTION 3350(a).

E) MANDATES THAT DEFENDANTS PROVIDE SERVICES THAT ARE MEDICALLY
NECESSARY TO...PREVENT SIGNIFICANT ILLNESS OR DISABILITY OR ALLEVIATE
SEVERE PAIN UNDER CAL. CODE OF REGS' TITLE 15, SECTION
3350 (b) (1) (4) AND (5).

### FACTS PERTAINING TO DEFENDANTS' MALFEASANCE; OPPRESSIVE AND WANTON CONDUCT.

69) DEFENDANTS ACTED WITH MALFEASANCE, OPPRESSIVE AND DELIBERATE DISREGARD
FOR PLAINTIFF'S SERIOUS MEDICAL NEEDS WHEN DEFENDANTS KNEW THAT CDCR-POLICY
AND RELEVANT LAW ENTITLED PLAINTIFF TO RECEIVE PAIN MEDICATION AND TREATMENT
FOR REMOVAL OF SEVERELY PAINFUL KIDNEY STONES'. THIS IS DEMONSTRATED BY THE
FACT DEFENDANTS KNEW OR SHOULD HAVE KNOWN OF THE EXISTENCE OF STONES BLOCKING
HIS URINARY TRACT VIA URINALYSIS REPORTS AND PLAINTIFF'S SYMPTOMS ON NUMEROUS
OCCASSIONS YET, DENIED AND/OR DELAYED PLAINTIFF'S REQUESTS FOR PAIN MEDICATION,
ACTIONS FOR HIS KIDNEY STONES AND REFERRAL TO A UROLOGIST .

70) DEFENDANTS MALFEASANCE, OPPRESSIVE, AND WANTON INFLICTION OF PAIN AGAINST PLAINTIFF HAS CAUSED AND CONTINUES TO CAUSE PLAINTIFF MENTAL ANGUISH, STRESS, PHYSICAL AND MENTAL PAIN, PENILE DISFIGUREMENT, ERECTILE DISFUNCTION, A URINARY TRACT INFECTION AND ADDITIONAL CO-EXISTING MEDICAL PROBLEMS (PROSTITIS).

### FACTS PERTAINING TO SUPERVISORY DUTY

71) ON INFORMATION AND BELIEF, DEFENDANT HOREL, AS WARDEN OF PBSP IS RESPONSIBLE FOR THE OPERATION OF PBSP AND FOR THE WELFARE OF ALL THE PRISONERS AT THE PRISON. PLAINTIFF FURTHER ALLEGES THAT DEFENDANT HOREL IS RESPONSIBLE FOR THE SUPERVISION, DIRECTION AND/OR PROPER TRAINING OF SUBORDINATE PERSONEL, AS WELL AS RESPONSIBLE FOR ENFORCING LAWS AND PRISON POLICY, INCLUDING THOSE PERTAINING TO MEDICAL CARE.

72) ON INFORMATION AND BELIEF, PLAINTIFF ALLEGES THAT DEFENDANT J. TILTON AS DIRECTOR/SECRETARY OF CDCR IS RESPONSIBLE FOR THE OVERALL OPERATION OF CDCR AND EACH INSTITUTION UNDER ITS JURISDICTION, INCLUDING PBSP. PLAINTIFF FURTHER ALLEGES THAT DEFENDANT JAMES TILTON IS RESPONSIBLE FOR ENFORCING THE LAW AND CDCR POLICY, AS WELL AS RESPONSIBLE FOR PROMULGATION, SUPERVISING PROMULGATION OF, IMPLEMENTATION, SUPERVISING THE IMPLEMENTATION OF, MONITORING COMPLIANCE WITH AND ENFORCING AND/OR SUPERVISING THE ENFORCEMENT OF MEDICAL CARE POLICIES AND PROCEDURES AFFECTING PRISONERS WITHIN CDCR.

## VI.
## CLAIM FOR RELIEF

73) PLAINTIFF REALLEGES AND INCORPORATES HEREIN BY REFERENCE EACH AND EVERY ALLEGATION OF PARAGRAPHS 1 THROUGH 72.

74) THE CONDUCT DESCRIBED HEREIN HAS BEEN AND CONTINUES TO BE PERFORMED BY DEFENDANTS, AND THEIR AGENTS AND EMPLOYEES IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES, WHILE ACTING UNDER COLOR OF AUTHORITY AND IS THE PROXIMATE CAUSE OF PLAINTIFFS ON-GOING DEPRIVATION OF RIGHTS SECURED BY THE UNITED STATES CONSTITUTION UNDER THE 8TH AND 14TH AMENDMENTS.

75) THE CONSTITUTIONAL DEPRIVATIONS HEREIN DESCRIBED ARE THE PROXIMATE RESULT OF THE OFFICIAL PERVASIVE PRACTICE AND CUSTOM OF THE CDCR, PBSP, AND DEFENDANTS. DEFENDANTS WERE AWARE OF ALL THE UNCONSTITUTIONAL

CONDUCT COMPLAINED OF HEREIN AND HAVE BEEN DELIBERATELY INDIFFERENT TO SUCH CONDUCT.

76) DEFENDANTS HEREIN DO NOT PROVIDE FOR PROMPT AND COMPETENT INITIAL DIAGNOSIS AND TREATMENT IN VIOLATION OF THE 8TH AMENDMENT; AND

77) DEFENDANTS HEREIN HAVE BEEN DELIBERATELY INDIFFERENT WHEN THEY DO NOT ENSURE THAT PLAINTIFF RECEIVES MEDICAL TREATMENT, WHEN THEY DO NOT PROVIDE FOR THE REMOVAL OF PLAINTIFF'S LODGED KIDNEY STONES OR SPECIALIZED CARE WHEN CHRONIC AND SUBSTANTIAL PAIN SUPPORTED BY URINALYSIS TESTS INDICATED A SERIOUS MEDICAL NEED, IN VIOLATION OF THE 8TH AND 14TH AMENDMENTS; AND

78) DEFENDANTS HEREIN HAVE BEEN DELIBERATELY INDIFFERENT TO PLAINTIFFS' SERIOUS MEDICAL NEEDS WHICH CONSTITUTES THE UNNECESSARY AND WANTON INFLICTION OF PAIN PRESCRIBED BY THE 8TH AMENDMENT WHEN THEY DELAY OR DENY ACCESS TO OR TREATMENT TO PROPER MEDICAL OR SPECIALIZED CARE.

79) DEFENDANTS HAVE BEEN DELIBERATE INDIFFERENT TO PLAINTIFFS MEDICAL ATTENTION BY FAILING TO ACT ON OR DIAGNOSE AN OBVIOUS SERIOUS MEDICAL NEED IN VIOLATION OF THE 8TH AMENDMENT; AND

80) DEFENDANTS HEREIN OFTEN DO NOT PERUSE PLAINTIFFS MEDICAL FILE TO FAMILIARIZE THEMSELVES WITH HIS MEDICAL HISTORY OR WITH PRESCRIBED TREATMENT SUPPORTED BY OUTCOME DATA AS EFFECTIVE MEDICAL CARE.

81) THE FAILURE OF DEFENDANTS TO PROVIDE FOR THE TREATMENT AND REMOVAL OF PLAINTIFFS KIDNEY STONES ALSO CONSTITUTES THE TORT OF NEGLIGENCE UNDER THE LAW OF CALIFORNIA.

## PRAYER FOR RELIEF

PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN. PLAINTIFF HAS SUFFERED IRREPARABLE INJURY AS A RESULT OF THE UNLAWFUL ACTS, OMISSIONS AND PRACTICES BY THE DEFENDANTS AS ALLEGED HEREIN, UNLESS PLAINTIFF IS GRANTED THE RELIEF REQUESTED. THE NEED FOR RELIEF IS CRITICAL BECAUSE THE RIGHTS AT ISSUE ARE PARAMOUNT UNDER THE CONSTITUTION OF THE UNITED STATES.

24 OF 36

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGMENT, GRANTING PLAINTIFF THE FOLLOWING RELIEF :

1) A DECLARATORY JUDGMENT THAT DEFENDANTS ACTS, OMISSIONS, AND PRACTICES AS DESCRIBED HEREIN VIOLATE PLAINTIFFS RIGHTS UNDER THE UNITED STATES CONSTITUTION.

2) ISSUE A PRELIMINARY AND PERMANENT INJUNCTION WHICH:

A) ORDER DEFENDANTS TO CONTINUE WITH CHRONIC AND/OR SPECIALIZED CARE FOR PLAINTIFF FOR THE DURATION OF HIS INCARCERATION AS REQUIRED SO AS TO MONITOR PLAINTIFFS PEYRONIES DISEASE, PROSTITIS AND ANY OTHER, FUTURE MEDICAL NEEDS RESULTING FROM HIS KIDNEY STONE DAMAGE, AND COVER MEDICAL EXPENSES AFTER HIS RELEASE FROM PRISON.

B) ORDER DEFENDANTS TO PROTECT PLAINTIFF FROM FURTHER INJURY THROUGH THEIR NOT ADDRESSING HIS SPECIALIZED NEEDS FOR MEDICAL CARE., AND

C) ORDER DEFENDANTS TO PROVIDE PHYSICAL THERAPY FOR PLAINTIFFS RECUPERATIVE NEEDS IN A FACILITY EQUIPED TO PROVIDE HIS INDIVIDUALIZED NEEDS.,

3) AWARD COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNTS :

A) $250,000 JOINTLY AND SEVERALLY AGAINST DEFENDANTS SAYRE, MCLEAN AND RISENHOOVER FOR THE PHYSICAL AND EMOTIONAL INJURY RESULTING FROM THEIR FAILURE TO PROVIDE ADEQUATE MEDICAL CARE TO PLAINTIFF.

B) $100,000 JOINTLY AND SEVERALLY FROM ALL THE REMAINING DEFENDANTS TO PLAINTIFF TO COVER PLAINTIFFS MENTAL ANGUISH RESULTING FROM THEIR ACTS OR OMISSIONS IN RELATION TO PLAINTIFFS ADMINISTRATIVE COMPLAINTS.

4) AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNTS :

A) $100,000 FROM DEFENDANTS SAYRE, MCLEAN, AND RISENHOOVER ; AND

B) $50,000 EACH AGAINST ALL OTHER DEFENDANTS FOR OPPRESSIVE AND WANTON DISREGARD FOR PLAINTIFFS RIGHTS.

5) PLAINTIFFS COST OF SUIT;

6) FOR THE COST AND REASONABLE ATTORNEY FEES;

7) TRIAL BY JURY, AND

8) ANY FURTHER RELIEF THAT THE COURT DEEMS JUST, PROPER AND EQUITABLE, AND ENSURE THIS COURT RETAINS JURISDICTION SO THAT THE UNLAWFUL AND UNCONSTITUTIONAL ACTS ALLEGED HEREIN DO NOT RECUR.

RESPECTFULLY SUBMITTED,

SHANE DAVIS — D-97170

IN PRO. PER.

SIGNED THIS 20 DAY OF APRIL 2008

26 OF 36

## VERIFICATION

I SHANE DAVIS, STATE:

I AM THE PLAINTIFF IN THIS ACTION, AND I CURRENTLY RESIDE AT PELICAN BAY STATE PRISON (PBSP) S.H.U. AT CRESCENT CITY CALIFORNIA IN DEL NORTE COUNTY.

I HAVE READ THE FOREGOING COMPLAINT, AND THE FACTS STATED THEREIN ARE TRUE AND CORRECT OF MY OWN KNOWLEDGE EXCEPT AS TO THE MATTERS THEREIN STATED TO BE ALLEGED ON INFORMATION AND BELIEF, AND AS TO THOSE I BELIEVE THEM TO BE TRUE.

RESPECTFULLY SUBMITTED,

SHANE DAVIS - P97170.
PLAINTIFF

SIGNED THIS 20 DAY OF APRIL 2008.

27 OF 36

## MEMORANDUM OF POINTS AND AUTHORITIES.

DEFENDANTS FAILURE TO DIAGNOSE OR ACT ON MULTIPLE URINALYSIS TEST RESULTS, COUPLED WITH PLAINTIFFS REPEATED SYMPTOMS, COMPLAINTS AND HISTORY OF KIDNEY STONES, AND LONG, REPEATED DELAYS IN PROVIDING FOR SPECIALIZED MEDICAL AND UROLOGICAL NEEDS, AMOUNTS TO DELIBERATE INDIFFERENCE IN VIOLATION OF THE 8TH AMENDMENT TO THE U.S. CONSTITUTION.

## RIGHT TO ADEQUATE MEDICAL CARE

THE CONSTITUTION REQUIRES PRISON AUTHORITIES TO PROVIDE PRISONERS WITH REASONABLY ADEQUATE MEDICAL CARE (BELL V. WOLFISH, (1979), 441 U.S. 529; HOPTOWIT V. RAY, (9TH CIR 1982) 682 F.2d. 1237, 1246).

PRISONERS HAVE A CONSTITUTIONAL RIGHT TO ADEQUATE MEDICAL CARE; INADEQUATE MEDICAL CARE CAN CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT. THE SUPREME COURT HAS STATED THAT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS CONSTITUTES THE UNNECESSARY AND WANTON INFLICTION OF PAIN PROSCRIBED BY THE 8TH AMENDMENT (SEE: ESTELLE V. GAMBLE, 429 U.S. 97, 104 (1976)).

SEVERAL COURTS HAVE HELD THAT REPEATED ACTS OF NEGLIGENCE WHICH DISCLOSE A PATTERN OF CONDUCT BY PRISON MEDICAL STAFF MAY ADD UP TO "DELIBERATE INDIFFERENCE" (RAMOS V. LAMM, 639 F.2d. 559, 575 (10TH CIR 1980) CERT DENIED 450 U.S. 1041 (1981); ACCORD HARRIS V. THIGPEN, 941 F.2d. 1495, 1505 (11TH CIR 1991); TODARO V. WARD, 565 F.2d. 48, 52 (2ND CIR 1977); WILLIAMS V. O'LEARY, 805 F.SUPP. 634, 638 (N.D. ILL. 1992)).

A PRISONER CAN SHOW THAT DEFENDANTS' ACTED WITH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED (ESTELLE, SUPRA). DELIBERATE INDIFFERENCE CAN BE SHOWN IN VARIOUS WAYS. SOMETIMES ITS DEMONSTRATED BY ACTS OR STATEMENTS BY PRISON STAFF DIRECTLY SHOWING AN INDIFFERENT OR HOSTILE ATTITUDE TOWARDS PRISONERS' MEDICAL NEEDS (HUGHES V. JOLIET CORR. CENTER, 931 F.2d. 425, 428 (7TH CIR 1991)). MOST OFTEN THE FOCUS IS ON THE FACTS THAT SHOW THAT PROFESSIONAL JUDGEMENT WAS EITHER NOT EXERCISED OR WAS **NOT FOLLOWED** AFTER IT WAS EXERCISED (EMPHASIS ADDED).

SEVERAL FACT PATTERNS WHICH CAN CONSTITUTE DELIBERATE INDIFFERENCE ARE DELAY, DENIAL OR INTERFERENCE WITH TREATMENT (ESTELLE, SUPRA AT 104).

THUS, TO PROVE DELIBERATE INDIFFERENCE PLAINTIFF NEED NOT NECESSARILY SHOW HE WAS COMPLETELY DENIED MEDICAL CARE (ORTIZ V. CITY OF IMPERIAL, (9TH CIR. 1989) 884 F.2d. 1312; SEE ALSO: LOPEZ V. SMITH (9TH CIR. 2000) 203 F.2d. 1122). FAILURE TO CONDUCT, AND FOLLOW UP TESTS THAT THE PRISONER'S SYMPTOMS CALL FOR; FAILURE TO CARRY OUT MEDICAL ORDERS CAN AMOUNT TO DELIBERATE INDIFFERENCE (ESTELLE, SUPRA AT 105; JOHNSON V. HARRIS, 479 F.SUPP. 333, 335-37 (S.D. N.Y. 1979)). SUCH CASES OFTEN INVOLVE THE FAILURE TO ACT ON MEDICAL NEEDS FOR SURGERY OR OTHER SPECIALIZED CARE (JOHNSON-EL V. DIST. OF COLUMBIA, 579 A.2d. 163, 169 (D.C. 1990).

SITUATIONS WHERE A LICENSED PHYSICIAN HAS MADE GROSSLY INCOMPETENT AND RECKLESSLY INADEQUATE EXAMINATIONS (E.G., WHEN MANIFESTED SYMPTOMS SCREAM OF A DIAGNOSIS) CAN AMOUNT TO A DELIBERATELY INDIFFERENT EXAMINATION (ROSEN V. CHANG, 758 F.SUPP. 799 (D.R.I. 1991)).

DEFENDANTS FAILURE TO ATTEND TO A PRISONERS MEDICAL NEEDS CAN CONSTITUTE DELIBERATE INDIFFERENCE (DUNCAN V. DUCKWORTH (7TH CIR 1981) 664, F.2d. 653; LEO V. ARMSTEAD (9TH CIR 1978) 582 F.2d. 1291). SO TOO DO LONG DELAYS IN THE FACE OF RECOGNIZED NEED FOR TREATMENT (HUNT V. DENTAL DEPT. (9TH CIR. 1989) 865 F.2d. 198; WOOD V. HOUSEWRIGHT (9TH CIR 1990) 900 F.2d. 1332).

THESE ARE ALL "NO PROFESSIONAL JUDGEMENT" CASES, AND THERE ARE STILL OTHER DECISIONS THAT SAY IN EFFECT, THAT NOT EVERY JUDGEMENT BY A DOCTOR IS A MEDICAL JUDGEMENT.

THE DELIBERATE INDIFFERENCE STANDARD DOES NOT NECESSARILY EXCUSE ONE EPISODE OF GROSS MISCONDUCT MERELY BECAUSE THE OVERALL PATTERN REFLECTS GENERAL ATTENTIVENESS. (WILLIAMS V. O'LEARY, 805 F.SUPP 634, 638 (N.D. ILL. 1992); CF: KNOP V. JOHNSON, 667 F.SUPP. 512, 524-25 (W.D. MICH. 1987)). HOWEVER, MULTIPLE INCIDENTS OF DELAYED MEDICAL CARE MAY INCREASE LIKELIHOOD OF DELIBERATE INDIFFERENCE. (SEE ALSO: TODARO V. WARD, SUPRA 48, 52.)

A MEDICAL CONDITION MAY BE SERIOUS IF IT SIGNIFICANTLY AFFECTS A PRISONER'S DAILY ACTIVITIES. (SEE: MONMOUTH CO. CORR. INST. VMS V. LAZARO, 834 F.2d. AT 347.) A MORE GENERAL DEFINITION OF SERIOUS MEDICAL NEEDS REFERS TO CONDITIONS THAT CAUSE PAIN, DISCOMFORT OR THREAT TO GOOD HEALTH. (DEAN V. COUGHLIN, 623 F.SUPP. 392, 404 (S.D. N.Y. 1985); BOREIT V. WISCOMB, 930 F.2d. 1150, 1154, 55 (6TH CIR. 1991)).

THE CDC R AND DEFENDANTS HAVE A GENERAL POLICY THAT IT WILL PROVIDE MEDICAL SERVICES ONLY BASED ON NECESITY AND SUPPORTED BY OUTCOME DATA AS EFFECTIVE MEDICAL CARE (SEE: CAL. CODE OF REG.'S TITLE 15, SECTION 3350 ET. SEQ). MEDICAL NECESSITY IS DEFINED AS SERVICES REASONABLE AND NECESSARY TO PROTECT LIFE, PREVENT SIGNIFICANT ILLNESS OR DISABILITY OR ALLEVIATE SEVERE PAIN. (CAL. CODE. OF REG.'S TITLE 15, SECT. 3350 (b)(1).

## PLAINTIFF'S MEDICAL CARE

PLAINTIFF IN THIS CASE, COMPLAINED TO MEDICAL STAFF WHILE HOUSED AT PBSP-SHU, OF SEVERE PAIN (KIDNEY AND ABDOMINAL PAIN), INTER ALIA, WHICH LED MEDICAL STAFF TO CONDUCT URINALYSIS TESTS THAT REVEALED PRESENCE OF "ABNORMAL" SUBSTANCES CONSISTENT WITH INDICATORS OF KIDNEY STONES THAT REQUIRE REMOVAL (SEE COMPLAINT PARA. 23 ;AND EXHIBIT'S 3, 4, 6), PRIOR TO PASSING HIS KIDNEY STONES PLAINTIFF INFORMED DEFENDANTS HE HAD A HISTORY OF THAT CONDITION AND THAT THE PAIN HE WAS EXPERIENCING WAS THE SAME AS IN THE PAST BUT MORE INTENSE (SEE: COMPLAINT PARA. 21. ).

THE SYMPTOMS COMPLAINED BY PLAINTIFF SUBSEQUENTLY TURNED OUT TO BE CAUSED IN FACT BY AT LEAST (2) KIDNEY STONES THAT ENDED UP BEING LODGED IN PLAINTIFF'S URETHRA AND THEN "PUSHED" OUT THROUGH THE URETHRA BUT NOT BEFORE PLAINTIFF BEING LEFT TO SUFFER IN AGONY WITHOUT ANY PAIN MEDICATION FOR ABOUT FOUR (4) MONTHS AND TO SUFFER PERMANENT DISFIGUREMENT OF THE PENIS AS WELL AS LEAVING HIM WITH ADDITIONAL SERIOUS MEDICAL PROBLEMS, ALL OF WHICH WAS PREVENTABLE BY THE DEFENDANTS (SEE: COMPLAINT PARAS. 47, 51, 52, 61, 62, AND 63).

PLAINTIFF WAS SEEN BY DEFENDANT RISENHOOVER (FNP) WHEN HE WOULD PUT IN FOR DR.'S LINE TO COMPLAIN ABOUT HIS SEVERE ABDOMINAL AND KIDNEY PAIN. EVERY TIME RISENHOOVER WOULD DENY PLAINTIFF'S REQUESTS FOR PAIN MEDICATION, FOR SOUND WAVE TREATMENT AND TO BE SEEN BY A UROLOGIST BY TELLING PLAINTIFF THAT THERE WAS NOTHING WRONG WITH HIM AND FOR HIM TO JUST DRINK ALOT OF WATER (SEE: COMPLAINT, PARA'S 21, 24, 26, 29, 40, 45)

EACH TIME DEFENDANT RISENHOOVER WOULD HAVE PLAINTIFF GIVE URINE SAMPLES FOR TESTING WHICH ALWAYS CAME BACK SHOWING TRACES OF, INTERAVIA, CALCIUM OXALATE CRYSTALS AND BACTERIA (SEE: EXHIBITS 3, 4 AND 6; ALSO COMPLAINT PARAS 23, 25, 27 ). THESE FACTS WERE KNOWN TO DEFENDANT RISENHOOVER BECAUSE EACH TIME SHE WOULD SEND PLAINTIFF "NOTIFYERS" LETTING HIM KNOW THE TESTS WERE NOT WITHIN NORMAL LIMITS AND THAT IT WOULD BE DISCUSSED AT HIS NEXT DR. VISIT (SEE: EXHIBITS HOWEVER WHEN TAKEN TO HIS DR.'S APPOINTMENTS, PLAINTIFF WAS ALWAYS TOLD BY DEFENDANT RISENHOOVER THAT HIS URINALYSIS SHOWED NOTHING TO BE CONCERNED ABOUT, THAT THERE WAS NO NEED FOR ANY TREATMENT OR FOR HIM TO BE SEEN BY A UROLOGIST. (COMPLAINT PARAGRAPH 28)

AFTER BEING LEFT FOR ABOUT (3) MONTHS WITHOUT PAIN MEDICATION OR ANY KIND OF DIAGNOSIS OR TREATMENT DURING A PARTICULAR ACUTE KIDNEY STONE ATTACK PLAINTIFF WAS AWAKEN IN THE MIDDLE OF THE NIGHT BY PAIN SO SEVERE THAT HIS CRIES WOKE UP THE WHOLE HOUSING UNIT AND HE HAD TO BE RUSHED OUT ON AN EMERGENCY TO THE PRISON'S MAIN CLINIC WHERE IT WAS REVEALED, (BY DIFFERENT MEDICAL STAFF), THAT PLAINTIFF'S MEDICAL FILE, NAMELY HIS URINALYSIS REPORTS, DEMONSTRATED PLAINTIFF HAD A UROLOGICAL DISORDER AND WHERE THAT REVIEWER/EXAMINER EXPRESSED SHOCK THAT PLAINTIFF HAD NOT YET BEEN DIAGNOSED WITH THE DISORDER BEING THAT THE RECORD SHOWED DEFENDANT RISENHOOVER WAS AWARE OF THESE TESTS FOR SOME TIME (SEE: COMPLAINT AT PARA'S 30 THRU 37 ).

IT WAS ONLY AFTER PLAINTIFF HAD TO BE RUSHED OUT ON EMERGENCY, AND OTHER PRISONERS HAD TO YELL "MAN DOWN" IN THE MIDDLE OF THE NIGHT THAT DEFENDANT RISENHOOVER FINALLY GAVE HIM SOME ASPIRINS FOR THE PAIN. AND EVEN THEN SHE REFUSED TO TAKE PLAINTIFF'S SYMPTOMS, HISTORY

OF KIDNEY STONES AND THE URINALYSIS REPORTS INTO CONSIDERATION NOR DID SHE GIVE ANY OF THESE FACTORS DUE REGARD TO DIAGNOSE PLAINTIFF WITH A UROLOGICAL DISORDER. DEFENDANT RISENHOOVER CONTINUED TO INSIST NOTHING IN THE URINALYSIS TESTING INDICATED A REASON TO MENTION A UROLOGICAL DISORDER AND THAT WHAT "OTHER" MEDICAL STAFF HAD DISCOVERED OR INFORMED THE PLAINTIFF DID NOT MATTER AND WOULD NOT BE CONSIDERED BECAUSE "HE IS NO DOCTOR" AND "OBVIOUSLY NOT QUALIFIED TO READ MEDICAL REPORTS." (SEE: COMPLAINT AT PARA'S 38 THRU 40 ).

PLAINTIFF FILED A 602 APPEAL CLAIMING HE WAS NOT GETTING ADEQUATE MEDICAL CARE AND ASKED TO SEE A SPECIALIST UROLOGIST, MORE TESTS, AND A REMOVAL OF ANY KIDNEY STONES (SEE: COMPLAINT PARA 41 ).

THE 602 WAS INITIALLY DENIED AND DEFENDANTS CONTINUED TO DENY THAT THERE WAS ANYTHING WRONG WITH HIM, THAT HE HAD ANY UROLOGICAL DISORDER AND NO NEED FOR A UROLOGIST TO SEE HIM. RATHER, PLAINTIFF WAS SIMPLY GIVEN ORDERS TO "DRINK MORE WATER". YET, DEFENDANTS ORDERED MORE URINE TESTS WHICH LATER WERE SHOWN TO BE "ABNORMAL"

PLAINTIFF WAS TIME AND AGAIN SENT TO HIS CELL WITHOUT BEING REFERRED TO A UROLOGIST, OR TREATMENT TO REMOVE HIS KIDNEY STONES; OR EVEN DIAGNOSING HIM WITH HIS DISORDER DESPITE KNOWING OF HIS SYMPTOMS, HISTORY WITH THE DISEASE, AND LAB TESTS INDICATIVE A UROLOGICAL DISORDER. RESULTINGLY PLAINTIFF HAD A SECOND ACUTE ATTACK OF KIDNEY/ABDOMINAL PAIN WHERE ATLEAST (2) "STONES" BECAME LODGED IN HIS URETHRA CAUSING HIM EXCRUCIATING PAIN AS WELL AS SEVERE PERMANENT PHYSICAL AND MENTAL INJURY IN THAT AFTER BEING FORCED TO "PUSH" THE STONES OUT ON HIS OWN, THE INJURIES CAUSED BY THE STONES ENDED UP WITH SEVERAL SIGNIFICANT POST-TRAUMATIC EFFECTS INCLUDING: PROSTITIS, PAIN IN THE TESTICLES, PEYRONIE'S DISEASE (DEFORMATION OF THE PENIS), ERECTILE DYSFUNCTION, INABILITY TO DO PHYSICAL EXERCISE, INABILITY TO SIT FOR LONG PERIODS OF TIME. (SEE: COMPLAINT AT PARAS 47 , 51 , 62 , AND 63 ).

PLAINTIFF WAS ONLY THEN, FINALLY DIAGNOSED WITH A "UROLOGICAL DISORDER" ON SEPTEMBER 14 2007 (APPROXIMATELY FIVE (5) MONTHS AFTER PLAINTIFFS INITIAL REPORTS OF KIDNEY PAIN), WHEN HE TURNED OVER ONE OF THE KIDNEY

STONES THAT HAD BEEN PUSHED OUT THROUGH HIS URETHRA (SEE COMPLAINT PARAS 61, N.5 ; ALSO SEE: EXHIBIT 29 ). THE STONE WAS SUBSEQUENTLY SENT TO PATHOLOGY FOR COMPOSITION ANALYSIS AND THE REPORT REVEALED THAT IN FACT, IT WAS A KIDNEY STONE (SEE: COMPLAINT. PARA. 52 ; ALSO SEE: EXHIBIT 20 "STONE ANALYSIS").

PLAINTIFF WAS ALSO, FINALLY REFERRED TO A UROLOGIST AND PLAINTIFF SAW DR. ALBERTINI ON (2) SEPERATE OCCASSIONS AT A MEDICAL FACILITY IN EUREKA CALIFORNIA. PLAINTIFF TOLD DR. ALBERTINI ABOUT HIS KIDNEY STONE HISTORY, AND THAT HE HAD BEEN COMPLAINING TO PBSP MEDICAL STAFF ABOUT HIS SYMPTOMS SINCE MARCH OF 2007 - TO NO AVAIL. PLAINTIFF ALSO EXPLAINED HIS SYMPTOMS AND THE PAIN ATTACK EPISODES IN JUNE IN THE MIDDLE OF THE NIGHT AND IN JULY WHEN THE STONES GOT LODGED AND THEN PUSHED OUT. THE SPECIALIST CONDUCTED A PHYSICAL EXAMINATION REGARDING PLAINTIFFS REPORTS OF (INTER ALIA) PAINS IN THE GROIN AND A "LUMP" WHICH HAD DEVE-LOPED AFTER THE STONES WERE PUSHED OUT, WHICH LED DR. ALBERTINI TO DIAGNOSE PLAINTIFF WITH "PEYRONIE'S DISEASE" (CURVATURE IN THE PENIS) WHICH IS CAUSED BY AN IMPROPER HEALING OF INJURIES TO THE PENIS AND IN PLAINTIFFS CASE, DR. ALBERTINI INFORMED, LIKELY RESULTED BY INJURIES THE "STONES" INFLICTED TO PLAINTIFFS PENIS WHEN THEY WERE LODGED AND PUSHED OUT (SEE: COMPLAINT PARA.S 63, 67 ).

## STONES IN THE URINARY TRACT AND RENAL UROLOGICAL DISORDERS.

PLAINTIFF HAD STONES LODGED AND PUSHED OUT THROUGH THE URETHRA WHILE HOUSED AT PBSP, AND ALSO HAS AT LEAST ONE CYST REMAINING WITHIN EACH KIDNEY (SEE COMPLAINT AT PARA.S 47, 46 ; AND EXHIBIT 18).

NORMALLY, A PERSON HAS TWO KIDNEYS. EACH KIDNEY HAS A URETER, WHICH DRAINS URINE FROM THE KIDNEYS CENTRAL COLLECTING AREA (RENAL PELVIS) INTO THE BLADDER. FROM THE BLADDER THE URINE DRAINS THROUGH THE URETHRA, OUT OF THE BODY THROUGH THE PENIS (IN MEN). THE PRIMARY FUNCTION OF THE KIDNEYS IS TO FILTER METABOLIC WASTE PRODUCTS AND EXCESS SODIUM AND WATER FROM THE BLOOD AND HELP ELIMINATE THEM FROM THE BODY.

## KIDNEY STONES

Stones in the urinary tract (urinary calculi) are hard stonelike masses that form anywhere in the urinary tract. Depending on where a stone forms, it may be called a kidney stone or bladder stone. The process of stone formation is called urolithiasis. These stones may form because the urine passing through the kidneys become too saturated with salts that form stones or because the urine lacks the normal inhibitors of stone formation. About 80% of the stones are composed of calcium and vary in size from too small to be seen with the eye, to one inch or more in diameter.

## SYMPTOMS

Tiny stones may not cause any symptoms. But, stones that obstruct the ureter or renal pelvis or any of its drainage tubes may cause back pain and a severe colicky pain (renal colic). Renal colic is characterized by an excruciating intermittent pain, usually in the flank, that spreads across the abdomen often to to the genital area (inter alia). A person may need to urinate frequently, particularly as a stone passes down the ureter. Stones may cause urinary tract infection. When stones block the flow of urine, bacteria become trapped in urine that pools above the blockage, leading to infection. And blockage for a long time, urine backs up in the tubes inside the kidneys, the pressure can distend the kidney (hydronephrosis) and eventually damage it.

## DIAGNOSIS

Stones that cause pain are generally diagnosed on the basis of the symptoms of renal colic. Microscopic analysis of the urine (urinalysis) may disclose blood or pus as well as small stone crystals in the urine. Other tests that help make a diagnosis involve collecting 24-hour urine samples and blood which are analyzed for levels of calcium, cystine, uric acid and other substances known to produce stones. X-rays of the abdomen can show calcium and struvite stones.

## TREATMENT

The pain of renal colic may be relieved with narcotic analgesics. Often a stone in the renal pelvis or uppermost part of the ureter that's 1/2 inch or less in diameter can be broken up by ultrasound waves (extracorporeal shock wave lithotripsy). The pieces of stone are then passed in the urine. Sometimes

A STONE IS REMOVED THROUGH A SMALL INCISION IN THE SKIN (PERCUTANEOUS NEPHROLITHOTOMY). FOLLOWED BY ULTRASOUND TREATMENT. SMALL STONES IN THE LOWER PART OF THE URETER MAY BE REMOVED BY AN ENDOSCOPE (A SMALL FLEXIBLE TUBE) INSERTED INTO THE URETHRA AND THROUGH THE BLADDER.

## PREVENTION

MEASURES TO PREVENT FORMATION OF NEW STONES VARY, DEPENDING ON THE COMPOSITION OF THE EXISTING STONES. MOST PEOPLE WITH CALCIUM STONES (SUCH AS THE PLAINTIFF) HAVE A CONDITION CALLED "HYPERCALCIURA" IN WHICH EXCESS CALCIUM IS EXCRETED IN THE URINE. THIAZIDE DIURETICS SUCH AS TRICHLORMETHIAZIDE REDUCE NEW STONE FORMATION IN SUCH PEOPLE. DRINKING LARGE AMOUNTS OF FLUIDS IS RECOMMENDED. POTASSIUM CITRATE MAY BE GIVEN TO INCREASE A LOW URINE LEVEL OF CITRATE, A SUBSTANCE THAT INHIBITS CALCIUM STONE FORMATION. A HIGH LEVEL OF OXALATE IN THE URINE, WHICH CONTRIBUTES TO CALCIUM STONE FORMATION, MAY RESULT FROM EXCESS CONSUMPTION OF FOODS HIGH IN OXALATE SUCH AS: RHUBARB, SPINACH, COCOA, NUTS, PEPPER, AND TEA, A CHANGE IN DIET MAY HELP, AND THE UNDERLYING DISORDER IS TREATED.

## Conclusion.

AS IT IS, PLAINTIFF'S CONDITION REQUIRES A PLANNED TREATMENT INCLUDING PROPER MEDICATION, THERAPY FOR THE PHYSICAL EFFECTS OF HIS Peyronies Disease AND A MEDICAL DIET COMMENSURATE WITH PLAINTIFFS SPECIAL NEEDS.

PLAINTIFFS CONDITIONS STEMS FROM THE FACT (2) KIDNEY STONES WENT UNTREATED AND GOT LODGED IN HIS URETHRA INSURING THE TISSUE AS THEY WERE PUSHED OUT THROUGH THE PENIS, AND FROM THE FACT THERE EXIST ATLEAST ONE CYST IN BOTH OF HIS KIDNEYS, THUS FOREVER ALTERING HIS URINARY TRACT IN WHICH A HIGH CALCIUM DIET AND EXCESS CALCIUM IS EXCRETED IN THE URINE, OR IF POTASSIUM LEVELS ARE TOO LOW CAN AND AS SHOWN RESULT IN HIGH DEPOSITS OF CALCIUM IN HIS URINE, AND CAUSES FORMATION OF STONES, SEVERE PAIN AND OTHER PROBLEMS FOR PLAINTIFF

THIS CASE WOULD BE MARKEDLY DIFFERENT IF PLAINTIFF HAD NOT BEEN INCARCERATED, THEN HE COULD SECURE HIS OWN MEDICATION (AS DEFENDANTS HAVE POINTED OUT), PREPARE HIS OWN MEALS (CONSISTENT WITH HIS SPECIALIZED NEEDS), AND SECURE PROPER AND EFFECTIVE DIAGNOSIS AND REFERRAL TO A

UROLOGIST FOR HIS OBVIOUS SYMPTOMS OF KIDNEY STONES PROBLEMS. HOWEVER, PLAINTIFF IS A STATE PRISONER AND AS SUCH MUST RELY ON DEFENDANT TO DO SO. DUE TO THE "FORCED" PASSING OF HIS (CALCIUM) KIDNEY STONES, PERMANENTLY INJURING AND SCARRING TISSUES INSIDE THE PENIS, PLAINTIFF NOW HAS PERMANENT AND REAL MEDICAL NEEDS; OF WHICH DEFENDANTS HAVE REPEATEDLY KNOWN ABOUT VIA THEIR OWN LABORATORY TESTS REPORTS. THESE LABORATORY REPORTS HAVE SHOWN TRACES OF "ABNORMAL" SUBSTANCES IN PLAINTIFF'S URINE INCLUDING (INTER ALIA), CALCIUM OXALATE CRYSTALS AND WHICH DEFENDANT RISENHOOVER FAILED AND/OR REFUSED TO TAKE INTO CONSIDERATION IN DENYING TO DIAGNOSE OR TREAT PLAINTIFF FOR A UROLOGICAL DISORDER (SEE: EXHIBITS 3, 4 AND 6 >, WHICH IN PLAINTIFF'S CASE REQUIRED TREATMENT WITH SURGICAL OR ULTRASOUND WAVE REMOVAL OF THE KIDNEY STONES, PAIN MEDICATIONS AND A SPECIALIZED DIET; AND WHICH PLAINTIFF REPEATEDLY REQUESTED BUT WAS NOT PROVIDED AND THE ONLY REASON'S EVER GIVEN BY THE DEFENDANT WAS THAT "NOTHING IS WRONG WITH YOU" "IF YOU WERE ON THE STREETS AND NOT A CRIMINAL YOU COULD GET YOUR OWN MEDICATION" AND TO "JUST DRINK WATER" (SEE: COMPLAINT AT PARA-'S 21, 24, 26, 29, 40, 45 >.

PLAINTIFF HAS DEMONSTRATED A COMMON SENSE SHOWING THAT DEFENDANTS HAVE AND CONTINUE TO BE DELIBERATELY INDIFFERENT TO PLAINTIFFS' SPECIALIZED MEDICAL AND DIETERC NEEDS IN VIOLATION OF THE 8TH AMENDMENT.

FOR ALL THE ABOVE REASONS WITH MERITS, PLAINTIFFS' COMPLAINT REQUIRES JUDICIAL INTERVENTION.

DATED: 4/20/08

RESPECTFULLY SUBMITTED

Shane Davis
SHANE DAVIS — PLAINTIFF

PRO. SE.

EXHIBIT - 1

Personal Notes of
Patient Shane Davis

Date              Description of Problem/Circumstance/Events

march 2007  I started feeling a severe pain in my right kidney, abdomen, and started to feel nauseous and sick to my stomach. I reported this pain to (FNP) Sue Risenhoover and told her that I believed this pain to be a kidney stone. I requested to be examined and was told by (FNP) S. Risenhoover to drink some water.

3/16/07  During a visit at Drs line today, I reported to (FNP) Sue Risenhoover that I was still experiancing severe pain in my right kidney and abdomen. I again informed (FNP) S. Risenhoove that I have a history of kidney stones and requested some treatment and an examination, and was refused both. Again (FNP) S. Risenhoover told me to just drink some water and had me returned to my cell. She did absolutely nothing for me and told me to report any more pain.

3/30/07  As I was instructed on march 16, 07, I reported again to (FNP) S. Risenhoover that Im still in severe pain in my right kidney and abdominal area, and that this pain is escalating and becoming unbearable. I asked (FNP) S. Risenhoover for some pain medication and treatment for what I know to be kidney stones. (FNP) S. Risenhoover told me that "nothing is wrong with you" and showed no concern for my problem. Once again Ive been ordered back to my cell with no examination or treatment. Gave urine sample for testing

4/23/07  I went and seen (FNP) S. Risenhoover again today and reported my kidney and abdomen pain as I was instructed. I told her that this pain is getting worse. I requested some sort of treatment and pain medication for what I believe is the pain from kidney stones. (FNP) S. Risenhoover flatly told me "no". I asked her if it was possible to be seen by another doctor

to get a second opinion and she told me "No, I'm your doctor.
I asked her if I could see the results from my tests from
my previous visits and she told me no, she would instead order
a new urinalysis. I was refused an examination and ordered
returned to my cell without any treatment. Urine Sample given.

5/2/07  Went to medical today and reported to (FNP) S. Risenhoover that
I'm still in extreme pain in my kidneys and abdomen. I again
asked to be examined and treated for all of this pain and was
refused. I've been having trouble sleeping at night because of
the pain in my kidney. I reported this to (FNP) S. Risenhoover at
which time she made a disbelieving face and showed no concern.
She then stated to me "there is nothing wrong with you, just
go drink some water." Again I told her of my history of
kidney stones and asked for any pain medication because the
pain was getting worse. I was refused any treatment and
ordered to be returned to my cell. Gave a urine sample.

5/29/07  I went to see (FNP) S. Risenhoover today for a follow up visit.
She told me that there were crystals and a very high iron count
detected in my toxicology report. She asked me if anybody in
my family has ever had "Hemochromatosis". I told her that I
didn't know and would write home immediately to find out. I
reported to (FNP) S. Risenhoover that I was still in extreme pain
in my right kidney and abdomen and asked for pain medication
and an examination for kidney stones. She then stated to me
that "I should stop self-diagnosing and that there is nothing
wrong with me." I was refused any treatment and ordered
back to my cell while I'm still in obvious pain.

6/13/07    I awoke at approximately 3:30AM in excruciating pain in my right kidney and abdomen area. As I tried to get out of my bed I fell down to the cell floor and could not move or call out for help. This extreme pain caused me to break out in a sweat and made me so violently ill that I began vomitting. The floor officer C/o Young found me on the cell floor as he was doing his 4:00 A.m. head count. C/o Young asked me if I was okay at which time I responded "no" "I am in bad pain in my kidneys and need to see a M.T.A immediatly C/o Young stated to me that I was very pale and looked bad. He said he would finish up his unit head count and call the M.T.A. While he was gone the pain esculated which caused me to moan and groan out loud. At this time my next door neighbor became very concerned and yelled that "there is a man down in 116, who is sick and needs a M.T.A." Eventually C/o Young returned with another officer and found me lying on the floor clutching my right kidney and abdominal area. They told me to get up off of the cell floor to be handcuffed, which I eventually did with great difficulty. I was then escorted to the unit vestibul to see the M.T.A. I reported that I had been experiancing what I felt were the symptons of kidney stones for (3) months now with no treatment, and I have a prior history of kidney stones that felt like this. I was then put into an emergency vehicle and rushed to the prisons main medical clinic. Upon my arrival I began to explain to D. Thomas (R.n.) about what had happened that morning and that I was in extreme pain in my kidney and abdomen and that I felt like throwing up. I told D. Thomas (R.n) that I've been complaining to (FnP) S. Risenhoover of severe pain in my kidneys and abdomen for approximately 3 to 4 months and I've received absolutely no care or medical treatment. I informed (Rn) D. Thomas that I have a history of kidney stones and that I've been asking (FnP) S. Risenhoover for help and an examination for this extreme pain on numerous occasions and have been ignored

and refused treatment on all times. (R.n) D. Thomas gave me an examination and informed me that I was suffering and should of been diagnosed with a "Renal Urological Disorder" (R.n) D. Thomas then told me that according to my previous toxicology reports and additional urine tests, that (Fnp) S. Risenhoover has been aware of this Renal Urological Disorder for some time (R.n) D. Thomas then explained to me that this is a very serious medical issue. It's caused by crystals building up in the Renal arteries that lead to the kidneys. I asked (R.n) D. Thomas if he was sure about this at which time he showed me the reports with everything out of range in my urine tests. He then asked me if I was prescribed any medication and I said "no". (R.n) D. Thomas then said to me that he was surprised that I wasn't given any pain medication for management, x-rays to locate the stones and possible ultra sound waves to break up any stones (R.n) D. Thomas told me that I would be put on the morning sick-call list to see (Fnp) S. Risenhoover about any medication or treatment I would be receiving. I was then transported back to my housing unit and left in extreme pain until sick-call.

6/13/07    I was taken down to the medical clinic to talk to (Fnp) S. Risenhoover about the circumstances that transpired that morning regarding my emergency incident. I reminded (Fnp) S. Risenhoover that I'm the inmate that has been complaining for months now about severe pain in my kidneys and abdomen and has been constantly refused any medication or medical treatment for what is obviously a serious medical issue. I reported to her that I was still in terrible pain and severe symptoms of nausea in my stomach and kidney. I then stated to (Fnp) S. Risenhoover that I felt that my medical issues were not being taken serious and that my medical problems were getting worse. At this time I requested to

be seen by a different doctor who would help me. (FNP) S. Risenhoover then stated to me "I don't know where you think you are, but this is prison". I responded to this that to "just please help me because I'm really hurting in my kidney and stomach." I then explained to her what had happened that early morning. I told (FNP) S. Risenhoover that (R.N) O. Thomas had stated to me that according to several of my urinalysis reports that I'm suffering from a serious Renal Urological Disorder, and that I should have been treated for the pain and removal of the kidney stones. (FNP) S. Risenhoover then said to me that (R.N.) Thomas is not a doctor and not qualified to make any medical findings or recommendations. What (R.n.) O. Thomas said to me this morning did not matter. I also explained to (FNP) S. Risenhoover that (R.n.) Thomas had said to me that I should be treated with pain medication and should have been given an X-Ray or ultra-sound of my kidneys a long time ago to detect any solid messes or obstructions. Again I requested to be seen by a professional urologist and was told "no" by (FNP) Risenhoover. I was then told to give a urine sample and was forcefully led back to my cell without finishing up my doctors appointment. I wasn't even advised if I'm going to receive any medication for my severe pain.

| | |
|---|---|
| 6/13/07 | I was given meds at the P.M. pill line. The nurse who gave me my medication had to tell me what they were. |
| 6/17/07 | I am in extreme pain in my right kidney and urethra area. I'm having trouble sleeping at night. |
| 6/17/07 | I filed an inmate 602 appeal today because of the constant and extreme pain that I'm having in my kidney, groin, and urethra. I've requested to be seen by a urologist and given |

PG.6.

sound wave treatment. Also Im asking for a prison transfer
and compensation for this lack of care and negligence by
(FNP) S. Risenhoover.

6/18/07   I received my inmate 602 appeal back "denied" by Flowers.
I was denied my request to be seen by a urologist. All this
while Im still in extreme pain!

6/19/07   I sent my inmate 602 appeal to the appeals coordinator
for the formal level of review.

6/20/07   I went to the medical clinic today to address my inmate
602 appeal with (FNP) S. Risenhoover. I informed (FNP) S. Risenhoover
that I am still having severe pain in my right kidney and in
my uretha. I also explained to her that this pain is intensifying
and becoming too much for me to handle. I also told her that Im
experiencing urination problems that is causing extreme pain in
my testicles and groin area. I explained too, that Im now
having to urinate about every (5) minutes or so and that
there is no pressure behind the stream as if something is
blocking the urine from coming out. I expressed a grave
concern about not being seen by a urologist or having a
X-Ray or ultra sound done. (FNP) S. Risenhoover showed absolute
no concern over this or my new medical problems and only
wanted to discuss the inmate 602 appeal that I filed. (FNP) S.
Risenhoover proceeded to explain to me that on June 13, 2007
she was not done talking to me about my pain. I reminded
her that she was the one who had me forcefully led back to
my cell, and that this is now (7) days later. I again
told her what had happened on the morning of 6/13/07 and what
(R.N.) Thomas had told me about all of the abnormalities in my
urinalysis reports. Indicating that Im suffering from a Renal

PG.7.

urological Disorder. Again (FNP) Risenhoover said that (RN) D. Thomas was not a doctor and was obviously not qualified to read a toxicology report. Risenhoover refused to even consider anything (R.N.) Thomas seen or instructed me on concerning my pain and treatment. She then stated to me that there is nothing in any of my urinalysis reports that would cause (R.N.) Thomas to be concerned about, enough to mention a Renal urological Disorders. Especially pain management treatment and ultra sounds. I then asked (FNP) S. Risenhoover that if she's telling me that everything is normal then why am I in excruciating pain in my Kidney, abdomen, and urethra? And what about the episode on 6/13/07? (FNP) S. Risenhoover then stated to me that there is nothing wrong with me and to just drink some water. I told (FNP) S. Risenhoover that I've been drinking plenty of water as she instructed me to do so for months now and that I'm still in serious pain, and now I'm having pain in my urethra and trouble urinating. She then yelled at me "I told you to drink water"! (FNP) S. Risenhoover then told me to report any further problems. She even said that if I had to report any problems that I would pay $5.00 and fill out a P.B.S.P 7362 medical form. I was again denied any treatment and ordered back to my cell.

6/21/07    I have extreme pain in my right kidney and under my testicles. It hurts me to sit down right here.

6/21/07    I received my inmate 602 appeal receipt for the first level. IA-18-2007-00845. Also I've been given no treatment today.

6/22/07    I waited all day and still no treatment. Under my testicles is hurting real bad and I'm having trouble urinating.

PG. 8

6/22/07    Received my test results dated 6/13/07. Stated normal.

6/23/07    Still no treatment or examination. I'm really having trouble urinating and it feels like something is blocking my urine from coming out. Extreme pain in my urethra. Peeing every (5) minut with no pressure. Severe pain in my kidney.

6/24/07    No treatment and urinating every (5) minutes. Severe pain in my urethra and testicles.

6/25/07    No treatment and extreme pain in my urethra and under testicles. Also I'm having to urinate with minimal pressure. This really makes my kidneys hurt.

6/26/07    No treatment. Still a severe pain in my urethra. Constant urination with no pressure. Pain in right kidney.

6/27/07    No treatment. Pain in urethra and constant urination.

6/28/07    No treatment with pain in my ureth, testicles, and right kidney.

6/29/07    No treatment with pain in my urethra, testicles, and right kidney

6/30/07    No treatment. Pain in urethra, testicles, and kidney.

7/1/07    I was finally transported to the facility's specialty clinic to have a ultra sound done on my kidneys. I informed the nurse that I had extreme pain in my right kidney and excruciating pain in my urethra and testicles. I informed the nurse that I was suffering from constant urination and that it feels like something is stuck in my urethra. I also told her about my history of kidney stones. The ultra sound

PG.9

was completed and I was returned to my housing unit.

7/2/07    I went and gave a urine sample today. Still feels like there is something lodged in my urethra. No treatment or exam.

7/3/07    Gave a urine sample. Pain in urethra and testicles.

7/4/07    I received my test results back from 6/20/07. It remarks that trace Ketones were discovered.

7/5/07    At about 7:30 pm I was overcome with severe pain in my groin area and urethra. I feel as if I have to constantly urinate but with no pressure in the stream. It feels as if there is a solid object lodged in my urethra at the base of my penis. This really, really hurts. I'm filling out a P.B.S.P 7362 medical form to get help.

7/5/07    This evening I tried to urinate again and it felt as if something was slowly moving through my urethra cutting me up inside of my penis. After a considerable amount of effort and extreme pain I was finally able to dislodge at least (2) solid rock like objects from my urethra and penis. They came out with the urine and some blood. I was able to retrieve one of these solid stones from my toilet. It looks like a black rock with a (3) spiked crown. I secured this object in a piece of toilet paper and stored it in an envelope. Damn that hurt.

7/6/07    Urinating freely for once. The pain in my kidney has let up a little. But now my urethra and inside of my penis is extremely soar.

PG 10

7/7/07   urinating freely but my uretha is extremely sore and it burns to pee. Also I have a severe pain in my penis and testicles.

7/8/07   I sent a request to the appeals coordinator asking about the status of my inmate 602 appeal. Urinating freely but it burns and my whole groin area is in severe pain.

7/9/07   I got my P.B.S.P. 7362 medical slip back that I sent in on 7/5/07 unanswered. My whole groin area is extremely sore, especially at the base of my penis and testicles.

7/10/07  Received test results from 7/3/07 and 7/2/07. I received an answer back from the appeals coordinator. My appeal is at the first level.

7/11/07  No treatment and still in extreme pain in my uretha, groin, and testicles.

7/12/07  No treatment. Still in pain in my whole groin area. Hurts to sit down and write for too long.

7/13/07  No treatment and nothing has changed or gotten better. Sore!

7/14/07  Nothing has changed. No treatment.

7/15/07  No treatment and still in extreme pain. Burns to pee.

7/16/07  No treatment. Hurts all in my groin area.

<u>PG. 11.</u>

I was taken to the D-facility medical clinic in regards to the inmate 602 appeal I filed on June 17, 07. I immediately told (FNP) S. Risenhoover that I'm having trouble urinating and my urethra and penis is severly sore. I reported to (FNP) S. Risenhoover that at least (2) solid stone objects were lodged in my urethra and after a considerable amount of pain and effort I was able to push-out these objects. And since then there has been terrible pain at the base of my penis and urethra. I let (FNP) Risenhoover know that I was able to retrieve one of these objects from my toilet and it was in my cell, and that if it was needed I would turn it in to medical staff. I informed her that I can now urinate freely but my whole groin-area was in extreme pain, especially my penis and urethra. I also requested some medical treatment and a follow up examination in regards to my pain and the possibility of any additional kidney stones. Once again (FNP) S. Risenhoover refused me any type of medical examination, any pain medication, or an X-Ray. So even with the painful passing of (2) crystal stones, I still won't be examined or treated by (FNP) Risenhoover. She then stated to me that she had to get approval from the Chief Medical Officer M. Sayse before she could do anything else for my medical needs. Risenhoover again told me to go and drink more water. She told me to report any more problems to medical staff. I was denied any pain medication for my severe pain and was ordered back to my cell by (FNP) S. Risenhoover.

07  Still in extreme pain in my urethra, penis, and testicles. I can't exercise or sit down for too long.

1/07  Nothing has changed and the pain continues to hurt me every

*PG.12.*

7/22/07   Still no exam or follow up treatment.

7/25/07   Received my 602 inmate appeal back from first level.

7/26/07   Still no treatment or exam. Im having a real bad pain in my testicles and underneath my scrotum.

7/27/07   Kidneys are starting to hurt again along with a severe pain in my penis and underneath my scrotum.

7/31/07   I went to see (rn)S. Risenhoovers today for a follow up visit in regards to the extreme pain in my kidneys, testicles, and at the base of my penis. I pleaded for (rn)S. Risenhoover to please help me and told her that ever since that day the stones were lodged in my urethra and pushed out, Ive been in constant and extreme pain in my whole groin area. I also informed her that the pain in my testicles and penis is so sever that Im having trouble urinating. Again I was refused any type of pain medication or treatment and ignored when I was explaining my pain and worries. (rn)S.Risenhoover the informed me that she had talked to her boss (c mo)m. Sayre about my medical problems, and that from now on she would need to get his advice and approval to do anything else in regards to my needs. I was then given a prostate exam by (rn)S.Risenhoover. She told me that she believed that my prostate was extremely inflamed and could have been caused by the blockage of the kidney stones in my urethra. This could of resulted in the urinary tract Infection (UTI) that Im experiancing. I told (rn)S. Risenhoover that Im extremely stressed out about all of these medical issues that seem to be escalating due to the obvious lack of treatment. Again I asked to be

PG. 13.

seen by a urologist and to be given treatment for my urinary tract infection (UTI). She has refused me any care again. I turned over my kidney stone to (RN) S. Risenhoover for testing like I was instructed. She then advised me to fill out a P.B.S.P. 7362 medical form in order to explain my complaints further. (RN) S. Risenhoover then ordered me returned to my cell without any treatment or examination for my kidney pain and the excruciating pain in my testicles and penis area. Here on a follow-up visit I was once again refused a medical examination, denied medication for pain, antibiotics, and she is obviously not concerned with my serious medical needs. Especially for a critical organ like my kidney.

8/2/07    Received the receipt for my inmate 602 appeal. It's at the second level of appeals. Also seen (RN) Flowers about the medical slip I turned in concerning the pain in my testicles and groin area. I also explained to him that I was having trouble urinating and that I hurt severly in the area between the scrotum and anus. He called that area the Perinium. I also explained that I could not get an erection and that I think something in my penis is damaged. I explained to him about my kidney stones being lodged in my uretha and that this may be the cause of my on going medical issues.

3/5/07    No treatment or examination.

3/7/07    Received second level response back on my inmate 602 appeal.

3/8/07    Sent 602 to Directors Level.

<u>PG14.</u>

3/14/07

I was finally called back to the facilitys medical clinic to speak with (FNP) S. Risenhoover concerning my constant medical issues. I informed (FNP) Risenhoover that the pain in my kidney and testicles was becoming unbearably worse and that I need to be treated and examined by a urologist. Again I expressed to her that I was extremely stressed out by the absolute lack of concern and care I was receiving for my very obvious medical conditions. I again told (FNP) S. Risenhoover that I was having severe pain at the base of my penis and my testicles, and requested to please be examined, I informed her that I was also having trouble urinating and that I felt this is a very serious medical issue. Once again (FNP) Risenhoover refuses to take my medical needs serious and then stated to me "there is nothing wrong with you that a little water won't cure." I even pointed out to her that I am doing as. I was instructed persuant to the second level of my inmate 602 appeal. I was told to report any problems and thats what Im doing. She showed no concern. (FNP) S. Risenhoover then informed me that her boss (C.M.O.) M. Sayre had told her that nothing has changed with me and no treatment or further examination would be done without his approval. I again reminded (FNP) Risenhoover that I was instructed by C. Gocospe staff services analyst, and (C.M.O) Sayre to report any problems or concerns I was having. I again asked to be seen by a urologist and was told "no" by (FNP) Risenhoover. Regardless of the fact that C. Gocospe (SSA) and (C.M.O) M. Sayre ordered me to report any problems, (FNP) S. Risenhoover still refuses to provide me with any kind of medical care, treatment, or examination. Again I was ordered returned to my cell (in constant pain) without any help. Did give a urine sample.

PG. 15.

4/9/07    I filed another P.B.S.P. 7362 medical form as I was instructed if my medical problems continued. I reported to (R.n) J. Flowers that I am in extreme pain in my kidney, testicles, an at the base of my penis. I also reported having urination problems that caused me to be in extreme pain when I pee. I reported to (R.n) Flowers that the pain in my groin area was getting worse and that this has been going on now for many months with no medical exam or treatment. I reported that there is no pressure behind my urination stream and that my urine comes out in sporadic squirts. I asked "if I was suffering from a Urinal Tract Infection (U.T.I) then why aren't I being treated with antibiotics or something else?" I asked to be seen by a urologist and was refused by (R.n) J. Flowers who then said to me that all medical requests must be approved by (Fnp) Risenhoover first. I explained to (R.n) Flowers that this pain is causing me to not be able to sleep at night and preventing me from doing my daily exercises. I was returned to my cell without no medical examination or treatment for my severe pain and mobility to urinate.

4/10/07    Extreme pain in my testicles and at the base of my penis. It hurts and burns to urinate. Still no pressure and comes out in dribbles.

4/14/07    Seen (Fnp) S. Risenhoover concerning the P.B.S.P 7362 medical slip I filed on 4/9/07. I reported that I was in severe pain in my groin, abdomen, kidney, and at the base of my penis. Also reported that I'm having trouble urinating and that it burns to pee. Told her I could not sleep at night too because of the discomfort. I again informed (Fnp) S. Risenhoover that I was instructed to report any problems per my inmate 602, and that's what I'm doing. (Fnp) Risenhoover stated to me that my urinary Tract

PG. 16.

infection (UTI) was probably the result of the kidney stone damaging my urethra. I asked for antibiotics and to be seen by a urologist and was denied. (RN) S. Risenhoover then stated to me that (C.m.o) Sayre has already said that nothing has changed with my medical needs and therefore It's out of her hands. She then put all of the blame for the lack of my medical care on the responsibility of her superior (C.m.o) M. Sayre. And told me to take up my problems with him."(C.m.o) M. Sayre has never even examined me personally." I was told to drink water and ordered back to my cell without any medical treatment for my constant pain and obvious medical problems.

1/17/07    Still no treatment. Pain in groin, penis, and testicles.

1/21/07    Still no treatment. Penis in severe pain. I feel a small lump at the base of my penis. Hurts to urinate.

.0/5/07    Still no treatment or exam. There's a lump at the base of my penis that is getting bigger. Feels like its in my testicles too. Left side of penis. Extreme pain. Problems urinating.

0/25/07    Finally was taken to see (RN) S. Risenhoover. I reported that I in extreme pain in my testicles and at the base of my penis. I also reported that my groin area hurt so bad that I could not exercise or sit down for more than (20) minutes at a time. I then told (RN) S. Risenhoover that things are getting worse because now I have a "lump" at the base of my penis that is hurting me and getting larger. I reported that I'm in pain and I have a urge for constant urination, lack of stream, and a severe burning sensation. Risenhoover then responded that "drinking water is the best thing to do". I asked to be examined concerning this lump and my pain and was refused. I asked (RN) Risenhoove

PG. 17.

what I should do about the lump on my penis. She then said to me "She is done dealing with this and It's out of her hands." Risenhoover then stated that she also has no permission from her boss (m.c.)m. Sayre to do anything more. I was refused any treatment and ordered back to my cell without an examination or pain medication.

1/10/07    Still no examination for this lump at the base of my penis. Groin is extremely sore. Trouble urinating. Trouble sleeping or sitting.

1/16/07    Nothing has changed except the pain. Getting worse! "Ridiculous!"

1/19/07    I was finally given transport to see a professional urologist in Eureka, California. I was examined by Dr. J. Albertini. I explained to Dr. Albertini that I've had pain in my kidney and groin area for approximately (6) to (7) months now with no treatment or care by my primary care provider (FNP) S. Risenhoover I told Dr. Albertini that I've been complaining to medical staff for months now and was only able to see him by filing an inmate appeal. I reported to Dr. Albertini of my history with kidney stones and that on July 5, 07 I passed at least (2) stones in my prison cell that were lodged in my urethra. Dr. Albertini informed me that the prison medical staff did not send him my medical records therefore this visit would be incomplete I reported to Dr. Albertini that ever since the passing of the stones I've been experiancing additional pain and problems like a urinary Tract Infection, prostitis, pain in my testicles nolibido, curviture and an hour glass shape to my penis, and this lump at the base of my penis. After being physically examined by Dr. J. Albertini he diagnosed me with a condition called "Peyronies Disease". He explained to me that this is caused by a wound to the penis resulting in a scar and plaque

PG. 18.

to build up around the tissue inside of the penis. He then explained to me that this is a very serious medical condition that must be treated or it can result in a permanent penile damage, erectile disfunction (ED), and permanent penis disfigurement. He told me that oral medication might treat this but if not then surgery would be necessary. Dr. Albertini stated to me that I could have injured my penis with the kidney stones being lodged in my urethra and being pushed out. He showed me a diagram of the groin anatomy and explained this. He recomended (4) medication to treat this "Peyronies Disease". I was told I'd be back to see him in (3-4) months. I was then transported back to the person and upon my arrival I was told by medical staff that I would be seen by Risenhoover for a follow up visit to discuss any orders and recomendations made by Dr. Albertini. I told the medical staff that Dr. Albertini recomended (4) medication I was returned to my cell. Should see Risenhoover in (14) days according to the nurse.

11/28/07 - 12/6/07
Still no follow up. Filed an inmate 602 appeal requesting the medication that Dr. Albertini recomended. (R.N.) J. Flowers denied my appeal and stated that I am scheduled for a follow up visit.

12/12/07
Still no follow up visit or medication. Extremely stressed over this "Peyronies Disease". Still in pain and discomfort.

2/19/07
No follow up visit. Mentally stressed over this lack of concern. Not sleeping well at night. I have not even been informed of the reason why I'm being denied my medication.

1/7/08
I was finally taken to the medical clinic to see (FNP) S. Risenhoover for my follow up visit with Dr. Albertini on 11/19/07. I expressed my

PG. 19.

distress thats Its been (42) days since my examination by Dr.
Albertini. And that Ive been refused any medication or follow up
visit this time. I explained to (FNP) S. Risenhoover that Dr. Albertini
diagnosed me with a serious medical problem called "Peyronies Disease"
She showed absolutely no concern over this and said it was Dr. J.
Albertini's responsibility. She then stated to me that If you were on
the streets and not a criminal, you would be able to get your own
medication. I was finally prescribed all the medication that Dr. Albertini
reckomended.

1/14/08    Given zinc and went for x-rays.

1/15/08    reported pain in kidney

5/12/08    Given a CAT Scan of abdomen.

1/28/08    Went to Eureka, California to see Dr. J Albertini for a follow up. Told
him that the medication did not work for my Peyronies Disease. He
recomended another medication and recomended a surgeon in
San Francisco.

I Declare under Penalty of Perjury that the foregoing
Is True and Correct.

Shane Davis

April 20, 2008       Shane C. Davis

EXHIBIT - 2

# NOTE: SEND CO. Y OF PHYSICIAN'S ORDER I JR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.

## Plan

| Plan Dt/Tm | Plan | Provider |
|---|---|---|
| 03-16-2007 0826 | A: 1. ruq discomfort | RISENHOOVER, FNP, SUE |

A: 1. ruq discomfort
   2. simple vitreous floaters Rt eye Dr Cochrane 3/6/07 f/u prn
1. review mpims
2. review lab result w/pt 1/07 ast  32 alt  39 5/06 hcv vl detected  denies liver b>
denies avt
3. lft before next cc visit  180 dys
4. ua
5. reveiw DR Cochrane cons 3/6/07 notes w/pt
6. rtc 180 dys hcv cc  increase water avoid caffeine/etoh
7. rtc 14 dys f/u ruq discomfort

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By: |
|---|---|---|
| 03-16-2007 0832 | URINALYSIS, COMPLETE W/MICROSCOPIC | RISENHOOVER, FNP, SUE |
| 03-16-2007 0832 | LIVER FUNCTION<br>before next cc visit  180 dys | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt: | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 03-16-2007 0832 | 99999 | RTC 14 DYS F/U RUQ DISCOM | NA | | RISENHOOVER, FNP, SUE |
| 03-16-2007 0832 | 99999 | RTC 180D YS HCV CC | NA | | RISENHOOVER, FNP, SUE |

Confidential client information
See  W & I Code, Sections 4514 and 5328

CDC #: P97170
Name(L,F,M,S): DAVIS, SHANE CLAY

## PHYSICIAN'S ORDERS

CDC 7221
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

EXHIBIT – 3

Quest Diagnostics Incorporated

DAVIS, P97170

Final

DOB: 09/08/1970   Age: 36
GENDER: M

RISENHOOVER, SUE

4107710

SPECIMEN:    EL2004724
REQUISITION: 41077100094695
LAB REF NO:  D3-116

ID: P97170

PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY CA 95531

COLLECTED:  03/30/2007    08:50
RECEIVED:   03/31/2007    01:25
REPORTED:   03/31/2007    05:34

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| URINALYSIS, MACRO W/REFLEX TO MICRO | | | | SC |
| SPECIFIC GRAVITY | 1.029 | | 1.001-1.035 | |
| PH | 6.0 | | 5.0-8.0 | |
| URINE-COLOR | | ORANGE | YELLOW | |
| APPEARANCE | | TURBID | CLEAR | |
| WBC ESTERASE | NEGATIVE | | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | NEGATIVE | | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | | TRACE | NEGATIVE | |
| HEMOGLOBIN | NEGATIVE | | NEGATIVE | |
| URINE MICROSCOPIC | | | | SC |
| WBC/HPF | NONE SEEN | | 0-5/hpf | |
| RBC/HPF | NONE SEEN | | 0-3/hpf | |
| EPITHELIAL CELLS | NONE SEEN | | 0-5/hpf | |
| BACTERIA | NONE SEEN | | NONE SEEN | |
| MUCUS | | MANY | NONE SEEN | |
| CALCIUM OXALATE CRYSTALS | | FEW | NONE SEEN | |
| AMORPHOUS URATES | | MANY | NONE SEEN | |

--------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    Quest Diagnostics  711 Northland... ... ...

EXHIBIT- 4

| PATIENT INFORMATION<br>**DAVIS, P97170** | REPORT STATUS  **Final** |
| --- | --- |

QUEST DIAGNOSTICS INCORPORATED

SPECIMEN INFORMATION
SPECIMEN:    EL2095729
REQUISITION: 41077100096109
LAB REF NO:  D3-116

COLLECTED:  04/23/2007    09:05
RECEIVED:   04/24/2007    01:50
REPORTED:   04/24/2007    07:06

DOB: 09/08/1970   Age: 36
GENDER: M

ID: P97170

ORDERING PHYSICIAN
**RISENHOOVER, SUE**
CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY CA 95531

| Test Name | In Range | Out of Range | Reference Range | Lab |
| --- | --- | --- | --- | --- |
| URINALYSIS, MACRO W/REFLEX TO MICRO | | | | SC |
| SPECIFIC GRAVITY | 1.031 | | 1.001-1.035 | |
| PH | 5.5 | | 5.0-8.0 | |
| URINE-COLOR | | ORANGE | YELLOW | |
| APPEARANCE | | CLOUDY | CLEAR | |
| WBC ESTERASE | | TRACE | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | | TRACE | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| | VERIFIED BY REPEAT ANALYSIS | | | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | | TRACE | NEGATIVE | |
| HEMOGLOBIN | | 3+ | NEGATIVE | |
| | | | | |
| URINE MICROSCOPIC | | | | SC |
| WBC/HPF | NONE SEEN | | 0-5/hpf | |
| RBC/HPF | | 20-40 | 0-3/hpf | |
| EPITHELIAL CELLS | NONE SEEN | | 0-5/hpf | |
| BACTERIA | NONE SEEN | | NONE SEEN | |
| MUCUS | | MODERATE | NONE SEEN | |

------------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC   Quest Diagnostics 3714 Northgate Boulevard Sacramento CA  95834 Laboratory Director: Gerald E. Simon, M.D.

EXHIBIT - 5

**NOTE: SEND CO. OF PHYSICIAN'S ORDER F R MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.**

## Plan

| Plan Dt/Tm | Plan | Provider |
|---|---|---|
| 05-02-2007 0840 | A: 1. f/u lab 4/23/07<br>1. review mpims<br>2.review lab 4/23/07 w/pt<br>3. cmp done<br>4. ua c&s if indicated<br>5. discussed w/pt avoid caffeine,etoh  increase water avoid strenuous exerc<br>6. rtc 14 dsy f/u lab  notify rn/lvn prob/conc | RISENHOOVER, FNP, SUE |

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By: |
|---|---|---|
| 05-02-2007 0842 | COMPREHENSIVE METABOLIC PANEL<br>done | RISENHOOVER, FNP, SUE |
| 05-02-2007 0842 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>c&s if indicated | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt: | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 05-02-2007 0842 | 99999 | RTC 14 DYS F.U LAB | NA | | RISENHOOVER, FNP, SUE |

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 05-02-2007 0829 | 96 | 92 | 20 | 120/76 | NICHOLS, LVN, JEFF |

## Noted

| Noted Dt/Tm | Noted By |
|---|---|
| 05-02-2007 0844 | SCOTT, LVN, ELIZABETH |

Confidential client information

See W & I Code, Sections 4514 and 5328

CDC #: P97170

Name(L,F,M,S): DAVIS, SHANE CLAY

## PHYSICIAN'S ORDERS

CDC 7221
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

EXHIBIT - 6

PATIENT INFORMATION
**DAVIS, P97170**

REPORT STATUS **Final**

DOB: 09/08/1970   Age: 36
GENDER: M

ORDERING PHYSICIAN
**RISENHOOVER, SUE**

CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY CA 95531

SPECIMEN INFORMATION
SPECIMEN:      EL2135468
REQUISITION: 4107710009669?
LAB REF NO:  D3-116

ID: P97170

COLLECTED:  05/02/2007    09:45
RECEIVED:   05/03/2007    00:50
REPORTED:   05/04/2007    13:09

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| URINALYSIS, COMPLETE W/MICROSCOPIC | | | | SC |
| SPECIFIC GRAVITY | 1.029 | | 1.001-1.035 | |
| PH | 5.0 | | 5.0-8.0 | |
| URINE-COLOR | | ORANGE | YELLOW | |
| APPEARANCE | | CLOUDY | CLEAR | |
| WBC ESTERASE | | TRACE | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | | TRACE | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| | VERIFIED BY REPEAT ANALYSIS | | | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | | TRACE | NEGATIVE | |
| HEMOGLOBIN | NEGATIVE | | NEGATIVE | |
| WBC/HPF | 0-5 | | 0-5/hpf | |
| RBC/HPF | 0-3 | | 0-3/hpf | |
| EPITHELIAL CELLS | NONE SEEN | | 0-5/hpf | |
| RENAL EPITHELIAL | NONE SEEN | | NONE SEEN | |
| BACTERIA | | FEW | NONE SEEN | |
| CALCIUM OXALATE CRYSTALS | | FEW | NONE SEEN | |
| AMORPHOUS URATES | | MODERATE | NONE SEEN | |
| HYALINE CASTS | 0-5 | | NONE SEEN | |
| GRANULAR CASTS | NONE SEEN | | NONE SEEN | |
| YEAST | NONE SEEN | | NONE SEEN | |

The following criteria are utilized in determining whether a culture
is indicated for this urine specimen:

1. Positive leukocyte (WBC) esterase
2. Positive nitrite and 6 or more leukocytes per high power field
   (WBC/HPF).
3. 6 or more leukocytes per high power field (WBC/HPF).
4. Presence of bacteria and 6 or more leukocytes per high power field
   (WBC/HPF).

| | | | | |
|---|---|---|---|---|
| CULTURE, URINE (ROUTINE) | | | | SC |
| STATUS | FINAL | | | |
| SOURCE | NOT GIVEN | | | |
| CULTURE | NO GROWTH AFTER 48 HOURS OF INCUBATION. | | | |

------------------------------------------------------------------------

**Performing Laboratory Information:**

SC   ........................

_EXHIBIT - 7_

|  | PATIENT INFORMATION<br>**DAVIS,P97170** | REPORT STATUS  **Final** |
|---|---|---|

QUEST DIAGNOSTICS INCORPORATED

SPECIMEN INFORMATION
SPECIMEN:       EL2136017
REQUISITION: 41077100096681
LAB REF NO:   D3-116

COLLECTED:   05/02/2007      08:30
RECEIVED:     05/03/2007      01:13
REPORTED:     05/03/2007      06:04

DOB: 09/08/1970   Age: 36
GENDER: M

ID: P97170

ORDERING PHYSICIAN
**RISENHOOVER,SUE**
CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY CA 95531

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ELECTROLYTES WITHOUT CO2 |  |  |  | SC |
| SODIUM, SERUM | 146 |  | 135-146 mmol/L |  |
| POTASSIUM, SERUM | 3.7 |  | 3.5-5.3 mmol/L |  |
| CHLORIDE, SERUM | 108 |  | 98-110 mmol/L |  |
| CHEMISTRIES |  |  |  | SC |
| UREA NITROGEN,BLOOD (BUN) | 12 |  | 7-25 mg/dL |  |
| CREATININE, SERUM | 0.9 |  | 0.5-1.3 mg/dL |  |
| CALCIUM, SERUM | 10.1 |  | 8.6-10.2 mg/dL |  |
| PHOSPHORUS, SERUM |  | 1.3 L | 2.5-4.5 mg/dL |  |
|  | VERIFIED BY REPEAT ANALYSIS |  |  |  |
| URIC ACID, SERUM | 6.1 |  | 4.0-8.0 mg/dL |  |
| TOTAL PROTEIN | 7.0 |  | 6.2-8.3 g/dL |  |
| ALBUMIN | 4.5 |  | 3.6-5.1 g/dL |  |
| GLOBULIN, TOTAL | 2.5 |  | 2.1-3.7 g/dL |  |
| A/G RATIO | 1.8 |  | 1.0-2.1 ratio |  |
| eGFR | >60 |  | SEE BELOW |  |

REFERENCE RANGE:     > = 60 ml/min/1.73m2
IF PATIENT IS AFRICAN AMERICAN, MULTIPLY REPORTED RESULT BY 1.21.

| | | | | |
|---|---|---|---|---|
| GLUCOSE | 93 |  | 65-99 mg/dL | SC |
| GGT | 24 |  | 3-90 U/L | SC |
| ENZYMES AND BILIRUBIN |  |  |  | SC |
| LACTATE DEHYDROGENASE (LDH) | 213 |  | 100-250 U/L |  |
| AST (SGOT) | 36 |  | 10-40 U/L |  |
| BILIRUBIN, TOTAL |  | 1.6 H | 0.2-1.2 mg/dL |  |
| ALT (SGPT) | 35 |  | 9-60 U/L |  |
| ALKALINE PHOSPHATASE | 68 |  | 40-115 U/L |  |
| CHOLESTEROL, TOTAL | 127 |  | 125-200 mg/dL | SC |
| TRIGLYCERIDES | 104 |  | <150 mg/dL | SC |
| IRON, TOTAL |  | 310 H | 45-170 mcg/dL | SC |

VERIFIED BY REPEAT ANALYSIS

----------------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    Quest Diagnostics 3714 Northgate Boulevard Sacramento CA  95834 Laboratory Director: Gerald E. Simon, M.D.

EXHIBIT - 8

NAME: Davis    NUMBER P97170    HOUSING D3-116    PBSP-LAB-001

PELICAN BAY STATE PRISON    HEALTH CARE SERVICES UNIT

NOTIFICATION TO PATIENT OF LABORATORY TEST RESULTS    TEST DATES: 5/2/2007

TYPE OF TEST:    (BASIC BLOOD TESTS)    HEPATITIS SCREEN    X-RAY    EKG
(circle test type)    OTHER:

YOUR TEST RESULTS WERE EVALUATED BY A PHYSICIAN AS FOLLOWS:

☐    Your test result is essentially within normal limits. No physician follow-up is required.

☒    Your test result remains unchanged an will be reviewed with you at your next Chronic Care Appointment.

☐    Your test result is not within normal limits. You will be scheduled to discuss the results with a physician.

☐    Your test result is not within normal limits. Further studies are required and have been scheduled for you. You

will receive further information on this study at a later date.

PHYSICIAN REMARKS

_____

_____

_____

_____

_____

_____

1.    HEALTH RECORD COPY

2.    PATIENT COPY    Physician & Surgeon

3.    PHYSICIAN COPY    5/7/07 (425)
Date &Time

## CONFIDENTIAL

NAME:    NUMBER    HOUSING    PBSP-LAB-001

EXHIBIT 8-A

NAME: Davis    **NUMBER** P97170    **HOUSING** D3-116    PBSP-LAB-001

**PELICAN BAY STATE PRISON**        **HEALTH CARE SERVICES UNIT**

**NOTIFICATION TO PATIENT OF LABORATORY TEST RESULTS**        **TEST DATES:** 5/2/07

**TYPE OF TEST:**        **BASIC BLOOD TESTS    HEPATITIS SCREEN**    **X-RAY**    **EKG**
(circle test type)        **OTHER:** UA/c+s

**YOUR TEST RESULTS WERE EVALUATED BY A PHYSICIAN AS FOLLOWS:**

☐ Your test result is essentially within normal limits.  No physician follow-up is required.

☒ Your test result remains unchanged an will be reviewed with you at your next Chronic Care Appointment.

☐ Your test result is not within normal limits.  You will be scheduled to discuss the results with a physician.

☐ Your test result is not within normal limits.  Further studies are required and have been scheduled for you.  You

will receive further information on this study at a later date.

PHYSICIAN REMARKS

1.    HEALTH RECORD COPY

2.    PATIENT COPY        _____
                          Physician & Surgeon
3.    PHYSICIAN COPY

                          5/9/07  1100
                          Date &Time

**CONFIDENTIAL**

**NAME :**        **NUMBER**        **HOUSING**        **PBSP-LAB-001**

EXIBIT 8-B

EXHIBIT- 9

**NOTE: SEND COH ⅃ OF PHYSICIAN'S ORDER F ⅃R MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

## Plan

**Plan Dt/Tm:** 05-29-2007 0928                    **Provider:** RISENHOOVER, FNP, SUE

A: 1. f/u lab 5/2/07 iron 310

1. review mpims
2. review lab 5/2/07 w/pt
3. fasting iron study w/reflex to ferritin, tsh
4. f/u when lab results avail   notify rn/lvn prob/conc   avoid   mtv, etoh

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 05-29-2007 0930 | IRON AND IBC W/RFX TO FERRITIN<br>fasting   done today | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 05-29-2007 0930 | 99999 | RTC WHEN LAB RESULTS AV | NA | | RISENHOOVER, FNP, SUE |

## Noted

**Noted Dt/Tm:** 05-29-2007 1059                    **Noted By:** SCOTT, LVN, ELIZABETH

Confidential client information

See  W & I Code, Sections 4514 and 5328

**CDC #:** P97170

**Name(L,F,M,S):** DAVIS, SHANE CLAY

COPY

## PHYSICIAN'S ORDERS

# EXHIBIT-10

(10-A THRU 10-H)

F (1).

DECLARANT:
RAYMOND CASARES D09770
P.O. BOX 7500-D3-114
CRESCENT CITY, CA
            95532

1
2
3
4
5
6
7
8   Shane Davis
9       Plaintiff
10                              Case No.————————
11  Vs.                         Affidavit in Support of
12  M. Sayre ET. AL,
13      Defendants
14
15
16      I, RAYMOND CASARES D#09770, Not A
17  PARTY to this matter, declare the Following:
18  1) I AM NOW INCARCERATED IN the
19  SECURITY HOUSING UNIT At PELICAN BAY
20  STATE PRISON.
21  2) I HAVE been housed in the SAME
22  SECTION # ON the SAME Four-celled tier
23  with MR. DAVIS FOR APPROXIMATELY ONE(1)
24  YEAR.
25  3) ON JUNE 13, 2007 during the late
26  hours of the night, EARLY MORNING, I
27  WAS AWAKENED by A loud MOANING
28  SOUND - AS IF SOMEONE WAS IN SEVERE

1.

1   PAIN. AFTER A FEW MINUTES I REALIZED
2   that the sound was coming from
3   MR. DAVIS in Cell D3-116. At APPROXIMATE-
4   LY 4AM, during the routine security
5   count by the correctional officer (C/O)
6   I overheard MR. DAVIS convey to
7   the C/O that he was in bad abdominal
8   PAIN & that he needs medical help.
9   AFTER the C/O left the pod, & medical
10  STAFF still did not ARRIVE AFTER some
11  time, I could still hear MR. DAVIS
12  MOANING AS IF IN SEVERE PAIN, that's
13  when another inmate in the pod began
14  calling out to the control booth "MAN
15  DOWN." APPROXIMATELY 10 minutes AFTER
16  the inmate yelled "MAN down" PRISON
17  OFFICERS came into the section &
18  escorted MR. DAVIS to the medical
19  Clinic.
20  5) I declare under penalty of perjury that
21  the foregoing is true. Signed on this
22  30TH day of Sept. 2007 At PELICAN BAY
23  STATE PRISON, CRESCENT CITY, CALIF.
24
25          L. Casares D09770
26          RAYMOND CASARES D09770
27          — DECLARANT —
28

Declarant :

Jesus Gonzalez #H-37466

P.O. Box. 7500  D-3 # 114

Crescent City, Ca.
                    95531

Shane Davis
        Plaintiff

                          Case no.—————————————

vs.                        Affidavit in Support of

M. Sayre  ET. AL,

        Defendants

        I, Jesus Gonzalez  H-37466, not a party to
this matter, declare the following:
 1) I am incarcerated in the security Housing Unit (SHU) at
Pelican Bay State Prison
 2) I have been housed in the Same Section (D. Pod) and
lower tier as MR. Davis for nearly one year.
3) On June 13, 2007 during the very early morning, I was
awaken by loud and constant moaning, as if Someone was
experiencing and suffering extreme pain. Shortly after a
few minutes I came to realize that the moaning was coming
from MR. Davis in cell D-3 #116. At approximately 4 AM, during
the the routing security count by the correctional officer
on duty, I overheard MR. Davis notify the officer that

/

1  he was experiencing severe pain in his abdominal and
2  that he was in serious need of medical attention. After the
3  officer exited the section MR. Davis could still be heard
4  moaning with pain. A long while passed without medical staff
5  arriving. As MR. Davis continued to moan another inmate
6  yelled-out to the B-3 control booth "Man Down" - reffering
7  to MR. Davis. About ten minutes after "man Down" was
8  called correctional officers finally arrived to escort MR.
9  Davis to the medical clinic.

10  4) I declare under penalty of purjury the foregoing is
11  true. Signed on this 30th day of september 2007, at
12  Pelican Bay State Prison, crescent city, ca.

13

14                    Jesus Gonzalez #H-37466
15                         Jesus Gonzalez
16

17

18

19

20

21

22

23

24

25

26

27

28

Michael Lerma
C-38374, D-3-113
P.O. Box 7500
Crescent City, Calif.
95531

Shane Davis
                    Plaintiff
                                            CASE NO _____
                                            Affidavit in Support of
VS.

M. Sayre ET. AL;
                    Defendants

I, Michael Lerma, C-38374, Do hereby Declare The
following. That on or about May 2, 2007, Shane Davis.
P-97170. Cell D-3-116. Started To have pain in his
Abdominal Area. The Sides and front, upper part. Which
kept getting more severe everyday that part. about this
Same Time Mr. Davis Put in a Sick Call Slip To go see the
D-facility Doctor for his pain. When Mr. Davis had come back
From his Medical visit with The Doctor. I had asked him
What The Doctor Said To him. he Stated to Me That, That
female F.N.P. Told him To Drink 16 Cups of Water a day and
That Should Take care of his pain.

THEN ON OR about June 13, 2007, I was awaken by
Some ones Loud Moaning and groaning at about 3:00 A.M.

1.

1  it was MR. DAVIS in SEVERE PAIN. he was bent over and
2  doubled-up on his cell floor, his moaning was so loud that he
3  woke everyone up in the Pod. At around this time the C/o's do
4  a count to check on all of the inmates. when the D-facility
5  unit-3. S.h.u. officer did his count. I heard MR. DAVIS tell
6  The officer That he was in bad pain and can't move. The officer
7  Said okay and Left. About 30 To 45 minutes later MR. DAVIS
8  Said something To his Neighbor. MR. Salvant, D-3-115, who
9  Then Started To Yell. MAN DOWN D-Pod 116! he Yelled This
10 about 5 Times. The officers yelled back OKAY WE hear YOU, Then
11 about 5-To 10 minutes Later and Came in and Took MR DAVIS To
12 The Clinic for TREATMENT.

13  Then on or about July 7. 2007, MR. DAVIS. PASSED, what I
14 believe where Kidney STones. he Showed ME ONE IN A Plastic
15 baggy. it was a little larger Than a B-B. was DARK Red with SMALL
16 CRYSTAl SPikes COMING out of it. also during This whole Time
17 FROM MAY until July MR. DAVIS WAS iN Constant and SEVERE
18 PAIN. he couldn't do Much but LAY in bed Most of The day.

19
20
21  I, DECLARE The Above Mentioned is TRUE and CORRECT To The
22 best of MY KNowledge UNder Penalty of PERJURY. UNder The LAWS of
23 The State of CALIfORNIA. EXECUTED This 27, day of SEPTEMBER
24 2007.

25              Michael Lerma
26              MICHAEL LERMA
27
28
                    2.

SHANE DAVIS, P47170
P.O. BOX 7500 D3-116
CRESCENT CITY, CA. 95532

PRO SE.

SHANE DAVIS,
    PLAINTIFF,

VS.

    DEFENDANTS.

CASE NO. _____

AFFIDAVIT OF SERGIO ALVAREZ.
IN SUPPORT THEREOF.

I, SERGIO ALVAREZ, K42605, NOT A PARTY TO THIS MATTER HEREBY DECLARE THE FOLLOWING:

1) I AM NOW INCARCERATED IN THE SECURITY HOUSING UNIT (SHU) AT PELICAN STATE PRISON IN CRESCENT CITY CALIFORNIA AND HAVE BEEN HOUSED AT SAID FACILITY SINCE APPROXIMATELY 1997.

2) I HAVE BEEN HOUSED IN THE SAME SECTION WITH MR. DAVIS FOR ABOUT A YEAR (MY CURRENT CELL ADDRESS IS D-FACILITY, 3 BUILDING CELL # 215), AND FROM CONVERSATIONS I'VE HAD WITH MR. DAVIS I KNOW HE HAS HAD MEDICAL PROBLEMS AND THAT HE'S BEEN COMPLAINING TO STAFF AT THE PRISON ABOUT NOT RECEIVING ADEQUATE MEDICAL TREATMENT FOR ABDOMINAL PAIN AND KIDNEY STONES.

3) ON APPROXIMATELY JUNE 13, 2007 IN THE MIDDLE OF THE NIGHT THERE WAS A LOUD SOUND LIKE SOMEONE WAS IN PAIN., SOUND IN THE HOUSING SECTIONS ARE EASILY HEARD BECAUSE THERE ARE ONLY EIGHT CELL'S (FOUR ON BOTTOM TIER AND FOUR TOP TIER), AND THE DOORS ARE NOT SOLID THUS, SOUND IS NOT BLOCKED IN OR OUT OF THE CELL'S.

4) THE SOUND OF PAIN ON 6/13/07 WOKE ME UP AND TURNED OUT TO BE OUT OF MR. DAVIS' CELL IN D3-116 WHO WAS GROANING LOUDLY. ALSO, WHEN THE PRISON NIGHT SHIFT GUARD WAS DOING HIS ROUTINE HEAD COUNT AT AROUND 4:00 AM MR. DAVIS COMPLAINED ABOUT SEVERE ABDOMINAL PAIN AND ASKED FOR MEDICAL HELP. HOWEVER STAFF DID NOTHING TO HELP DAVIS. AND AFTER SOME TIME WHERE PRISON STAFF WERENT DOING ANYTHING AND DAVIS CONTINUING TO GROAN IN PAIN I HEARD ANOTHER INMATE WITHIN THE SECTION YELL TO THE UNIT CONTROL BOOTH SAYING "MAN DOWN" MEANING THERES AN EMERGENCY AND AN INMATE NEEDS MEDICAL TREATMENT IMMEDIATELY.

5) ABOUT TEN MINUTES AFTER THE INMATE YELLED "MAN DOWN" PRISON OFFICIALS FINALLY CAME IN AND TOOK MR. DAVIS TO THE FACILITY CLINIC FOR A CHECK UP.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. I SERGIO ALVAREZ, K42605 WAS UNDER NO CONSTRAINT OR UNDUE INFLUENCE, ACCORDING TO MY BEST KNOWLEDGE AND BELEIF, AND TO THOSE MATTERS BASED ON BELEIF, I BELIEVE THEM TO BE TRUE. SIGNED THIS 26 DAY OF Sept. 2007 AT PELICAN BAY STATE PRISON, IN CRESCENT CITY CALIFORNIA, COUNTY OF DEL NORTE.

SALVAR~ K42605
SERGIO ALVAREZ K42605 — DECLARANT.

1  Shane Davis P-14211
2  P.O. Box 7500  B3-116
3  Crescent City, Ca.
4          95532

8  Shane Davis
9          Plaintiff

10                              Case no. _____
                                Affidavit in Support of

11  vs.

12  M. Sayre ET. AL;
13          Defendants

16  I, Shane Davis P-14211 do hereby
17  declare the following. I am now
18  incarcerated in the security housing
19  unit (SHU) at Pelican Bay state prison
20  in Crescent City, California.
21      I have been housed in the same
22  section with Mr. Davis for about a
23  year and have conversations the
24  ____ with Mr. Davis he has told me
25  abdominal pains have been bothering
26  "he him". Also has told me medical
27  doesn't seem to take his pains in
28  abdominal serious.

on 06-12-07 early in the morning
I heard sounds of pain coming out
of mr. Davis cell who is behind me
in D3-110 and also I heard mr.
Davis start cursing on 4:00 am could
letting him know he needs some
medical attention because he's
in pain in abdomin. Guard took
off and continued count and after
that time passed like nothing
was being done. Davis continued
in pain so his neighbor called
man down and then they came and
took mr. Davis to clinic. Later
that morning mr. Davis was brought
back and still was in pain then he
was in pain days after which
ruined into weeks.

I, Declare under penalty of
perjury that the foregoing is true
and correct.

Signed this 27 day of September
at Pelican Bay state prison in
Crescent City California.

Anthony Ramos
anthony Ramos D-14211

1  Warren D. Jordan, B-42717
2  P.O. Box 7500 D-3-213
3  Crescent City, Ca
4             95532
5
6
7
8  Shane Davis
9          Plaintiff                       ⌐
10                                    Case No. _____
                                      Affidavit in Support of
11  VS.
12  M. Sayre ET. AL;
13          Defendants
14

15      I, Warren Jordan declare as follows
16  that I'm an inmate in the Security
17  housing unit at Pelican Bay State Prison
18  and my following Statement is the truth.
19      On the early morning of June 13, 2007
20  at about 330 Am I heard Sound's of
21  pain coming from the bottom tier or
22  there abouts. I identified the sounds
23  coming from inmate Davis in D-3-116.
24      At this time I heard inmate Davis
25  asking the floor officer to call the
26  MTA because something was wrong
27  with his kidneys. Approximately 15
28  minutes elapsed with no MTA. Then

I heard another inmate on the bottom tier call out to the control tower that there was a man down in D-3-116.

Inmate Davis has been complaining about a pain in his kidneys a few weeks prior to this so I knew this to be a serious medical matter.

About 10 minutes later the floor officers came into D-3 pod and removed inmate Davis from his cell.

I, inmate Warren D Jordan declare all of the above statement as true and correct under penalty and perjury of the law. This day October 17, 2007.

Warren D. Jordan
B-42117

2.

JOSE G. GONZALES C71416
P.O. BOX 7500 D3/214
CRESCENT CITY  CA.
            95531

Shane Davis
        Plaintiff                    Case no.————————
                                        Affidavit in support of
VS.

M. Sayre ET.AL;
        Defendants

        I, JOSE GONZALES declare as follows That
I'm incarcerated in the security housing unit
at Pelican bay STATE prison. I have been housed
in D3 -214 The same pod as Mr. Davis
        On the early hours of June 13, 2007 aT
approximately 4:00 a.m I was awoken by
some shouts, an inmate was yelling at
The control tower in D3, D-Pod, Trying to get
his attention. He shouted Several times
"that a man was down and needed medical
attention" at that point I heard another
inmate, who I Later realized it was Mr Davis
sound as if he was expiencing a lot of Pain
and discomfort. Appoximately Ten minutes
later the officer(s) came in to check what
was going on. Then they placed the handcuffs

                    1.

and escorted mr. Davis to the infirmary.
I was unable to see anything since I'm
on the second Tier. but by the sounds
mr. Davis was making it appeared he was
suffering from aches and pains.

   I declare that the above is true and
correct and do so under penalty of Perjury on
This day 5th of October 2007 at crescent city
California.

                    Jose Gonzales

                    Jose Gonzales
                       C71416

2.

1  Joseph K. Salvant, C-08365
2  P.O. Box 7500
3  D-3-115
4  Crescent City, Ca.

5
6
7

8  Shone Davis
9          Plaintiff

10                                    Case No. ———————————
11  vs.                               Affidavit in Support of
12  M. Sayre ET. AL;
13          Defendants
14

15
16    I, Joseph K. Salvant, C-08365 do hereby declare
17  under penalty of perjury that Davis suffered a serious
18  medical problem during the a.m. hours of June 13, 2007.
19    I, Salvant C-08365 occupy the cell# 115 adjacent to
20  cell# 116 occupied by Davis P.97170. In the early a.m.
21  of June 13, 2007, like most morning at the period
22  of time in the early a.m. I'm awoke, usually doing my
23  exercise program. Thus, when I first heard Davis P.97170
24  moving around, which is unusual for him at that particular
25  hour. My first initial thought was perhaps Davis P.97170
26  was awaken because he had been disturbed by the sound
27  of my movement. It wasn't long, however, that it became
28  quite clear because of the sound emanating out of

1.

1   Davis's cell, it was apparent Davis was in tremendous
2   pain, of somekind.
3       When the first watch officer, who makes the rounds
4   to count the inmates, made the usual four o'clock count
5   Davis P.97170 stop the officer. Thereupon, Davis explained
6   to the officer his problem, and that he (Davis) needed
7   to see the nurse. The officer's response to Davis was
8   that as soon as he (officer) finished his rounds, he would
9   notify the clinic.
10      After a more than a reasonable amount of time had
11  lapse by. And all the while Davis P.97170 had seemed to
12  had reached a definitely level of pain that was unbear-
13  able. So I, Salvant C-08365 decided it was necessary
14  to inform staff of this apparent situation. I, Salvant C-08365
15  yell out to the tower officer to let him know that
16  there is a man down in cell #116, who needed to see the
17  nurse. The officer acknowledge my call, and said he'll
18  call the clinic. Shortly there after the escort officers
19  showed-up and finally escorted Davis P.97170 to the
20  clinic to be examine.
21      Executed on the 29th of September 2007.

                            Joseph K. Salvant
                            Joseph K. Salvant

EXHIBIT - 11

# EMERGENCY CARE FLOW SHEET
## CALIFORNIA DEPARTMENT OF CORRECTIONS
PBSP 7206

| | | | | 06-13-2007 | IN | OUT |
|---|---|---|---|---|---|---|
| | | | | 0527 | | |

| INMATE | NAME  LAST | FIRST | CDC NUMBER | HOUSING | DOB |
|---|---|---|---|---|---|
| | DAVIS | SHANE | P97170 | D03L116L | 09-08-1970 |

| TIME OF INCIDENT | LOCATION OF INCIDENT | MODE OF ARRIVAL | | | |
|---|---|---|---|---|---|
| 0500 | D SHU | rover | | | |

| STAFF | NAME  LAST | FIRST | OCCUPATION | SEX | AGE | DOB |
|---|---|---|---|---|---|---|
| | | | | | | |

| CHIEF COMPLAINT | R kidney stone pain | | TB CODE | DATE OF LAST TETANUS |
|---|---|---|---|---|
| | | | 22 | unk |

| MECHANISM OF INJURY | SKIN COLOR | SKIN TEMP. | SKIN MOISTURE | CAPILLARY REFILL |
|---|---|---|---|---|
| ☐ STABBING | ☑ NORMAL | ☐ HOT | ☑ NORMAL | ☑ < 2 SECONDS |
| ☐ PHYSICAL ALTERCATION | ☐ PALE | ☑ WARM | ☐ DRY | ☐ > 2 SECONDS |
| ☐ GUNSHOT WOUND | ☐ ASHEN | ☐ COOL | ☐ MOIST | ☐ NONE |
| ☐ BURN | ☐ CYANOTIC | ☐ COLD | ☐ PROFUSE | |
| ☐ SPORTS INJURY | ☐ FLUSHED | | | |
| ☐ ON THE JOB INJURY | | | | |
| ☑ OTHER | | | | |
| kidney stone pain | | | | |

### GLASCOW COMA SCALE

| TIME | EYE OPENING RESPONSE | BEST VERBAL RESPONSE | BEST MOTOR RESPONSE |
|---|---|---|---|
| 0531 | 4 | 5 | 6 |

| LUNG SOUNDS | | RESP CHARACTER | EVIDENCE OF TRAUMA | |
|---|---|---|---|---|
| RT | LT | ☐ LABORED | ☐ CHEST | ☐ HEAD |
| ☑ CLEAR | ☑ | ☑ UNLABORED | ☐ ABDOMEN | ☐ NECK |
| ☐ WHEEZES | ☐ | ☐ PAINFUL | ☐ G/U | ☐ EXTREMITIES |
| ☐ RALES | ☐ | ☐ SHALLOW | ☐ PELVIS | ☑ OTHER |
| ☐ RHONCHI | ☐ | ☐ DEEP | ☐ BACK SPINE | |
| ☐ DIMINISHED | ☐ | ☐ RETRACTION | kidney stone pain | |
| ☐ ABSENT | ☐ | ☐ NASAL FLARING | | |

| TIME | TEMP | PULSE | RESP | BP | SaO2 |
|---|---|---|---|---|---|
| 06-13-2007 0530 | 96.6 | 74 | 16 | 149/92 | 100 |
| 00-00-0000 0000 | | | | / | |
| 00-00-0000 0000 | | | | / | |
| 00-00-0000 0000 | | | | / | |

| TIME | NAME | SITE | GAUGE | RATE |
|---|---|---|---|---|
| 00-00-0000 0000 | | | | |
| 00-00-0000 0000 | | | | |

| TIME | ROUTE | RATE | SaO2 |
|---|---|---|---|
| | | | |

| TIME | PUPIL RESPONSE | | PUPIL SIZE | |
|---|---|---|---|---|
| | R | L | R | L |
| 0531 | B | B | 4 | 4 |

KEY C=CLOSE B=BRISK SL=SLUGGISH F=FIXED

3    4    5    6    7    8

### CURRENT MEDICATIONS

### MEDICATION ALLERGIES



| Page 1 of 2 | NAME (LAST, FIRST, MI) | DAVIS, SHANE C. |
|---|---|---|
| | CDC# | P97170 |

| SIGNATURES | PATIENT DISPOSITION | PATIENT CONDITION ON DISCHARGE |
|---|---|---|
| RN/MTA/MD RN/MTA/MD RN/MTA/MD RN/MTA/MD | | |
| SUPERVISOR REVIEW   K7o7 5ReST | RTC MODE OF DEPARTURE: Ambulatory | TIME ≃ 0600 · D+cbC |

## SOAP NOTATIONS
### SUBJECTIVE (PATIENT'S STATEMENTS, HISTORY)

| DATE/TIME | PROVIDER |
|---|---|
| 06-13-2007 0535 | MPIMSDJT, THOMAS, RN |

S: R kidney stone pain  was 9/10 @ 0500, @ 0510 4/10, @ 0520 0/10
O: pt arrived UTA via RN Rover, amb steady gait, afebrile, VSS, CVA -, pain
dissipating. C/o n/v and cramping, LBM 6/12 AM, now laughing, A+OX3. Lungs CTA,
BSX4, NAD. Has had this before, was seen 5/29 in clinic for this and was not
treated. Labs 5/2/7 UA ++abnormals. Is ok with going to clinic today to see PCP.
A: Altered comfort r/t recurrent kidney stone pain
P: FU D SHU Clinic PCP today.
Dan Thomas, RN, BSN

## ASSESSMENT (NURSING DIAGNOSIS)

| DATE/TIME | DESCRIPTION | NOTES |
|---|---|---|
| | | |

## PLAN (PT EDUCATION, FOLLOWUP, MD ORDERS, ETC)

| DATE/TIME | DESCRIPTION | NOTES |
|---|---|---|

COPY

| NAME (LAST, FIRST, MI) | DAVIS, SHANE C. |
|---|---|
| CDC# | P97170 |

*EXHIBIT-12*

## Subjective

**Entry Dt/Tm:** 06-13-2007 1206      **Entered By:** MPIMSSER , RISENHOOVER, FNP

**Updated Dt/Tm:** 06-13-2007 1217      **Updated By:** MPIMSSER , RISENHOOVER, FNP

pt here 24 hrs f/u eruta states " at 3:30am  I had same pain rt flank area in
my kidney and abd area I sat on the floor could not move I vomited I sat down
thinking pain would go away I waited on the floor officer, I went over to the
er he had the forms from before the other tests. the doctor there told me I was
not tx for the urinary infection and I would be sent out to a specialist. I
don't have anything for pain."
states "the pain is better now."

## Objective

### Other

**Name:** f/u 24 hr uta seen by rn

**Provider:** RISENHOOVER, FNP , SUE                     **Other Dt/Tm:** 06-13-2007 1217

**Notes:** v.s stable a&o nad color good w/d  gait wnl  no cva tenderness heart rrr  w/o
lungs clear  heart rrr w/o murmur  abd soft normal bwl sds no m/t/o/b  pt
points to rt abd area as place of discomfort earlier this am

---

## PHYSICIAN'S PROGRESS NOTES

**CDC #:** P97170

**Name(L,F,M,S):** DAVIS, SHANE, CLAY

CDC 7230
STATE OF CALIFORNIA      DEPARTMENT OF CORRECTIONS

## Plan

**Provider:** RISENHOOVER, FNP , SUE       **Plan Dt/Tm:** 06-13-2007 1225       **Completed By:** RISENHOOVER, FNP , SUE

**Completed Dt/Tm:** 06-13-2007 1221       **Patient Education:** Y       **Phone Order Status:** NONE

    **Entry Dt/Tm:** 06-13-2007 1220       **Entered By:** MPIMSSER, RISENHOOVER, FNP

```
A: 1. rt ? kidney stone
   2. dysuria

1. review mpims
2. avoid caffeine/etoh  avoid strenuous exerc
3. septra ds one po bid x 7 days
4. pyridium 200mg po tid ac x 2 days  for pain, will turn urine orange and
stain clothing
5. refer for rt kidney US
6. rtc 7 dys f/u rt flank pain
```

## Order

### Medications

| Start Dt/Tm | Medication | Strength | Rte | Freq | Duration | Provider |
|---|---|---|---|---|---|---|
| 06-13-2007 1221 | SULFAMETHOXAZOLE/TMP DS TAB | 1 TAB | PO | BID | 7 | RISENHOOVER, FNP, SUE |
| 06-13-2007 1222 | PHENAZOPYRIDINE 200MG TAB | 200 MG | PO | TIDPC | 2 | RISENHOOVER, FNP, SUE |

### Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 06-13-2007 1224 | 99999 | REFER US RT KIDNEY | NA | | RISENHOOVER, FNP, SUE |
| 06-13-2007 1224 | 99999 | RTC 7 DAYS F/U RT KIDNEY | NA | | RISENHOOVER, FNP, SUE |

### Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 06-13-2007 1223 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>C&S  today done | RISENHOOVER, FNP, SUE |
| 06-13-2007 1223 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>repeat in 14 days | RISENHOOVER, FNP, SUE |
| 06-13-2007 1224 | X-RAY<br>US right kidney | RISENHOOVER, FNP, SUE |

**PHYSICIAN'S PROGRESS NOTES**

**CDC #:** P97170

**Name(L,F,M,S):** DAVIS, SHANE, CLAY

CDC 7230

STATE OF CALIFORNIA       DEPARTMENT OF CORRECTIONS

Page 3 of 3

## NOTE: SEND COP . OF PHYSICIAN'S ORDER FOR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.

### Plan

**Plan Dt/Tm:** 06-13-2007 1225

**Provider:** RISENHOOVER, FNP, SUE

A: 1. rt ? kidney stone
   2. dysuria

1. review mpims
2. avoid caffeine/etoh  avoid strenuous exerc
3. septra ds one po bid x 7 days
4. pyridium 200mg po tid ac x 2 days  for pain, will turn urine orange and stain clothing
5. refer for rt kidney US
6. rtc 7 dys f/u rt flank pain

### Medications

| Start Dt/Tm | Medication | Strength | Rte | Freq | Duration | Provider |
|---|---|---|---|---|---|---|
| 06-13-2007 1221 | SULFAMETHOXAZOLE/TMP DS TAB | 1 TAB | PO | BID | 7 | RISENHOOVER, FNP, SUE |
| 06-13-2007 1222 | PHENAZOPYRIDINE 200MG TAB | 200 MG | PO | TIDPC | 2 | RISENHOOVER, FNP, SUE |

### Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 06-13-2007 1223 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>C&S  today  done | RISENHOOVER, FNP, SUE |
| 06-13-2007 1223 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>repeat in 14 days | RISENHOOVER, FNP, SUE |
| 06-13-2007 1224 | X-RAY<br>US right kidney | RISENHOOVER, FNP, SUE |

### Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 06-13-2007 1224 | 99999 | REFER US RT KIDNEY | NA | | RISENHOOVER, FNP, SUE |
| 06-13-2007 1224 | 99999 | RTC 7 DAYS F/U RT KIDNEY | NA | | RISENHOOVER, FNP, SUE |
| 06-13-2007 1225 | 99999 | PLEASE NOTIFY PT RE:PYRI | NA | | RISENHOOVER, FNP, SUE |

### Noted

**Noted Dt/Tm:** 06-13-2007 1259

**Noted By:** WILSON, MTA, AMANDA

---

Confidential client information
See W & I Code, Sections 4514 and 5328

**CDC #:** P97170

**Name(L,F,M,S):** DAVIS, SHANE CLAY



## PHYSICIAN'S ORDERS

EXHIBIT - 13

PELICAN BAY STATE PRISON
INMATE/PAROLEE
SECURITY HOUSING UNIT
APPEAL FORM UNIT D-3
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | IA-18-2007-00845 | 8/10 |
| 2. | | 2. | Think he should have been sent |

pain meds for Kidney

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Davis, Shane | P-9770 | S.H.U. | D-3-116L |

A. Describe Problem: On or about 5-2-07 I seen F.N.P.S. Risenhoover about a sharp pain I was having on the right side of my body in the kidney area. I explained to her that I have a history of kidney stones and that I thought this pain could be a stone. A urine and blood test was taken. On my follow up visit F.N.P.S. Risenhoover told me that everything is fine and just drink water. I asked about antibiotics and was told to just drink water. There was no mention of Renal Urological Disorder. On the morning of 6-13-07 at approximately 3:30 am I awoke with a sharp piercing pain to my kidney and abdominal area.

If you need more space, attach one additional sheet.

B. Action Requested: That I be scheduled to be seen by a urologist. And treated for my medical condition with ultra sound for my Renal Urological Disorder. That I be compensated for pain and suffering because F.N.P.S. Risenhoover's neglect. And transferred to a prison where I can receive proper medical attention.

Inmate/Parolee Signature: _Shane Caley Davis_     Date Submitted: 6-17-07

C. INFORMAL LEVEL (Date Received: 06/18/07)

Staff Response: ① YOU ARE & HAVE BEEN SCHEDULED ALL ALONG FOR A X-RAY/U.S. OF YOUR KIDNEY. THE RESULTS OF THIS IS A PRE-REQUISITE BEFORE ANY CONSIDERATION OF SEEING THE UROLOGIST. UNTIL THOSE RESULTS ARE TO HAND, THIS ASPECT OF 602 IS DENIED. ② AS F.N.P. RISENHOOVER DID WHAT WAS MEDICALLY INDICATED, THUS NO NEGLIGENCE - DENIED. ③ TRANSFER IS UP TO CUSTO

Staff Signature: _Flowers R.N. (J. FLOWERS)_     Date Returned to Inmate: 06/18/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

as of 6-19-07 I still have not been to have an X-Ray/U.S. and am in extreme pain. My first visit to F.N.P.S. Risenhoover was on or about 5-2-07 complaining of kidney pain. I was only prescribed medication on 6-13-07 after I was taken to the Facility clinic at 4:30 am (on or about) with extreme pain.

Signature: _Shane Caley Davis_  P-9770     Date Submitted: 6-19-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

1st  JUN 2 0 2007     2nd  JUL 3 0 2007

if I needed to crunch e real bad, but before I could get out of my bed the pain in my side and abdomen intensified and became very excruciating. Within the next 3 minutes I was laying on the floor in a fetal position clutching at my right side due to the overwhelming air. Next I became very sick and nauseous and began vomiting into the toilet. This lasted for a few minutes with continued wretching and chills. After the wretching subsided I got up off of the floor and tried to lay flat on my bed but that made the pain worse in my kidney. At this time I was confused about what was happening and thought I could be suffering from a kidney stone. With the pain so intense I let the floor officer C/o Young know that I had a medical emergency and needed to see the M.T.A. I adviced C/o Young that I woke up around 3:30 AM with a serious pain in my kidney and stomach and that I had been puking and could barely move. C/o Young asked if I was okay and said he would call the M.T.A. after he finished doing count.

Approximately 5 minutes later I began vomiting again and the pain got worse. By this time I had woken the rest of the inmates in my pod and one proceeded to call the 1-3 tower officer that "the man in cell [illegible] is sick and he is sick". I was racked by so much pain that I [illegible] on the floor until the M.T.A arrived. I was led out of my cell and examined by the M.T.A in the [illegible]. I was then escorted to a vehicle and transported to the facility clinic. After my vital signs were taken the doctor asked me if I was allergic to anything or if I was on any medication. I said no. I then explained to the doctor what had happened and how I was feeling. I told him that I had been to see N.P. S Rosenhoover about 4 weeks ago about a continuing pain in my kidney and that I thought I could have kidney stones. I then adviced him of my recent urine/blood tests and its results. He then stated to me he already had them right there and was reading them prior to my arrival. He then told me I have (Renal Urological Disorder). He then explained to me what it is and how crystals build up around the Renal arteries leading to the kidneys. This causes blockage to the kidneys and could cause severe kidney damage.

He then stated he already knew I was diagnosed with Renal Urological Disorder because it's on my toxecology report. He then stated that he was surprised I was not given any pain medication already and that S N.P. S. Rosenhoover should of had these available to me weeks ago. I told him "no" I asked S N.P. S. Rosenhoover about medication and treatment and she just told me to drink water. At this time I asked the doctor to please repeat the name of this disorder and he showed it to me on line toxecology report. I then asked him how this should have been treated and he stated with "Pain Management and ultrasound waves to break up the crystals". He also said that the prison facility does not have the equipment to do this procedure, I need to go to an outside facility. He then said he would put me on the morning (6-13-07) doctor line to see S N.P. S. Rosenhoover about obtaining pain medication and treatment for this life threatening disorder. I was then returned to my

EXHIBIT - 14

# NOTE: SEND CO. ⸍ OF PHYSICIAN'S ORDER FᴗR MEDICATION
## TO PHARMACY AFTER EACH ORDER IS SIGNED.

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 06-20-2007 1128 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>in 14 days from today per RN flowers | RISENHOOVER, FNP, SUE |

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 06-20-2007 1113 | 0 | 78 | 20 | 130/80 | NICHOLS, LVN, JEFF |

## Noted

Noted Dt/Tm: 06-20-2007 1232          Noted By: WILSON, MTA, AMANDA

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 06-13-2007 1206 | 97 | 73 | 14 | 132/82 | NICHOLS, LVN, JEFF |

## Noted

Noted Dt/Tm: 06-13-2007 1259          Noted By: WILSON, MTA, AMANDA

Confidential client information

See W & I Code, Sections 4514 and 5328

## PHYSICIAN'S ORDERS

CDC #: P97170

Name(L,F,M,S): DAVIS, SHANE CLAY



Quest Diagnostics Incorporated

PATIENT INFORMATION
**DAVIS,P97170**

REPORT STATUS  **Final**

DOB: 09/08/1970   Age: 36
GENDER: M

ORDERING PHYSICIAN
**RISENHOOVER,SUE**

CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

CLIENT INFORMATION

SPECIMEN INFORMATION
SPECIMEN:     EL2342580
REQUISITION: 41077100099827
LAB REF NO:  D3-116

ID: P97170

COLLECTED:   06/20/2007    09:30
RECEIVED:    06/21/2007    00:55
REPORTED:    06/21/2007    06:36

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| URINALYSIS, MACRO W/REFLEX TO MICRO | | | | SC |
| SPECIFIC GRAVITY | 1.025 | | 1.001-1.035 | |
| PH | 6.0 | | 5.0-8.0 | |
| URINE-COLOR | | ORANGE | YELLOW | |
| APPEARANCE | CLEAR | | CLEAR | |
| WBC ESTERASE | NEGATIVE | | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | NEGATIVE | | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | | TRACE | NEGATIVE | |
| HEMOGLOBIN | NEGATIVE | | NEGATIVE | |

MICROSCOPIC EXAMINATION NOT INDICATED BASED ON ESTABLISHED PARAMETERS.

--------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    Quest Diagnostics 3714 Northgate Boulevard Sacramento CA  95834 Laboratory Director: Gerald E. Simon, M.D.



EXHIBIT - 15

NAME: DAVIS    NUMBER P97170    HOUSING D 3-916L    PBSP-LAB-001

**PELICAN BAY STATE PRISON**        **HEALTH CARE SERVICES UNIT**

**NOTIFICATION TO PATIENT OF LABORATORY TEST RESULTS**    TEST DATES: 7·02·07

**TYPE OF TEST:**    **BASIC BLOOD TESTS**    **HEPATITIS SCREEN**    (X-RAY)    **EKG**
(circle test type)    **OTHER:**    US Right Kidney

**YOUR TEST RESULTS WERE EVALUATED BY A PHYSICIAN AS FOLLOWS:**

☐  Your test result is essentially within normal limits. No physician follow-up is required.

☒  Your test result remains unchanged an will be reviewed with you at your next Chronic Care Appointment.

☐  Your test result is not within normal limits. You will be scheduled to discuss the results with a physician.

☐  Your test result is not within normal limits. Further studies are required and have been scheduled for you. You

will receive further information on this study at a later date.

PHYSICIAN REMARKS

_____
_____
_____
_____
_____
_____
_____

1.    HEALTH RECORD COPY

2.    PATIENT COPY                    Physician & Surgeon

3.    PHYSICIAN COPY                  1420    7/9/07
                                      Date &Time

**CONFIDENTIAL**

NAME:                    **NUMBER**            **HOUSING**        **PBSP-LAB-001**

*EXHIBIT -16*

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

**62331**

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:   MEDICAL ☒   PSYCHIATRY ☐   MENTAL HEALTH ☐   DENTAL ☐   PHARMACY ☐

NAME: Davis, Shane          CDC #: P-97170          HOUSING: D-3-116

PHARMACY REFILL #          *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

I am in severe pain in my urethra and stomach. I believe that a kidney stone is lodged in my urethra and I need emergency visit. Im having trouble urinating.

PATIENT'S SIGNATURE: Shane Davis          DATE: 7-5-07

| PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA |
|---|

Date & Time Received:                                    Received by:

Reviewed by RN/RDA, Date:          Time:          Signature:          Triage Designation:

**S:**

**O:**     **T:**     **P:**     **R:**     **BP:**     **WEIGHT:**

**A:**

**P:**

Signature/Date/Time:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☐ (within 14 calendar days) |
|---|---|---|---|

REFERRED TO PCP:                    DATE OF APPOINTMENT:

Print/Stamp Name          Signature/Title          Date & Time Completed

### COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☐ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

DISTRIBUTION:
ORIGINAL-Unit Health Record          YELLOW - Pharmacy          PINK - Inmate Trust          GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

EXHIBIT-17

# NOTE: SEND CC. Y OF PHYSICIAN'S ORDER . R MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.

## Plan

Plan Dt/Tm: 07-17-2007 0833                    Provider: RISENHOOVER, FNP, SUE

A: 1. 602

1. review mpims
2. review 602 w/pt
3. reveiw consult w/DR Sayre 7/10/07
4. review renal US completed  7/2/07
5. review UA completed 7/3/07 wnl, 6/20/07 ua orange, ketones rx pyridium
6. pt states "I don't want to turn over the stone it is part of my evidence for
   my case"
7. rtc 14 dys f/u ? renal stone  increase water avoid caffeine/strenuous exerc
   notify rn/lvn prob/conc

## Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 07-17-2007 0833 | 99999 | RTC 14 DYS F/U ? RENAL ST | NA | | RISENHOOVER, FNP, SUE |

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 07-17-2007 0821 | 0 | 118 | 16 | 128/84 | WILSON, MTA, AMANDA |

## Noted

Noted Dt/Tm: 07-17-2007 0930                    Noted By: NICHOLS, LVN, JEFF

Confidential client information
See  W & I Code, Sections 4514 and 5328

## PHYSICIAN'S ORDERS

CDC #: P97170
Name(L,F,M,S): DAVIS, SHANE CLAY

CDC 7221
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS                    Page 1 of 1

EXHIBIT -18

**FIRST LEVEL SUPPLEMENTAL PAGE**

First Level Reviewer's Response

**. RE:** PELICAN BAY STATE PRISON
Appeal Log #: PBSP-IA-18-2007-00845
Inmate Name: DAVIS, P97170

**APPEAL DECISION:** PARTIALLY GRANTED.

**APPEAL ISSUE:** You filed a CDC 602 on June 17, 2007, requesting 1) that you be scheduled to see a urologist with ultrasound for your kidney disorder; 2) compensation for pain and suffering and, 3) transfer to another prison.

**FINDINGS:** Your appeal with the attachments and your requested action has received careful consideration. Cynthia Gorospe, Staff Services Analyst, conducted the First Level Appeal Review on July 19, 2007. Your informal level appeal was answered by J. Flowers, RN on June 18, 2007. He stated that "1) You are and have been scheduled all along for x-rays/U.S. of your kidney. The results of this is a pre-requisite before any consideration of seeing the urologist. Until those results are to hand(?), this aspect of 602 is denied; 2) As FNP Risenhoover did what was medically indicated, thus no negligence – denied; 3) Transfer is up to custody." On June 19, 2007, you submitted your appeal at the formal level stating that as of that date you have not had x-rays or an ultrasound and are in extreme pain. You also state FNP Risenhoover saw you on May 2, 2007 and you were only prescribed medication on June 13, 2007, after you were taken to the clinic in extreme pain.

You were interviewed by S. Risenhoover, FNP on July 17, 2007. She states you told her you had an ultrasound two weeks ago on July 5, 2007, and explained your kidneys were hurting and it felt like something was in your urethra with urination every 5 minutes and that you passed two stones. You state you have one of the stones in your house, but you did not show it to FNP Risenhoover. You state you had pain for two days, but your kidneys have quit hurting and there is no problem with urination currently. FNP Risenhoover reviewed your electronic medical record and consulted with Dr. Sayre regarding your case on July 10, 2007. A renal ultrasound was performed on July 2, 2007 and urinalysis was completed on July 3, 2007. The ultrasound was performed by Philip Grimm, M.D. His impression was, "There is thought to be at least a single renal cyst involving both kidneys. Neither kidney has solid masses. Neither kidney has obstructive changes. Renal calculi are not recognized, but small stone could not be excluded." You indicated to FNP Risenhoover that you didn't want to give her the stone because it is part of the evidence for your case. Stones can be tested to determine if it is actually a kidney stone. You are to return to the clinic in 14 days to follow-up the questionable kidney stone, increase your water intake and avoid caffeine and strenuous exercises. You are to notify the RN or LVN with any problems or concerns. Your request for compensation is beyond the scope of the appeals process and is denied. Your request for transfer is a custody issue and a determination cannot be made in this venue.

**DETERMINATION OF ISSUE:** A thorough review of your request presented in this complaint has been completed. Based on this review, the action requested to resolve the appeal is PARTIALLY GRANTED.

C. GOROSPE
Staff Services Analyst

7/19/07
Date

M. SAYRE, M.D.
Chief Medical Officer

7/23/07
Date

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-3

EXHIBIT -19

# NOTE: SEND COP . OF PHYSICIAN'S ORDER F. R MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.

## Plan

Plan Dt/Tm: 07-31-2007 1012                    Provider: RISENHOOVER, FNP, SUE

A: 1. f/u kidney stone ?
   2. prostatitis
   3. rt epididymitis
1. review mpims
2. sm. clear plastic bag with small stone wrapped up in white paper , paper
     unwrapped from around stone  and placed back into clear plastic bag pt
states   - "yeah that is it, the bigger stone I could not get"
3. stone sent to pathology for identification
4. ua  dip today wnl  sent out for ua c&s
5. pt denies drug allergies
6. doxycycline 100mg po bid x 30 dys
7. review renal US completed 7/2/07
8. rtc 30 dys f/u prostatitis, epididymitis
9. increase water, avoid caffeine/etch avoid strenuous exerc notify rn/lvn
 prob/conc via 7362
10. pt tx w/septra ds x 7 dys started on 6/13/07

## Medications

| Start Dt/Tm | Medication | Strength | Rte | Freq | Duration | Provider |
|---|---|---|---|---|---|---|
| 07-31-2007 1009 | DOXYCYCLINE 100MG TABLET | 100 MG | PO | BID | 30 | RISENHOOVER, FNP, SUE |

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 07-31-2007 1010 | OTHER<br>stone sent to pathology for identification | RISENHOOVER, FNP, SUE |
| 07-31-2007 1010 | URINALYSIS, COMPLETE W/MICROSCOPIC<br>c&s if indicated | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 07-31-2007 1010 | 99999 | RTC 30 DYS F/U PROSTATITIS | NA | | RISENHOOVER, FNP, SUE |

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 07-31-2007 0950 | 97 | 95 | 16 | 122/84 | WILSON, MTA, AMANDA |

## Noted

Noted Dt/Tm: 07-31-2007 1032                    Noted By: WILSON, MTA, AMANDA

Confidential client information

See  W & I Code, Sections 4514 and 5328

CDC #: P97170

Name(L,F,M,S): DAVIS, SHANE CLAY

COPY

## PHYSICIAN'S ORDERS

EXHIBIT-20

Quest Diagnostics Incorporated

DAVIS,P97170

Final

DOB: 09/08/1970   Age: 36
GENDER: M

RISENHOOVER,SUE

4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

SPECIMEN:      EL2518899
REQUISITION: 4107710010C389
LAB REF NO:   D3-116

ID: P97170

COLLECTED:  07/31/2007    10:00
RECEIVED:   08/01/2007    01:58
REPORTED:   08/08/2007    11:03

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| STONE ANALYSIS COMPOSITION | | SEE BELOW | | NI |
| | | Calcium Oxalate Monohydrate (Whewellite)   80 | | |
| | | Calcium Oxalate Dihydrate (Weddellite)     20% | | |
| NIDUS | | ABSENT | | |
| WEIGHT | | 0.0163 | g | |

Supplemental report delivered separately unless test is cancelled or no picture is available to report.

-----------------------------------------------------------------------------------------------

Performing Laboratory Information:

NI

SC



NAME: Davis    NUMBER P 97170    HOUSING D3-116    PBSP-LAB-001

**PELICAN BAY STATE PRISON**         **HEALTH CARE SERVICES UNIT**

**NOTIFICATION TO PATIENT OF LABORATORY TEST RESULTS**    TEST DATES: 7/31/2007

**TYPE OF TEST:**      BASIC BLOOD TESTS      HEPATITIS SCREEN      **X-RAY**      **EKG**
(circle test type)      (OTHER:) Stone Analysis

**YOUR TEST RESULTS WERE EVALUATED BY A PHYSICIAN AS FOLLOWS:**

☐ Your test result is essentially within normal limits. No physician follow-up is required.

☒ Your test result remains unchanged an will be reviewed with you at your next Chronic Care Appointment.

☐ Your test result is not within normal limits. You will be scheduled to discuss the results with a physician.

☐ Your test result is not within normal limits. Further studies are required and have been scheduled for you. You

will receive further information on this study at a later date.

PHYSICIAN REMARKS _____

_____

_____

_____

_____

_____

_____

1.    HEALTH RECORD COPY

2.    PATIENT COPY                                    Physician & Surgeon

3.    PHYSICIAN COPY                              8/14/07 (420)
                                                        Date &Time

**CONFIDENTIAL**

NAME :                    **NUMBER**              **HOUSING**              **PBSP-LAB-001**

*EXHIBIT – 21*

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

67496

**PART I: TO BE COMPLETED BY PATIENT**

PELICAN BAY STATE PRISON
SECURITY HOUSING

If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty

REQUEST FOR:  MEDICAL ☒  PSYCHIATRY ☐  MENTAL HEALTH ☐  DENTAL ☐  PHARMACY ☐

NAME: Davis     CDC #: P-9171_     HOUSING: ___

PHARMACY REFILL # ___                    *Pharmacy, place labels on back of form*

THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM)

___

PATIENT'S SIGNATURE: ___     DATE: ___

**PART II:  TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA**

Date & Time Received: 08/02/07 @ 0730     Received by: ___

Reviewed by RN/RDA, Date: 08/02/07 Time: 1047  Signature: ___  Triage Designation:

| S: | L: | P: TB. Test. |
|----|----|----|
| A: | E: | A: |
| M: | | |
| P: | | N: |

O:     T:     P:     R:     BP:     WEIGHT:

A:

P:

Signature/Date/Time: ___ 08/02/07 @ 1205

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☑ (within 14 calendar days) |
|----|----|----|----|

REFERRED TO PCP: YES          DATE OF APPOINTMENT: ___

J. FLOWERS     ___, RN.     08/02/07 @ 1205
Print/Stamp Name     Signature/Title     Date & Time Completed

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☐ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☑ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

**DISTRIBUTION:**
ORIGINAL-Unit Health Record     YELLOW - Pharmacy     PINK - Inmate Trust     GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|----|----|----|----|

EXHIBIT - 22

H(+).

SECOND LEVEL APPEAL RESPONSE

RE:    PELICAN BAY STATE PRISON
       Appeal Log: IA-18-2007-00845
       Inmate: DAVIS P97170

PELICAN BAY STATE PRISON
SECURITY
UNIT D-3

Maureen McLean, FNP, Health Care Manager at Pelican Bay State Prison (PBSP) reviewed this matter. Joseph Kravitz, Correctional Counselor II, conducted the Appeal at the Second Level of Review on August 2, 2007.

**APPEAL ISSUE:** Your appeal with the attachments and your requested action has received careful consideration. Cynthia Gorospe, Staff Services Analyst, conducted the First Level Appeal Review on July 19, 2007. Your informal level appeal was answered by J. Flowers, RN on June 18, 2007. He stated that "1) you are and have been scheduled all along for x-rays/ultra sound of your kidney. These results of are a pre-requisite before any consideration of seeing the urologist. Until those results are to hand (?), this aspect of 602 is denied; 2) Risenhoover did what was medically indicated, thus no negligence – denied; 3) transfer is up to custody."

On June 19, 2007, you submitted your appeal at the formal level stating that as of that date you have not had x-rays or an ultrasound and are in extreme pain. You also state FNP Risenhoover saw you on May 2, 2007 and you were only prescribed medication on June 13, 2007, after you were taken to the clinic in extreme pain.

You were interviewed by S. Risenhoover, FNP on July 17, 2007. She states you told her you had an ultrasound two weeks ago on July 5, 2007, and explained your kidneys were hurting and it felt like something was in your urethra with urination every 5 minutes and that you passed two stones. You state you have one of the stones in your house, but you did not show it to FNP Risenhoover. You state you had pain for two days, but your kidneys have quit hurting and there is no problem with urination currently. FNP Risenhoover reviewed your electronic medical record and consulted with Dr. Sayre regarding your case on July 10, 2007. A renal ultrasound was performed on July 2, 2007 and urinalysis was completed on July 3, 2007. Philip Grimm, M.D, performed the ultrasound. His impression was, "There is thought to be at least a single renal cyst involving both kidneys. Neither kidney has solid masses. Neither kidney has obstructive changes. Renal calculi are not recognized, but small stone could not be excluded." You stated to FNP Risenhoover that you didn't want to give her the stone because it is part of the evidence for your case. Stones can be tested to determine if it is actually a kidney stone. You are to return to the clinic in 14 days to follow-up the questionable kidney stone, increase your water intake and avoid caffeine and strenuous exercises. You are to notify the RN or LVN with any problems or concerns. Your request for compensation is beyond the scope of the appeals process and is denied. Your request for transfer is a custody issue and a determination cannot be made in this venue.

**FINDINGS:** A review of your appeal, including staff's efforts to resolve the appeal at the informal level and at the first formal level, together with your responses, has been completed. All submitted documentation and supporting arguments of the appellant have been considered.

I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. J. Kravitz, CC II, reviewed your appeal and responses on August 2, 2007. You requested a second level review of this appeal on July 29, 2007. You continue to claim that S. Risenhoover's negligence caused you undue pain and suffering. S. Risenhoover FNP saw you on July 31, 2007. You brought the 'stone' in a small clear plastic bag and gave it to your primary care provider. The stone was sent to the pathology lab for identification. You urine was tested in the clinic and was reported as within normal limits. A urine sample was sent to the laboratory for further culture and sensitivity testing. You were started on doxycycline 100 mg by mouth twice a day for thirty days. S. Risenhoover reviewed the results of your renal ultrasound with you. You are to return to the clinic in 30 days for follow up for prostatitis, epididymitis. You were advised to increase your water intake and avoid caffeine and alcohol (pruno). A review of your medical file shows you have been receiving appropriate care for your urological disorder. It was most helpful for you to provide the stone to S. Risenhoover. You are advised to

IA-18-2007-00845
DAVIS P97170
Page 2

follow the recommendations of your primary care provider and drink extra water and take all medications as prescribed. If prior to your scheduled follow up appointment you have any increased pain or discomfort you are advised to notify your health care team via the CDC 7362 process. Your appeal is partially granted in that you are receiving appropriate care for your medical condition and you received a renal ultrasound. Your request for compensation for your alleged pain and suffering is beyond the scope of the inmate appeals process. Additionally, your request for medical transfer is denied as your medical needs are being met here at Pelican Bay State Prison. This concludes the review of this appeal at the second level of review.

**DECISION:** The Appeal is partially granted.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-3

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

JOSEPH KRAVITZ                8-2-07
Correctional Counselor II    Date

MAUREEN MCLEAN, FNP    8/3/07
Health Care Manager        Date

# EXHIBIT -23

**NOTE: SEND COF   OF PHYSICIAN'S ORDER F   . MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

## Plan

Plan Dt/Tm: 08-14-2007 1010                    Provider: RISENHOOVER, FNP, SUE

A: 1. f/u prostatitis
    2. reviwe lab 8/07
    3. c/o left kidney sharp pain 8/13/07
1. review mpims
2. pt started on doxycycline 7/31/07
3. review renal us 7/2/07
4. urine dip today wnl no bld present lab not avail will do UA 8/15/07
5. review lab 8/07 w/pt stone analysis
6. review ua 7/31/07  tr ketones, few mucus  dip ua wnl
7.review ua 7/9/07 wnl
8. refer to medical committee  urology cons (UM) filled out
9. cmp
10. avoid strenuous exerc, increase water avoid caffeine/etoh  pt verbalized
understanding of recom
11. rtc 30 dys f/u referral

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 08-14-2007 1015 | COMPREHENSIVE METABOLIC PANEL | RISENHOOVER, FNP, SUE |
| 08-14-2007 1021 | URINALYSIS<br>do 8-15-07 UA | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 08-14-2007 1015 | 99999 | REFER MED COMM UROLOG | NA | | RISENHOOVER, FNP, SUE |
| 08-14-2007 1015 | 99999 | RTC 30 DYS F/U REFERRAL | NA | | RISENHOOVER, FNP, SUE |

## Vitals

| Vital Dt/Tm | Temp (F) | Pulse | Respiration | BP | Provider |
|---|---|---|---|---|---|
| 08-14-2007 0934 | 95.7 | 88 | 16 | 110/78 | WILSON, MTA, AMANDA |

## Noted

Noted Dt/Tm: 08-14-2007 1021                    Noted By: WILSON, MTA, AMANDA

Confidential client information
See  W & I Code, Sections 4514 and 5328

CDC #: P97170
Name(L,F,M,S) DAVIS, SHANE CLAY
COPY

**PHYSICIAN'S ORDERS**

*EXHIBIT - 24*

Quest Diagnostics Incorporated

PATIENT INFORMATION
**DAVIS, P97170**

REPORT STATUS  **Final**

DOB: 09/08/1970   Age: 36
GENDER: M

ORDERING PHYSICIAN
RISENHOOVER, SUE

CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

CLIENT INFORMATION
SPECIMEN:    EL2584624
REQUISITION: 41077100103239
LAB REF NO:  D3-116

ID: P97170

COLLECTED:  08/15/2007    08:47
RECEIVED:   08/16/2007    01:00
REPORTED:   08/16/2007    05:06

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ELECTROLYTES WITHOUT CO2 | | | | SC |
| SODIUM, SERUM | 144 | | 135-146 mmol/L | |
| POTASSIUM, SERUM | 3.9 | | 3.5-5.3 mmol/L | |
| CHLORIDE, SERUM | 106 | | 98-110 mmol/L | |
| CHEMISTRIES | | | | SC |
| UREA NITROGEN,BLOOD (BUN) | 13 | | 7-25 mg/dL | |
| CREATININE, SERUM | 1.0 | | 0.5-1.3 mg/dL | |
| CALCIUM, SERUM | 9.9 | | 8.6-10.2 mg/dL | |
| PHOSPHORUS, SERUM | | 1.7 L | 2.5-4.5 mg/dL | |
| URIC ACID, SERUM | 5.9 | | 4.0-8.0 mg/dL | |
| TOTAL PROTEIN | 7.3 | | 6.2-8.3 g/dL | |
| ALBUMIN | 4.8 | | 3.6-5.1 g/dL | |
| GLOBULIN, TOTAL | 2.5 | | 2.1-3.7 g/dL | |
| A/G RATIO | 1.9 | | 1.0-2.1 ratio | |
| eGFR | >60 | | SEE BELOW | |

REFERENCE RANGE:    > = 60 ml/min/1.73m2
IF PATIENT IS AFRICAN AMERICAN, MULTIPLY REPORTED RESULT BY 1.21.

| | | | | |
|---|---|---|---|---|
| GLUCOSE | | 57 L | 65-99 mg/dL | SC |
| GGT | 24 | | 3-90 U/L | SC |
| ENZYMES AND BILIRUBIN | | | | SC |
| LACTATE DEHYDROGENASE (LDH) | 231 | | 100-250 U/L | |
| AST (SGOT) | | 41 H | 10-40 U/L | |
| BILIRUBIN, TOTAL | | 1.8 H | 0.2-1.2 mg/dL | |
| ALT (SGPT) | 38 | | 9-60 U/L | |
| ALKALINE PHOSPHATASE | 62 | | 40-115 U/L | |
| CHOLESTEROL, TOTAL | | 122 L | 125-200 mg/dL | SC |
| TRIGLYCERIDES | 95 | | <150 mg/dL | SC |
| IRON, TOTAL | | 284 H | 45-170 mcg/dL | SC |

---

**Performing Laboratory Information:**

SC    Quest Diagnostics Inc. Nichols Institute 33608 Ortega Highway, San Juan Capistrano, CA  Medical Laboratory Director: Robert E. Casey, M.D.

Quest Diagnostics Incorporated

DAVIS, P97170

Final

DOB: 09/08/1970   Age: 36
GENDER: M

RISENHOOVER, SUE

4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

SPECIMEN:   EL2584052
REQUISITION: 41077100103203
LAB REF NO:  D3-116

ID: P97170

COLLECTED:   08/15/2007   07:00
RECEIVED:    08/16/2007   00:36
REPORTED:    08/16/2007   07:41

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| URINALYSIS, MACRO W/REFLEX TO MICRO | | | | SC |
| SPECIFIC GRAVITY | 1.021 | | 1.001-1.035 | |
| PH | 6.0 | | 5.0-8.0 | |
| URINE-COLOR | AMBER | | YELLOW | |
| APPEARANCE | CLEAR | | CLEAR | |
| WBC ESTERASE | NEGATIVE | | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | NEGATIVE | | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | NEGATIVE | | NEGATIVE | |
| HEMOGLOBIN | NEGATIVE | | NEGATIVE | |

MICROSCOPIC EXAMINATION NOT INDICATED BASED ON ESTABLISHED PARAMETERS.

---------------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    Quest Diagnostics Nichols Institute of Sacramento for Pelican Bay State Prison Clinical Laboratory, Crescent City, Calif.



EXHIBIT - 25

Quest Diagnostics Incorporated

PATIENT OR NAME: **DAVIS, P97170**

REPORT STATUS: **Final**

ORDERING PHYSICIAN:
**RISENHOOVER, SUE**

CLIENT NUMBER: 
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

DOB: 09/08/1970   Age: 36
GENDER: M

ID: P97170

SPECIMEN:     EL2616011
REQUISITION: 41077100103685
LAB REF NO:   D3-116

| | |
|---|---|
| COLLECTED: | 08/22/2007   08:32 |
| RECEIVED: | 08/23/2007   00:46 |
| REPORTED: | 08/23/2007   05:03 |

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| HEPATIC FUNCTION PANEL | | | | SC |
| TOTAL PROTEIN | 7.1 | | 6.2-8.3 g/dL | |
| ALBUMIN | 4.7 | | 3.6-5.1 g/dL | |
| AST (SGOT) | | 42 H | 10-40 U/L | |
| BILIRUBIN, TOTAL | | 1.6 H | 0.2-1.2 mg/dL | |
| BILIRUBIN, DIRECT | | 0.4 H | < OR = 0.2 mg/dL | |
| ALT (SGPT) | 34 | | 9-60 U/L | |
| ALKALINE PHOSPHATASE | 63 | | 40-115 U/L | |

----------------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    Quest Diagnostics 3714 Northgate Boulevard Sacramento CA  95834 Laboratory Director: Gerald E. Slack, M.D.



EXHIBIT - 26

# HEALTH CARE SERVICES REQUEST FORM (PBSP 7362)

**55229**

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| If you believe this to be an urgent/emergent health care need, contact the correctional officer on duty |
| REQUEST FOR:   MEDICAL ☒   PSYCHIATRY ☐   MENTAL HEALTH ☐   DENTAL ☐   PHARMACY ☐ |
| NAME: Davis                    CDC #: V-97170           HOUSING: D 3-116 |
| PHARMACY REFILL #                          *Pharmacy, place labels on back of form* |
| THE REASON YOU WANT HEALTH CARE. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM) |

(handwritten, illegible)

| PATIENT'S SIGNATURE: _____ | DATE: 9-7-07 |
|---|---|

| PART II: TO BE COMPLETED BY THE TRIAGE RN/RDA/MTA | |
|---|---|
| Date & Time Received: 09/10/07 @ 0915 | Received by: _____ |
| Reviewed by RN/RDA, Date: 09/11/07 Time: 1155  Signature: _____ | Triage Designation: |

| S: | L: B 100/62 | P: _____ |
|---|---|---|
| A: | E: | A: |
| M: | V: | 1: 4-5/10 |
| P: | | N: 0 |

| O: | T: | P: | R: | BP: | WEIGHT: |
|---|---|---|---|---|---|

(handwritten notes, illegible)

**A:**

**P:**  Urine yellow, Toder, Clair, Sud  ABX  with Tab
       (illegible) OK  — ALREADY SCHEDULED

Signature/Date/Time: _____ 09/11/07 @ 1510

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (immediately) | URGENT ☐ (within 24 hours) | ROUTINE ☒ (within 14 calendar days) |
|---|---|---|---|
| REFERRED TO PCP: Yes | | DATE OF APPOINTMENT ████ | |

| J. Flowers | Flowers, R.N. | 09/11/07 |
|---|---|---|
| Print/Stamp Name | Signature/Title | Date & Time Completed |

## COPAYMENT INFORMATION – TO BE FILLED OUT BY DEPARTMENTAL STAFF

1. ☐ Visit was for an emergency
2. ☐ Visit was for diagnosis or treatment of a communicable disease condition (See Title 17, Chapter 4, Subchapter 1, Section 2500 CCR)
3. ☐ Visit was for mental health services
4. ☐ Visit was a follow-up requested by the clinician.
5. ☐ Visit was for State mandated evaluation or treatment (e.g., Annual TB tests)
6. ☐ Visit was for reception screening and evaluation only
7. ☐ Visit is NOT exempt from co-payment. Send PINK copy to Inmate Trust Office.

DISTRIBUTION:
ORIGINAL-Unit Health Record     YELLOW - Pharmacy     PINK - Inmate Trust     GOLDENROD – Inmate/Patient
PBSP 7362 (Rev. 7/03)

| Name: | CDC#: | Housing: | Institution: |
|---|---|---|---|

EXHIBIT -27

## NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
## TO PHARMACY AFTER EACH ORDER IS SIGNED.

## Plan

**Plan Dt/Tm:** 09-14-2007 1042                    **Provider:** RISENHOOVER, FNP, SUE

A: 1. f/u mar committee 8/14/07
   2. 7362 req reading glasses
   3. c/o recurring urinary discomfort
1. review mpims
2. urine dip wnl today  sent for ua C&S
3. review mar com recom w/pt 8/14/07
4. review lab w/pt 8/07 ast 42 alt 34 serum creat 1.0 ua wnl 5/06 hcv vl
detected denies liver bx denies avt
5. review ua 7/31/07 ketones/few mucus, stone analysis, 7/9/07 ua wnl 6/20/07
ua   orange   6/13/07 ua orange dip stick 3 + bld, c&s neg
6. review kidney us w/pt 7/2/07
7. refer to med  com (UM) filled out
8. rtc 180 dys hcv cc
9. rtc 30 dys f/u urine
10. ua c&s today done
11. lft w/next cc visit 180 dys
12. review Dr Cochrane cons 3/6/07

## Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 09-14-2007 1045 | URINALYSIS, COMPLETE W/MICROSCOPIC today | RISENHOOVER, FNP, SUE |
| 09-14-2007 1045 | LIVER FUNCTION 180 dys | RISENHOOVER, FNP, SUE |

## Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 09-14-2007 1046 | 99999 | RTC 180 DYS HCV CC | NA | | RISENHOOVER, FNP, SUE |
| 09-14-2007 1046 | 99999 | REFER MED COMMITTEE | NA | | RISENHOOVER, FNP, SUE |
| 09-14-2007 1142 | 99999 | RTC 30 DAY F/U URINE | NA | | WILSON, MTA, AMANDA |

## Noted

**Noted Dt/Tm:** 09-14-2007 1143                    **Noted By:** WILSON, MTA, AMANDA

COPY

Confidential client information
See  W & I Code, Sections 4514 and 5328

**CDC #:** P97170
**Name(L,F,M,S):** DAVIS, SHANE CLAY

## PHYSICIAN'S ORDERS

CDC 7221
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS                    Page 1 of 2

EXHIBIT- 28

DAVIS, P97170

████ ███ █████ **Final**

████ ██ ███ ██ ████
**RISENHOOVER, SUE**
██████ ████ ██ ███
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY, CA  95532

DOB: 09/08/1970   Age: 37
GENDER: M

ID: P97170

███ ████ ███ █████ ██
SPECIMEN:      EL2714415
REQUISITION: 41077100105119
LAB REF NO:  D3-116

COLLECTED:  09/14/2007    10:30
RECEIVED:   09/15/2007    00:36
REPORTED:   09/15/2007    06:34

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| URINALYSIS, COMPLETE W/MICROSCOPIC | | | | SC |
| SPECIFIC GRAVITY | 1.024 | | 1.001-1.035 | |
| PH | 6.0 | | 5.0-8.0 | |
| URINE-COLOR | AMBER | | YELLOW | |
| APPEARANCE | CLEAR | | CLEAR | |
| WBC ESTERASE | NEGATIVE | | NEGATIVE | |
| NITRITE | NEGATIVE | | NEGATIVE | |
| PROTEIN | NEGATIVE | | NEGATIVE | |
| GLUCOSE | NEGATIVE | | NEGATIVE | |
| BILIRUBIN | NEGATIVE | | NEGATIVE | |
| UROBILINOGEN | NORMAL | | NORMAL | |
| KETONES | NEGATIVE | | NEGATIVE | |
| HEMOGLOBIN | NEGATIVE | | NEGATIVE | |
| WBC/HPF | NONE SEEN | | 0-5/hpf | |
| RBC/HPF | NONE SEEN | | 0-3/hpf | |
| EPITHELIAL CELLS | NONE SEEN | | 0-5/hpf | |
| RENAL EPITHELIAL | NONE SEEN | | NONE SEEN | |
| BACTERIA | NONE SEEN | | NONE SEEN | |
| HYALINE CASTS | NONE SEEN | | NONE SEEN | |
| GRANULAR CASTS | NONE SEEN | | NONE SEEN | |
| YEAST | NONE SEEN | | NONE SEEN | |
| CRYSTALS | NONE SEEN | | NONE SEEN | |

The following criteria are utilized in determining whether a culture
is indicated for this urine specimen:

1. Positive leukocyte (WBC) esterase
2. Positive nitrite and 6 or more leukocytes per high power field
   (WBC/HPF).
3. 6 or more leukocytes per high power field (WBC/HPF).
4. Presence of bacteria and 6 or more leukocytes per high power field
   (WBC/HPF).

----------------------------------------------------------------------------------

**Performing Laboratory Information:**

SC    ████ ████ ██ ██ ██ ████ ████ ████ ██ ████ ████ █████████ ███ ██ ████ ████



EXHIBIT- 29

## Subjective

Entry Dt/Tm: 10-25-2007 1016        Entered By: MPIMSSER , RISENHOOVER, FNP

Updated Dt/Tm: 10-25-2007 1024      Updated By: MPIMSSER , RISENHOOVER, FNP

pt here f/u  urine 9/14/07 wnl
pt here f/u mar committee  9/14/07

states "since the last time here I c/o pain, the pain under the testicles is
gone away for the past 3 weeks, the complaint of constant urination and lack of
stream is fine now for the past 3 weeks, there is no pain in my kidneys now.
For the past 2 months there is a lump under the penis at the base swells up
there. The lump sometimes feels more swollen in the morning when wake
up, sometimes the testicle hurts on the left side."

## Objective

### Vitals

Vitals Dt/Tm: 10-25-2007 0917      Temp (°F): 97.2      Pulse: 106      Respiration: 18

Blood Pressure: 110/80      Wgt: 173   Hgt: 5'5 "      Provider: MOLINA, LVN , JAIME

Notes: 4/10 groin area

### Other

Name: f/u ua 9/14/07 wnl, f/u referral mar com 9/07 approved for urology

Provider: RISENHOOVER, FNP , SUE                          Other Dt/Tm: 10-25-2007 1024

Notes: v.s stable a&o nad color good w/d    pt shows posterior aspect of penis points
to the base of penis for area of lump felt in am and left side of testicle

PHYSICIAN'S PROGRESS NOTES

CDC 7230
STATE OF CALIFORNIA       DEPARTMENT OF CORRECTIONS

CDC #: P97170

Name(L,F,M,S): DAVIS, SHANE, CLAY

Page 1 of 3

## Assessment

### Medical Diagnosis

Code: 787          Description: GI DISORDER NOT GERD

Axis:          GAF:          Status: CURRENT          Provider: RISENHOOVER, FNP, SUE

Diagnosis Dt/Tm: 04-10-2007 0904          Resolve Dt/Tm: 00-00-0000 0000          Priority: 001

Notes: ruq discomfort resolved

Code: 573.1          Description: HEPATITIS C

Axis:          GAF:          Status: CURRENT          Provider: RISENHOOVER, FNP, SUE

Diagnosis Dt/Tm: 03-16-2007 0825          Resolve Dt/Tm: 00-00-0000 0000          Priority: 001

Notes:

Code: 593          Description: RENAL / UROLOGICAL DISORDER

Axis:          GAF:          Status: CURRENT          Provider: RISENHOOVER, FNP, SUE

Diagnosis Dt/Tm: 09-14-2007 1038          Resolve Dt/Tm: 00-00-0000 0000          Priority: 002

Notes: f/u mar com

**PHYSICIAN'S PROGRESS NOTES**

CDC 7230
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

CDC #: P97170
Name(L,F,M,S): DAVIS, SHANE, CLAY

Page 2 of 3

## Plan

| | | |
|---|---|---|
| Provider: RISENHOOVER, FNP , SUE | Plan Dt/Tm: 10-25-2007 1031 | Completed By: |
| Completed Dt/Tm: | Patient Education: N | Phone Order Status: NONE |
| Entry Dt/Tm: 10-25-2007 1026 | Entered By: MPIMSSER, RISENHOOVER, FNP | |

A: 1. f/u mar com 9/07
   2. f/u ua 9/07 wnl
   3. c/o lump base posterior aspect of penis and interm.left testicle
discomfort
   4. pain under testicle resolved x 3 wks  per pt
   5. frequent urination,lack of urine stream resolved x 3 wks   per pt

1. review mpims
2. review ua w/pt  completed 9/07 wnl  reveiw lab 8/07
3. reveiw mar com recom referral urology approved 10/1/07 w/pt
4. rtc 30 dys f/u referral
5. pt states "what are you going to do about the lump and the L testicle
 discomfort?"
6. discussed w/pt ua wnl 9/07, pt has been referred to urology for consult pt
    states "alright"  avoid strenuous exercises, avoid caffeine/etoh, increase
water
7. review renal us completed 7/07 w/impres:there is thought to be at least a
single renal cyst involving both kidneys,neither kidney has solid masses ,
neither kidney has obstructive changes, renal calculi are  not  recognized but
 a small stone could not be excluded.

## Order

### Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 10-25-2007 1031 | 99999 | RTC 30 DYS F/U REFERRAL | NA | | RISENHOOVER, FNP, SUE |

| | |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **CDC #:** P97170 |
| | **Name(L,F,M,S):** DAVIS, SHANE, CLAY |
| CDC 7230 | |
| STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS | |

*EXHIBIT 30*

BRIAN W. DORMAN, M.D., F.A.C.S.
JOHN J. ALBERTINI, M.D.
ROBIN L. ZAGONE, M.D., Ph.D.
2576 Renfrew Street
Eureka, CA 95501
707-445-3257

D3-116 L

NAME:   Davis, Shane   #P97170                    MR#:   26543.0

November 19, 2007

This is a new patient.  Patient seen in consultation from Pelican
Bay State Prison.

CHIEF COMPLAINT:    1.    Pain in the kidneys.
                    2.    Lump at the base of the penis.

HISTORY OF PRESENT ILLNESS:

The patient is a 37-year-old male who presents for initial
evaluation.  Patient states he has had some difficulties for almost
six months.  He does state that he had a first kidney stone when he
was approximately 17 years old.  He had a second kidney stone three
years later.  Approximately six months ago he began having some
pain in the flank area.  He states that it was more on the right
side than the left.  At one point, he actually woke up and was
having nausea and vomiting.  He did seek medical attention, but was
told to drink a large amount of fluids.  He states, at that point,
he never passed a stone.  More recently he has then been having
some discomfort in the perineal region.  He was also having some
increased urinary frequency.  Patient states that he ultimately
passed a stone.  Reportedly this was sent off for analysis,
although I do not have those results.  Patient states that his
urinary frequency is essentially back to baseline.  His only
residual complaint is that he is having some postvoid dribbling.
The other thing he has noticed is that he has felt a lump at the
left base of the penis.  He does not recall any trauma to this
area.  Specifically does not remember any bending or torsing of the
penis when it was erect.  However, he states now, especially if he
gets an erection, he will notice some curvature to the left side
and some swelling at the base.  His urinary stream is essentially
back to baseline at this point.  He states he still has some
intermittent discomfort in the perineal region.  He has not had any
blood in the urine.  He has not had any recent dysuria.  Patient
denies any previous urological surgeries.

PAST MEDICAL HISTORY:

Significant for history of nephrolithiasis, history of hepatitis C.

PAST SURGICAL HISTORY:

Status post appendectomy 1989.

COPY

PG. 1

BRIAN W. DORMAN, M.D., F.A.C.S.
JOHN J. ALBERTINI, M.D.
ROBIN L. ZAGONE, M.D., P.h.D.
2576 Renfrew Street
Eureka, CA 95501
707-445-3257

D3-116L

NAME:   Davis, Shane   #P97170                    MR#:   26543.0

November 19, 2007

CURRENT MEDICATIONS:

None.

ALLERGIES:

Patient has no known drug allergies.

SOCIAL HISTORY:

Denies current cigarette smoking.  States that he did smoke some in
the past, but not heavy smoking.  Denies current alcohol or drug
usage.

FAMILY HISTORY:

He states that his biological father died, although is not exactly
sure of the cause.  His mother is age 55, relatively healthy.  Does
have a brother who is also described as healthy.

REVIEW OF SYMPTOMS:

Patient is known to have a hepatitis-C, although he states he
currently is not sick from this.  He does not take any medications.
He denies any angina or palpitations.  Denies being short of
breath.  Denies any recent weight changes.  Denies any nausea or
vomiting.

PHYSICAL EXAM:

Well-developed, well-nourished male in no apparent distress.  He
was alert and oriented.   Vital signs:   He is 5 ft. 5 inches.
Weight 170 pounds.  Head:  Atraumatic, normocephalic.   Neck:
Relatively supple.  Heart:  Regular today without murmurs, rubs or
gallops.  Lungs:  Clear to auscultation and percussion.  Abdomen:
Relatively soft, flat, nondistended with active bowel sounds.   I
could not appreciate any abdominal masses or organomegaly.  He had
no true CVA tenderness today.  GU exam:  He is circumcised.   His
penis is without lesions or discharge.  Patient did have a not well
formed plaque at the left base of the penis.  I could not feel any
surrounding induration.   Testicles are both descended in his
scrotum and unremarkable.   GU  exam:    Otherwise  negative.
Extremities:  Without cyanosis, clubbing, or edema.  Urinalysis
today showed small amount of microscopic blood, otherwise negative.

PG. 2

R(3).

BRIAN W. DORMAN, M.D., F.A
JOHN J. ALBERTINI, M.D.
ROBIN L. ZAGONE, M.D., P.h.D.
2576 Renfrew Street
Eureka, CA 95501
707-445-3257

D3 - 116 L

NAME:  Davis, Shane  #P97170                    MR#:   26543.0

November 19, 2007


IMPRESSION:

1.  Nephrolithiasis.  I will ask to get a copy of his stone
analysis. Reportedly this was sent off recently.  Certainly if I
could  get  a  copy  of  this,  I  could  make  some  dietary
recommendations.  Patient states he is good about drinking 8-10
glasses of water a day.  I also talked to him about the need to
decrease his salt intake.  Patient has had several stone episodes.
I told him the only definitive way to rule out residual stones
would be to get a KUB and a noncontrasted CT scan of the abdomen
and pelvis.  Certainly if this was completely negative, then I
would only evaluate him on a symptomatic basis.  If he has multiple
stones, we could talk about this, and also talk about a metabolic
workup if indicated.

2.  Peyronie's disease.  I did give him a handout on this.  He
still states he has some pain in this area.  I told him early on
there can be an inflammatory component.  The standard treatment
would be colchicine 0.6 mg twice a day for two to three weeks.  I
would then check a CBC, and in his case, a hepatic panel.  If he
tolerated it well, I would treat him for a total of four to six
weeks.  Certainly colchicine can be contraindicated in severe
hepatic insufficiency.  Therefore, I would not start the colchicine
until it was okayed by his primary M.D.  Other recommendations for
patients with Peyronie's disease is vitamin E 400-800 mg a day.  I
would hold this for any bleeding.  Also calcium 1,000 mg a day;
zinc 50 mg a day; and to limit the vitamin C intake.  I have made
these recommendations as well.  We would then see how he does.  If
the problem stabilizes, then no further treatment would be
indicated.  Certainly if it does not, then he would be a candidate
for Potaba.  I would see the patient back in three to four months
to go over both his stone study as well as his response to the
above treatments for his Peyronie's disease.


John J. Albertini, M.D.
JJA:eab

cc:  Pelican Bay State Prison

PG. 3



**UROLOGY ASSOCIATES**
2576 Renfrew St., Eureka, CA 95501
Phone: 707-445-3257  Fax: 707-445-1027

☐ BRIAN W. DORMAN, M.D., F.A.C.S.  CA Lic. #G24506  DEA #AD7580360
☒ JOHN ALBERTINI, M.D., CA Lic. #G85282  DEA #BA4374144
☐ ROBIN ZAGONE, M.D., PhD., CA Lic. A87575  DEA #BZ8833421

TCH #VP 1783Reg

Patient's Name _Sharp Davis_ P-97170

Date _11/19/07_

Refill 0—1—2—3—4— (Circle only one)

Calcium 0.6 mg
Sig. — T Po Bid X 6 wks
Nid to u CBC & Ca
while on therapy

---

**UROLOGY ASSOCIATES**
2576 Renfrew St., Eureka, CA 95501
Phone: 707-445-3257  Fax: 707-445-1027

☐ BRIAN W. DORMAN, M.D., F.A.C.S.  CA Lic. #G24506  DEA #AD7580360
☒ JOHN ALBERTINI, M.D., CA Lic. #G85282  DEA #BA4374144
☐ ROBIN ZAGONE, M.D., PhD., CA Lic. A87575  DEA #BZ8833421

BATCH #VP 1783Reg

**Rx**

Patient's Name _Sharp Davis_ P-97170

Address

Date _11/19/07_

Refill 0—1—2—3—4— (Circle only one)

☐ Do not substitute

Vitamin E
400 mg twice a day.
Calcium 1000mg a day
Zinc 50 mg a day
Limit Vitamin C

☐ Do not substitute

EXHIBIT-31

H(6).

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   NOV 2 7 2007

In re:   Shane Davis, P97170
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0705270          Local Log No.: PBSP-07-00845

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner V. O'Shaughnessy. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that on or about May 2, 2007, he was seen by Family Nurse Practitioner (FNP) Risenhoover about a sharp pain he was having on the right side of his body in the kidney area. A urine and blood test was taken. On the follow-up visit, FNP Risenhoover reported that everything was fine and to just drink water. The appellant inquired about antibiotics and was told to just drink water. There was no mention of renal urological disorder. On the morning of June 13, 2007, the appellant awoke with a sharp piercing pain in his kidney and abdominal area. The appellant is requesting to be scheduled to see a urologist and to be treated with ultra sound for his renal urological disorder. The appellant also requests to be compensated for his pain and suffering because FNP Risenhoover's negligence and to be transferred to a prison where he can receive appropriate medical attention.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the renal ultrasound was performed on July 2, 2007 and urinalysis was completed on July 3, 2007. Dr. Grimm performed the ultrasound. His impression was, "There is thought to be at least a single renal cyst involving both kidneys. Neither kidney has solid masses. Neither kidney has obstructive changes. Renal Calculi are not recognized but small stone could not be excluded." The appellant stated he passed two stones in his urine and he kept one of the stones in his housing for evidence. The appellant eventually gave the stone to his primary care physician for testing. The appellant's urine was tested in the clinic and was reported as within normal limits. A urine sample was sent to the laboratory for further culture and sensitivity testing. The appellant was started on doxycycline 100 milligrams by mouth twice a day for thirty days. FNP Risenhoover reviewed the results of the renal ultrasound with the appellant. He is to return to the clinic in 30 days for follow-up for prostatitis, epididymitis. He was advised to increase his water intake and avoid caffeine and alcohol (pruno). The appellant's request for compensation is beyond the scope of the appeals process. The appellant's request for transfer is denied because his medical needs are being met at Pelican Bay State Prison (PBSP). The appeal was granted in part at the Second Level of Review (SLR).

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** The Director's Level of Review reviewed the appellant's appeal complaint and the Second Level of Review response. The appellant's issues on appeal were addressed by the institution at the SLR. The appellant has seen a specialist, had an ultrasound, urine samples were tested and he has received medication. His request for transfer and monetary compensation were also addressed. No modification to the SLR is warranted.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

SHANE DAVIS, P97170
CASE NO. 0705270
PAGE 2

    **B. BASIS FOR THE DECISION:**
    California Code of Regulations, Title 15, Section: 3350, 3354

    **C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
        Health Care Manager, PBSP
        Appeals Coordinator, PBSP
        Medical Appeals Analyst, PBSP

*EXHIBIT-32*

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**
CDC (12/87)

Location: Institution/Parole Region  PBSP

Log No. 1. TA-18-2007-11620
2.

Category 2. 

DEPARTMENT OF CORRECTIONS

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Davis | P.97170 | S.H.U. | D-3-116 |

A. Describe Problem: I've been experiencing serious and kidney problems since 5.2.07. I again reported pain in my side on 9.9.07, and on 10.25.07. On 10.25.07 I was told that the medical board was going to approve me to see an outside physician and urologist. On 11-19-07 I was taken to Eureka to see a urologist. Upon my examination the professional doctor diagnosed me with Peyronie's Disease. This is a serious medical problem that must be treated. Actual surgery with medication and if

If you need more space, attach one additional sheet.

B. Action Requested: To be prescribed the medications that the Eureka urologist had prescribed to me.

Inmate/Parolee Signature: _____  Date Submitted: 11-29-07

C. INFORMAL LEVEL (Date Received: 12/06/07 )

Staff Response: YOU ARE SCHEDULED FOR A FOLLOW-UP FOR THIS OUTSIDE PHYSICIAN'S RECOMMENDATIONS. — THIS APPEAL IS DENIED AT THIS TIME —

Staff Signature: R. Lawers, R.N. / J. FLOWERS  Date Returned to Inmate: 12/06/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

As of todays date of 12-12-07 I still have not received treatment for any follow up visit explaination why I am being refused the medication prescribed by the urologist.

Signature: _____  Date Submitted: 12-12-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: 

DEC 1 3 2007

DEC 26 2007
PCP

STATE PRISON
PELICAN BAY
SECURITY HOUSING UNIT
UNIT D-3

· that fails the alternative is surgery. The doctor prescribe
to me two (2) different medications which I have not
received.
         The whole purpose was to see a professional
urologist and find out what the problem is I'm having
He also stated that this injury (Peyronie's Disease) could
have resulted from a wound I substained during a
recent passing of a kidney stone. This is documented
in a early 602, 1A-18 2007-00845.

                              Shane Davis
                              P. 97170 D-3-116

## INMATE/PAROLEE APPEALS SCREENING FORM

Name: DAVIS          Number: P97170          Housing: D3 116

### YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

Screening Appeals Rejection Criteria

[ ] 1.  The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[ ] 2.  The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
 [ ] (a)  Your appeal has been screened out on _____ for _____
 [ ] (b)  Your appeal is being reviewed at the _____ Level, Log # _____
 [ ] (c)  Your appeal has been completed at the _____ Level, Log # _____

[X] 3.  The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 6.  The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why
could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[ ] 8.  Abuse of the Appeal Process/Right to Appeal.
 [ ] (a)  Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is
  excessive. See CCR, Title 15, Section 3084.4(a).
 [ ] (b)  Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is
  rejected. See CCR, Title 15, Section 3084.4(b).
 [ ] (c)  Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated
  documentation. See CCR, Title 15, Section 3084.4(c).
  [ ] (1)  Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and
   per CCR, Title 15, Section 3084.2(a)(1).
  [ ] (2)  Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title
   Section 3084.2(a)(2).
 [ ] (d)  Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in
  cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
  [ ] (1)  Your appeal was screened out and returned to you with instructions:
   [ ]          [ ]          [ ].
 [ ] (e)  Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate
  welfare, per CCR, Title 15, Section 3084.1(a).
 [ ] (f)  This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362
  Medical Request form).

[ ] 9.  Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: You are scheduled for a
follow-up with your PCP to discuss
the results of the Urology Consult
At That Visit your PCP will determine if meds
will be ordered. If you disagree with her
recommendation and order(s) you can apeal
for in 1st
level review

J. KRAVITZ CC II          Date 2/13/07
Medical Appeals Coordinator

This screening decision may not be appealed unless you can support an argument that the above is inaccurate.
In such a case, please return this form to the Appeals Office with the necessary supporting information.

### PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

APPENDIX #1



New Hope For Men With PEYRONIE'S DISEASE

**f intercourse has become difficult or painful because your penis curves when erect, you may have a condition known as Peyronie's disease (PD).**

In PD, hard nodules, called plaques, form in the sheath surrounding the vascular erectile tissue within the penile shaft. The plaques, which are not cancerous, cause the penis to bend toward the affected side. This can interfere with erection and penetration and reduce penile length, causing much distress for the man and his partner.

The causes of PD are not altogether clear. Fortunately, however, as research into the disease continues, new medical therapies are emerging and surgical techniques are being refined.

In this article, we'll discuss what is known about PD—possible causes, typical signs and symptoms, frequency, and risk. We'll explore some of the myths surrounding the disease, describe the treatments currently in use or under investigation, and discuss which patients are most likely to benefit from the various treatments.

## WHAT CAUSES PD?

Much is still unknown about the causes of PD, but research suggests it is a disorder of wound healing. The PD plaques are actually hardened scar tissue. It's widely believed that the disease is trig-

gered by an injury to the erect penis—often one that goes unnoticed by the man. What is unclear is why a relatively minor injury would lead to such excessive scarring.

Normally, wounds heal in three phases: First, enzymes clean the wound of dead or damaged tissue. Second, the body repairs the wound by forming a scar that strengthens the injured tissue. Finally, the collagen fibers that make up the scar are broken down and realigned leaving a smaller "remodeled" scar. In PD, not only is scar formation extreme, but scar remodeling either fails to occur or is insufficient.

The abnormal scarring of PD is believed to be related to the actions of fibrin and cytokines, which stimulate the formation of scar tissue in the second phase of wound healing. It seems that, in PD, these substances allow excessive amounts of collagen to collect. The enzymes protease and

Photo: Models in photos are being depicted for illustrative purposes only.



penile expansion during erection and cause the erect penis to bend in the direction of the plaques, which are usually on the upper (or "dorsal") surface but may be on the underside (the "ventral" surface) or on either side ("lateral" plaques). Some plaques are so small that they cause only a slight indentation. Others go all the way around the penis, causing the penis to take on an hourglass shape. Generally, the greater the curvature of the penis, the more difficult it is to penetrate during sexual intercourse. Hourglass and indentation deformities can cause sexual difficulty too, sometimes causing the penis to buckle during penetration attempts.

Peyronie's disease may be associated with pain, especially in the initial stages, and with penile shortening. Many men with PD have erectile dysfunction (ED), which means they find it difficult to have an erection or to maintain one long enough to have satisfactory sex.

Contrary to popular belief, in most cases, PD does not get better without treatment. Spontaneous improvement or resolution has been said to occur in anywhere from 3% to 15% of all cases (see "Myths About PD" on page 10).

## HOW COMMON IS PD AND WHO GETS IT?

In the late 1990s, PD was thought to be relatively uncommon, with many researchers reporting a prevalence of only 1%. Recent studies, however, suggest that the condition is far more widespread. A 2004 survey of 534 men undergoing urologic examination at prostate cancer screening centers revealed that nearly 9% had signs of PD.

Typically, PD is diagnosed in middle-aged men, though it can occur in men of any age, from adolescence onward. Although it tends to occur most frequently in Caucasians, men of any ethnic group may develop PD.

collagenase, which are responsible for remodeling scar tissue in the third phase of wound healing, also may play a role. Patients with PD may produce too few of these enzymes or the enzymes they produce may not function properly to remodel the scar.

Some investigators believe that the tendency to develop PD may be inherited. There is a reported association between PD and a genetic disorder called Dupuytren's contracture, in which scar tissue forms along the sheath surrounding tendons in the palm of the hand, causing the ring finger to contract inward.

## SIGNS AND SYMPTOMS OF PD

The plaques of PD develop in the tunica albuginea—the fibrous tissue that covers the penile erection chambers, known as the corpus cavernosa. The plaques restrict



Photo: Models in photos are being depicted for illustrative purposes only.

**Peyronie's Disease**

## MYTHS ABOUT PD

| MYTH | FACT |
|------|------|
| Peyronie's disease (PD) is rare | PD occurs in nearly 1 in 10 men |
| PD is a disease of older men | PD can occur in men of any age |
| PD usually resolves spontaneously | Most cases of PD require treatment; only 3% to 15% of all cases improve or resolve spontaneously |

## PILLS FOR PD

Researchers have studied a number of oral therapies for PD, including: carnitine, colchicine, potassium aminobenzoate, tamoxifen, and vitamin E, the first oral therapy used for PD was believed to be of value because of its antioxidant properties. The other oral agents were studied because they are thought to have properties that interfere with collagen synthesis and scar formation.

Unfortunately, most studies using oral PD therapies haven't been well controlled. Since some PD cases improve on their own and few studies of oral medication have compared treated patients to an untreated "control group," it's not clear that the oral therapies

## IS PD SURGERY RIGHT FOR YOU?

If you can answer "yes" to the following questions, you may want to discuss surgical options with your doctor:

1. Have you had Peyronie's disease (PD) for more than one year?

2. Is your PD stable (meaning symptoms have not changed for six months or more) and painless?

3. Does PD prevent you from engaging in satisfactory sex, or are your PD plaques calcified (made inflexible by calcium deposits)?

for PD offer any benefit over no treatment at all in terms of penile curvature, pain, or the ability to have intercourse. The active phase of Peyronie's disease takes 12 to 18 months. After this pain generally goes away but most patients are left with a penile nodule/plaque. The Peyronie's plaque causes bending and shortening of the erection.

## INTRALESIONAL INJECTION THERAPY

Several agents have been studied as intralesional injection therapies, meaning that they're injected directly into the PD plaques, or lesions. Some of the earliest drugs used in this way were steroids. Currently, intralesional steroid injection is discouraged in the treatment of PD because there are no clear benefits, it can cause penile tissue to atrophy, or waste away, and it can complicate subsequent surgery.

Verapamil, a calcium channel blocker usually used to treat high blood pressure, has been shown to stop collagen synthesis and increase collagenase activity, thereby promoting scar remodeling.

Likewise, interferon injections have been associated with PD improvement. In placebo-controlled studies, documented benefits have been established. Interferons work by increasing collagenase and reducing collagen formation.

## TOPICAL GEL THERAPY

Verapamil was introduced as a topical gel in the mid 1990s. It was hoped that the drug, which had been somewhat successful as an intralesional injection, could produce the same results with less

discomfort in this noninvasive form. Unfortunately, when applied topically, the drug fails to reach the tunica albuginea. This was confirmed when men scheduled to undergo penile prosthesis surgery had verapamil gel applied to the penile shaft the night before and morning of surgery. During surgery, small tissue samples from each man's tunica albuginea were removed and examined for verapamil. No verapamil was detected in any of the sampled tissue.

## IONTOPHORESIS

The process of iontophoresis, also known as electromotive drug administration or EMDA, uses an electric current to administer a drug through intact skin. In the treatment of PD, this technique has been used to administer vera-

## UNDERSTANDING THE RISKS OF PD SURGERY

All surgery caries risks, and Peyronie's disease (PD) surgeries are no exception. Before undergoing surgery, be sure you understand the following potential risks—and discuss them with your doctor.

✍ Reduced penile rigidity (firmness)

✍ Diminished penile sensation and delayed ejaculation, a problem that may not resolve for up to six months after surgery

✍ Shortening of the penis

✍ Persistent or recurrent curvature, which is unusual if the PD is stable before surgery

✍ Delayed resumption of sexual activity (sometimes up to six months after surgery)